**LEWIS BRISBOIS BISGAARD & SMITH LLP**
DANA ALDEN FOX, SB# 119761
  E-Mail: fox@lbbslaw.com
DAWN M. FLORES-OSTER, SB# 155722
  E-Mail: Dawn.Flores-Oster@lewisbrisbois.com
MATTHEW P. HARRISON, SB# 222073
  E-Mail: mharrison@lbbslaw.com
633 W. 5th Street, Suite 4000
Los Angeles, California 90071
Telephone: 213.250.1800
Facsimile: 213.250.7900

Attorneys for County of Merced, Charles Hale, Erick Macias, Jose Sanchez

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ETHAN MORSE,<br><br>       Plaintiffs,<br><br>vs.<br><br>COUNTY OF MERCED, CHARLES HALE, ERICK MACIAS AND JOSE SAM SANCHEZ individually and as officers of the MERCED COUNTY SHERIFF'S DEPARTMENT and DOES 1-100.<br><br>       Defendants. | CASE NO.<br><br>**NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. SECTION 1331:  DECLARATION OF MATTHEW HARRISON IN SUPPORT THEREOF** |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Defendants, County of Merced, Charles Hale, Erick Macias and Jose Sanchez ("defendants") hereby remove to this Court the state action described below, reserving all rights, objections, defenses and exceptions, and file this Notice of Removal pursuant to 28 U.S.C. §§1331(a) and 1446 and remove this action to the United States District Court for the Eastern District of California for the following reasons:

4810-8325-2755.1

1

**NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. SECTION 1331:  DECLARATION OF MATTHEW HARRISON IN SUPPORT THEREOF**

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1.      On November 19, 2015, an action was filed in the Superior Court of the State of California in and for the County of Merced entitled *Ethan Morse v. County of Merced, et al*, case no: 15CV-03348.  A true and correct copy of the Summons and Complaint are attached as Exhibit "A" to the attached Declaration of Matthew Harrison.

2.      The County of Merced was served with summons and complaint on December 29, 2015.

3.      No defendant has responded to the Complaint and all defendants consent to the removal of the Complaint.

4.      Plaintiff's Complaint alleges Causes of action for violations under the 4th and 14th Amendments to United States Constitution pursuant to 42 U.S.C. §1983.

5.      This action is a civil action of which this Court has original jurisdiction over this matter under 28 U.S.C. §1331.

6.      Defendants will give written notice of the filing of this Notice of Removal to all adverse parties as required by 28 U.S.C. §1446 (d) and will file a copy of this Notice of Removal with the Superior Court of California, County of Merced, as further required by that Section.

7.      Notice of Removal is being filed within 30 days of service of the summons and complaint on Defendants. Removal is timely under 28 USC §1446 (b)

8.      The Declarant, Matthew Harrison, the undersigned counsel for defendants, County of Merced, Charles Hale, Erick Macias and Jose Sanchez, has read the foregoing and signs this Notice of Removal pursuant to Rule 11 of the Federal Rules of Civil Procedure, as required by 28 U.S.C. §1446 (a).

4810-8325-2755.1

2

**NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. SECTION 1331:  DECLARATION OF MATTHEW HARRISON IN SUPPORT THEREOF**

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1
2
3        9.    By this Notice of Removal, defendants County of Merced, Charles
4   Hale, Erick Macias and Jose Sanchez do not waive any objection they may have to
5   service, jurisdiction or venue or to any other defenses it may have to this action.
6   Defendants County of Merced, Charles Hale, Erick Macias and Jose Sanchez
7   intends no admission of fact, law or liability by the Notice, and expressly reserves
8   all defenses, motion and pleas.
9
10  DATED: January 27, 2016                LEWIS BRISBOIS BISGAARD & SMITH LLP
11
12                                          By:   Matt Harrison
13                                                Dana Alden Fox
14                                                Dawn Oster-Flores
                                                  Matthew P. Harrison
15                                                Attorneys for County of Merced, Charles
                                                  Hale, Erick Macias and Jose Sanchez
16
17
18
19
20
21
22
23
24
25
26
27
    4810-8325-2755.1                              3
28  **NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. SECTION
    1331: DECLARATION OF MATTHEW HARRISON IN SUPPORT
    THEREOF**

## DECLARATION OF MATTHEW HARRISON

I, Matthew Harrison, declare as follows:

1. I am an attorney duly licensed to practice in all of the courts of the State of California and the United States District Court, Central District of California and am a partner with Lewis Brisbois Bisgaard & Smith LLP, attorneys for defendants, County of Merced, Charles Hale, Erick Macias and Jose Sanchez. The facts set forth herein are of my own personal knowledge, and if sworn I could and would competently testify thereto.

2. This action is a civil action of which this Court has jurisdiction under the laws of the United States under 28 U.S.C. § 1331.

3. Defendants will give written notice of the filing of this Notice of Removal to all adverse parties as required by 28 U.S.C. §1446 (d) and will file a copy of this Notice of Removal with the Superior Court of California, County of Merced, as further required by that Section.

4. To date, no defendants hav filed a response to the Complaint.

5. Attached hereto as Exhibit "A" is a true and correct copy of the Summons and Complaint filed with the Merced County clerk, styled: *Ethan Morse v. County of Merced, et al* case no: 15CV-03348, filed November 19, 2015.

6. I, the undersigned counsel for defendants, County of Merced, Charles Hale, Erick Macias and Jose Sanchez, have read the foregoing and sign this Notice of Removal pursuant to Rule 11 of the Federal Rules of Civil Procedure, as required by 28 U.S.C. §1446 (a).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this Declaration was executed on January 27, 2016, at Los Angeles, California.

_Matt Harrison_
Matthew Harrison

4810-8325-2755.1

**NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. SECTION 1331: DECLARATION OF MATTHEW HARRISON IN SUPPORT THEREOF**

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

# EXHIBIT A

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
County of Merced, Charles Hale, Erick Macias and Jose Sam Sanchez
individually and as officers of the Merced County Sheriff's Department and
Does 1-100

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
Ethan Morse

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

FILED

2015 NOV 19  PM 12: 48

CLERK OF THE SUPERIOR COURT
BY _____ NENGSY MOUA

RECEIVED
Clerk of the Board
DEC 29 2015

---

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

---

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Superior Court of California, County of Merced<br><br>Merced Superior Court<br>2660 N Street<br>Merced, CA 95340 | CASE NUMBER:<br>*(Número del Caso):*<br>15CV-03348 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Jayme L. Walker (510) 832-5411
Gwilliam, Ivary, Chiosso, Cavalli & Brewer
1999 Harrison St. Suite 1600, Oakland, CA 94612

| | | | |
|---|---|---|---|
| DATE: 11/19/15<br>*(Fecha)* | Clerk, by<br>LINDA ROMERO SOLES | NENGSY MOUA | , Deputy<br>*(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

FILED BY FAX

3. ☒ on behalf of *(specify):* County of Merced
   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)          ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
   ☒ other *(specify):* CCP 416.50

4. ☐ by personal delivery on *(date):*

**EXHIBIT A, PAGE 6**

Page 1 of 1

Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009]

**SUMMONS**

American LegalNet, Inc.
www.FormsWorkflow.com

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

FILED

2015 NOV 19 PM 12: 47

CLERK OF THE SUPERIOR COURT
BY____ NENGSY MOUA

1  J. GARY GWILLIAM (SBN 33430)
   RANDALL E. STRAUSS (SBN 168363)
2  JAYME L. WALKER (SBN 273159)
   Gwilliam, Ivary, Chiosso, Cavalli & Brewer
3  1999 Harrison St. Ste. 1600
   Oakland, CA 94612
4  Telephone: (510) 832-5411
   Facsimile: (510) 832-1918
5  Email: ggwilliam@giccb.com
   rstrauss@giccb.com
6
   ATTORNEYS FOR PLAINTIFF
7  ETHAN MORSE

8

9              SUPERIOR COURT OF CALIFORNIA

10                  COUNTY OF MERCED

11

12  ETHAN MORSE,                          ) Case No.: 15CV-03348
                                          )
13              Plaintiff,                ) COMPLAINT FOR DAMAGES
                                          )
14       vs.                              ) 1. Violations of 42 USC § 1983 (Individual
                                          )    Defendants for 4th Amendment, Due
15  COUNTY OF MERCED, CHARLES             )    Process  and 14th Amendment Violations)
    HALE, ERICK MACIAS AND JOSE SAM       ) 2. Malicious Prosecution in Violation of the
16  SANCHEZ individually and as officers of )   Fourth Amendment (42 USC § 1983)
    the MERCED COUNTY SHERIFF'S           ) 3. Violation of Civil Code 52.1
17  DEPARTMENT and DOES 1-100,            ) 4. False Imprisonment/False Arrest
                                          ) 5. Negligent Infliction of Emotional Distress
18              Defendants                ) 6. Intentional Infliction of Emotional Distress
                                          ) 7. Defamation
19                                        )
                                          ) DEMAND FOR JURY TRIAL
20                                        )
                                          )
21                                        )

22

23

24                              FILED BY FAX

25

26

27

28

EXHIBIT A, PAGE 7

ETHAN MORSE complains and alleges as follows:

### PARTIES

1. PLAINTIFF ETHAN MORSE was an 18 year old recent high school graduate when he was falsely and maliciously arrested as an accessory to murder. Mr. Morse is, and was at all times herein mentioned, a citizen of the United States and a resident of Merced County.

2. Defendant MERCED COUNTY is a county incorporated, duly organized and existing under the laws of the State of California. The County of Merced operates under its authority the Merced County Sheriff's Department. Merced County is vicariously liable for the individual defendants' wrongful arrest and detention of Plaintiff as well as violations of Plaintiff's constitutional rights under California Civil Code 52.1.

3. CHARLES "CHUCK" HALE; ERICK MACIAS AND DETECTIVE JOSE SAM SANCHEZ are employees of the Merced County Sherriff's Office. They are being sued individually and in their official capacities.

4. Plaintiff is ignorant of the true names and capacities of Defendants sued herein as Does 1 through 100, inclusive, and therefore sued these defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes, and thereon alleges, that each of these fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiff's injuries as herein alleged were proximately caused by the aforementioned defendants.

### JURISDICTION AND VENUE

5. All of the alleged wrongful acts occurred in the County of Merced.

6. This court has jurisdiction of federal claims under 42 USC § 1983. *Martinez v. California,* (1980) 444 US 277, 283 n.7; *Ochoa v. Superior Court* (1985) 39 Cal.3d 159, 173, fn. 10.

### CONDITIONS PRECEDENT

7. For the state claims against public entities and employees, on May 12, 2015, Ethan Morse filed a timely government claim form against Merced County. That claim was rejected on

1  June 2, 2015.

2  <u>STATEMENT OF FACTS</u>

3  8.  On March 30, 2013, three people were murdered in a gun battle involving rival gang

4     members at a party in Atwater, California.

5  9.  Plaintiff Ethan Morse and Jacob Tellez were briefly at the party.  Plaintiff Morse had driven

6     Tellez, and six other teenagers, Sabrina Ceccoli, Robert Turn, Cameron Johnson Valenzulea,

7     Jacob Delgadillo, Tony Gomes, and Andrew Massengale, to the party.  The group went into

8     the party, stayed approximately 10 minutes, and then left.  A couple of the kids mentioned

9     having a bad feeling because they thought there were gang members at the party.  The others

10    agreed and all went back to Plaintiff's vehicle to leave the party.

11 10. As Plaintiff and his companions were leaving the party, several gang members arrived.  They

12    heard gunshots in the backyard and chaos ensued.  Plaintiff and his companions quickly got

13    into the vehicle and began to drive away as gunshots continued.  There were more than 100

14    people at the party and people were running into the streets away from the backyard.  At first,

15    Plaintiff drove slowly because he almost hit two kids that were running in the street away

16    from the gunfire.

17 11. In the backyard shooting, Matthew Fisher and Samantha Pereira, were killed.  Fisher was a

18    known gang member.  A gun battle ensued and minutes later, another known gang member

19    from a rival gang, Bernabed Hernandez Canela, was killed on Westside Blvd, west of the

20    house where the party was being held.

21 12. Several rounds of gunfire continued to go off as Plaintiff and his companions drove away

22    heading east on Westside Boulevard towards Highway 99.

23 13. Approximately two weeks later, on or around April 15, 2013, Jacob Tellez was arrested as a

24    suspect in the murder of Bernabed Hernandez based on a 911 call that Tellez inadvertently

25    made from his pocket.  This became known as the "butt dial".  In the recording of the 911

26    call, Mr. Tellez does not know he has dialed 911 and he is speaking animatedly and excitedly

27    about the shooting that has occurred. The call is extremely muffled and it is very difficult to

28    make out much of what Tellez is saying.

EXHIBIT A, PAGE 9

14. Detective Pavelski of the Merced County Sheriff's Office ("MSO") interviewed Tellez about the shooting. Tellez admitted he was at the party and admitted he was in possession of a .22 caliber revolver. Tellez further admitted that he started to pull out his gun but it got caught on the seatbelt and Mr. Massengale grabbed his arm and told him not to get the gun out. Mr. Tellez informed Det. Pavelski that he saw someone lying on the side of the road and it looked like a piece of his hair or his head was on the ground. Following the interview, Detective Pavelski listened to the 911 call again. Tellez' story was consistent with what can be heard on the recording. Therefore, Det. Pavelski released Tellez and asked the judge to recall the warrant for his arrest.

15. At some later time, Defendant Chuck Hale took over as the MSO Supervising Detective on the case.

16. In May, 2013, Defendant Erick Macias was assigned to be the lead MSO detective on the case. No significant further action was taken on the case until more than a year later in July, 2014.

17. In January, 2014, Plaintiff's father, Larry Morse, the current elected District Attorney of Merced County, publicly complained that Merced County, and specifically the Merced County Sheriff's Department were not putting enough resources into combating persistent gang violence. Mr. Morse specifically referred to the unsolved triple homicide in Atwater.

18. In July, 2014, in response to criticism by DA Larry Morse that the Sherriff's Office had not spent adequate resources combating gang violence, Defendants Sanchez, Hale and Macias resolved to revive the triple homicide cold case. They began targeting Jacob Tellez for the murder of Bernabed Hernandez, despite the fact that they had no additional evidence against him, and despite the fact that the MSO had previously released Tellez for insufficient evidence.

19. Tellez was rearrested for the murder on July 17, 2014. Tellez was interviewed by Defendant Sanchez and cooperated with police. Tellez told the same story as he had in April, 2015. He also gave further information identifying another person, well known gang member Roe 2 as someone he saw shooting at a "Southerner". Bernabed Hernandez was a "Southerner".

1    Defendants did not follow up on this lead, despite the fact that they knew well known gang

2    member Roe 2 was at the party, that he was shot at the party, and was a known gang member

3    in a gang that was a rival gang to that which Hernandez was a member.

4  20. Defendant Hale had Tellez arrested prior to briefing the Merced DA's Office on July 17,

5    2015. This was a violation of standard practice for police to brief the Merced County District

6    Attorney's Office ("DA") before making an arrest in a cold case or in out of custody

7    homicides. When the DA's office was briefed, it was 1 hour before a self-congratulatory

8    news conference the Sheriff's Office was holding to announce the arrests.

9  21. During the briefing, Merced County District Attorney's Office was informed that the sole

10    evidence against Tellez was the 911 "butt dial". However, Defendants did not inform the

11    DA's office that they had previously arrested and released Tellez based on exactly the same

12    evidence and that Tellez had previously given a voluntary statement and had disclosed

13    several witnesses that could corroborate his version of events. No efforts were made to

14    locate any of the witnesses nor to test the car that Tellez was in for gunfire prior to Tellez'

15    arrest. Hale also did not disclose that the "victim", Hernandez, was a known gang member.

16    At that time, Hernandez' body had not been tested to see if he had fired a gun prior to being

17    shot.

18  22. After the press conference, Plaintiff Ethan Morse told his father that he had been at the party

19    with Tellez and that Tellez did not fire a gun from his car. DA Morse immediately notified

20    Defendant Hale that there was a problem with the Tellez arrest and arranged for Plaintiff to

21    speak with the detectives on Sunday, July 20, 2015.

22  23. On July 20, 2014, Plaintiff Ethan Morse was interviewed by Defendants Macias and Hale.

23    Plaintiff told the detectives information that corroborated what Tellez had told them on two

24    separate occasions, essentially that the kids were at the party for a few minutes and then left,

25    that Tellez had a .22 gun, that Massengale told him not to shoot it and no shots were fired

26    from Plaintiff's car. Plaintiff offered to take a polygraph test but Defendants declined to give

27    him one.

28  24. There were several material omissions from the police report. Notably, Plaintiff's offer to

EXHIBIT A, PAGE 011

1     take a polygraph was omitted from the police report. It was also omitted from the report that

2     DA Morse had contacted Defendants and arranged for Plaintiff to meet with them voluntarily

3     and without legal counsel.

4 25. Defendants subsequently interviewed the witnesses in the car, except for Andrew Massengale

5     whose father would not allow him to speak with them without an attorney. Defendants

6     implied to all the witnesses they interviewed that they may be charged with a crime if they

7     did not change their story to the Defendants' theory of the case.

8 26. Following his interview with the Sheriff's department, Plaintiff told Defendants that he

9     would try to get everyone else that was in the car to come and voluntarily make a statement.

10 27. The other passengers in the car with Plaintiff and Jacob Tellez were Sabrina Ceccolli,

11     Cameron Johnson, Robert Tern, Andrew Massengale, Tony Gomes, and Jacob Delgadillo.

12 28. On July 22, 2014, Cameron Johnson was interviewed by Defendant Macias. Johnson told

13     police that Tellez did not shoot a gun at anytime while at the party. During his voluntary

14     interview, Mr. Johnson felt the police were trying to trick him into saying something that

15     would inculpate Plaintiff and Mr. Tellez. Mr. Johnson terminated the interview after police

16     were hostile, yelling at him, accusatory and treating him as if they did not believe him.

17 29. On July 22, 2014, Defendant Macias and another MSO officer interviewed Sabrina Ceccolli.

18     Ceccolli said in her interview she was 100% sure and then later 95% sure that no one shot a

19     gun from the car. Her repeated statements that Tellez did not shoot a gun from the car are not

20     in the police report. Ceccoli told Defendants she had been around gunshots all her life and

21     she would have heard if a gun had been fired from the car. After much convincing from

22     Defendants, Ceccoli agreed that some of the gunshots she heard were louder and perhaps

23     those gunshots could have come from the car, however, she maintained that she didn't see

24     Tellez shoot anyone.

25 30. On July 22, 2014, Defendants Macias and Sanchez interviewed Robert Tern. Plaintiff

26     accompanied Mr. Tern do the interview with Defendants because Tern was very nervous and

27     Cameron Johnson had informed Tern and Plaintiff that the Defendants were trying to trick

28     everyone and were very hostile. Tern told a story that corroborated what Tellez had told

EXHIBIT A, PAGE 012

police on two occasions and what the other occupants of the vehicle had told police. Tern told Defendants that they had gone to the party for a few minutes and left and as they were leaving the gunshots started. Tern admitted that Tellez had a gun but said he was positive that he didn't shoot it from the car. Tern told police he was 100% positive that Tellez did not fire the gun. Finding that Tern did not corroborate their theory of the case, Defendants threatened Tern that they "didn't want to have to put cuffs on someone that doesn't need them" and if he didn't stop lying they "could be done" and he "would be booked in the County jail." They also told Tern he would be a suspect in a triple homicide.

31. At some point, Tern tried to terminate the interview. When Tern attempted to terminate the interview, he was placed in handcuffs and detained for 45minutes to an hour. The fact that Tern tried to terminate the interview and was put in handcuffs was not included in the police report. After being intimidated by Defendants and threatened with arrest, Tern changed his story.

32. On July 24, 2014, Defendant Macias interviewed Jacob Delgadillo. Delgadillo corroborated the same story as all the other occupants in the car. Delgadillo told police that Jacob Tellez did not shoot a gun from the car. He said he was absolutely sure that Tellez did not fire a gun from the vehicle. In the arrest warrant Defendant Macias says that Delgadillo said Tellez had a "gun" in his hand and points it out the window, but Delgadillo never said that Tellez had a gun in his hand and pointed it out the window. In fact, Defendant Macias attributed statements to Delgadillo that Macias himself made in the interview. The arrest warrant omits that Delgadillo's story was in fact consistent with all the other occupants in the vehicle that Jacob Tellez did not shoot a gun from the car.

33. On July 24, 2014, Defendant Sanchez and another MSO officer interviewed Tony Gomes. Gomes told the same story that he was 100% sure that Tellez had not fired a gun out of the vehicle. Gomes repeatedly told police that he had not seen or heard the gunfire come from the car.

34. During his interview, Mr. Gomes identified other shooters, including mentioning known well known gang members Roe 1 and Roe 2 as people he believed to be Blood gang members and

1    that he saw shooting in an easterly direction. This was in fact that direction that Bernabed

2    Hernandez was shot. Defendants ignored this part of Gomes' statement. Defendants also

3    ignored the consistent statements that Plaintiff was driving eastbound and that Bernabed

4    Hernandez was shot on the right side of his head as he ran westbound.

5  35. In his affidavit for Plaintiff's arrest, Defendant Erick Macias swore under penalty of perjury

6    that the contents of the 911 call included Jacob Tellez saying the following: "That's when I

7    GRABBED MY SHIT NIGGA, AND I WAS LIKE FUCK THIS...Pop-pop nigga! Just

8    straight laid out nigga, I seen some of is head, it look like just a piece of head was like fucken

9    hair on the floor when we drove by nigga...I fucken put him to sleep blood." This was a

10    fabrication. The 911 call is so mumbled that only portions of what Mr. Tellez is saying can

11    be made out and Tellez never made the aforementioned statement alleged by Macias. There

12    is no indication that the judge that issued the warrant listened to the 911 tape when signing

13    the arrest warrant. The judge who signed the arrest warrant relied on Defendant Macias'

14    representations which were false.

15  36. Plaintiff's arrest warrant also contains material misrepresentations of the witness statements.

16    It attributes statements to Ceccolli that the gunshots sounded muffled as if they were coming

17    from the vehicle. Ceccolli never said this in her interview. On the contrary, she said she was

18    95% sure that no gunshots were fired from the car. Plaintiff's arrest warrant also attributes

19    statements to Ceccolli that she knew Tellez had a gun but she was not sure if he fired it. She

20    never said this either. Plaintiff's arrest warrant further attributes statements to Ceccolli that

21    she says the gun is dropped off after they left party, but Ceccolli maintained throughout her

22    interview that she never saw a gun. The statements attributed to Ceccolli are material

23    misrepresentations and omissions that caused the magistrate to issue an arrest warrant that

24    without such misrepresentations and omissions would have lacked probable cause.

25  37. The arrest warrant contains only statements that corroborate Defendants' theory of the case

26    and omits that every person in the car, prior to being threatened with arrest and implication in

27    a crime, corroborated what Tellez and Plaintiff had told police happened.

28  38. Moreover, Defendant Macias omitted that every witness had indicated that Tellez was in

1    possession of a .22 revolver but Hernandez-Canela was shot with .38 caliber bullets in the
2    chest and a .25 caliber automatic bullet to the head in a very closer range shot. Thus, the
3    Sheriff's Department arrested Plaintiff on this warrant even though there was no evidence
4    connecting the weapon Tellez allegedly had in Plaintiff's car to the weapon used in the
5    murder. The .38 and .25 bullets could not have come from the .22 revolver. There were no
6    bullets found from a .22 revolver and no casings from any .22 revolver were ever found on
7    the roadway.

8   39. Defendant Macias also omitted from the arrest warrant that the fatal wound to Hernandez-
9    Canela was just below his right ear. Hernandez was running westbound at the time of the
10    shooting, while the vehicle containing Tellez and Morse was eastbound. Thus, the bullet
11    wound was on the wrong side of the victim's head to implicate Tellez and Plaintiff.

12  40. Without these material misrepresentations and omissions, Plaintiff would never have been
13    arrested, let alone charged with a crime.

14  41. The Attorney General's Office ("AG") was advised by Merced County DA, where
15    Plaintiff's father is the elected DA, that they had a conflict in this case. At that time the AG
16    took over the case. The AG picked up the case file on or around July 23, 2014.

17  42. Ethan Morse was arrested as an accessory to murder on July 25, 2014.

18  43. Former Merced County Sheriff Mark Pazin called several times and then finally left a
19    message for Larry Morse at 7:20 am on the Sunday after Plaintiff's arrest indicating that
20    when DA Morse made his first public comments about his son's arrest, he should apologize
21    to the Sheriff's Department. The Current Sheriff Tom Cavallero was the No. 2 under-Sheriff
22    for Pazin.

23  44. A mere 4 days after Plaintiff was arrested and less than a week after the AG picked up the
24    case file which included tens if not hundreds of hours of witness statements and hundreds of
25    pages of police reports, AG Barton Bowers filed a criminal complaint against Plaintiff on
26    July 29, 2014, at 10:47 a.m. The criminal complaint charged Plaintiff with murder and with
27    gang enhancements, despite the fact that there was no evidence whatsoever that Plaintiff was
28    involved in gang activity. Plaintiff is informed and believes that Mr. Bowers did not listen to

EXHIBIT A, PAGE 15

the interviews, did not conduct an independent review and filed the criminal complaint
against Plaintiff solely in reliance on malicious representations from Defendants.

45. Moreover, Defendants withheld substantial exculpatory information from the AG. Plaintiff
is informed and believes that Defendants withheld from the AG that a well known gang
member, Roe 1, was interviewed in approximately March or April, 2013 and that he had
placed himself at the crime scene, stated that he was in a rival gang from Hernandez, and saw
Hernandez just before he was shot. Well known gang member Roe 1 further informed police
he was in the same gang as Matthew Fisher (one of the decedents shot in the gun battle) and
well known gang member Roe 2 (who was shot) and that he transported Roe 2 and Samantha
Pereira to the hospital. Despite this information, Defendants did not attempt to locate Roe 2
and did not follow up with Roe 1. None of this information was disclosed to Plaintiff in
discovery and none of it is in the police report. This is despite the fact that Gomes also gave
a statement that implicated well known gang members Roe 1 and Roe 2. The failure to
disclose this information violated Plaintiff's due process rights.

46. Following Plaintiff's arrest in late July or early August, 2014, a woman contacted Plaintiff's
mother and told her that her sons witnessed the shooting and that well known gang members
Roe 1 and Roe 2 shot Hernandez.

47. In October, 2014, AG Barton Bowers, who filed a criminal complaint against Plaintiff solely
based on pressure and representations from Defendants and alleged gang enhancements in
that complaint, contacted gang experts at the Merced DA's Office and asked for their
assistance in establishing the gang enhancements against Plaintiff, the Merced DA's son. AG
Bowers did this despite the fact that the person he contacted reported to Plaintiff's father and
despite the fact that Plaintiff's father had properly recused his entire office from the case due
to the conflict of interest. Plaintiff's father, DA Morse, was forced to write a letter to AG
Kamala Harris to report this egregious conduct and remind her that it would be entirely
improper for anyone in his office to assist in the case considering the Defendant was his son.

48. On November 4, 2014, a confidential informant came to the Merced Police Department to
talk about the triple homicide in which Plaintiff was charged. The confidential informant

EXHIBIT A, PAGE 16

1     told Merced PD Detective Paul Johnson that well known gang member Roe 1 had confessed

2     that he and Roe 2 were responsible for shooting Hernandez.

3  49. Detective Johnson informed Defendant Hale of this information and Defendant Hale replied,

4     "What, is Larry [referring to Plaintiff's father] buying you lunch?" Defendant did nothing to

5     follow up on this information, despite his knowledge of inculpatory statements previously

6     made by well known gang member Roe 1 and the statement made by Gomes that inculpated

7     well known gang members Roe 1 and Roe 2. No report of this information was made and

8     Plaintiff is informed and believes that this information was withheld by Defendants from AG

9     Bowers.

10 50. From November 10-14, 2014, a preliminary hearing was held for Plaintiff and Tellez' cases.

11 51. Andrew Massengale was in the car with Plaintiff and Jacob Tellez the night of the triple

12     homicide. Massengale testified at the preliminary hearing under oath and his testimony

13     corroborated the testimony given by every other witness before they were intimidated and

14     coerced into changing their stories by Defendants.

15 52. On November 14, 2014, Judge Ronald Hansen refused to hold Tellez or Plaintiff to answer.

16     He made a factual finding that Tellez (aka Logan) did not fire a gun from Plaintiff's vehicle.

17     He found that both Plaintiff and Tellez were factually innocent. The court also made a

18     finding that the 911 call did not contain any admission by Tellez that he had shot anyone.

19     The court made a finding that the 911 call corroborated Tellez version of events he had told

20     police on two occasions and corroborated the initial stories told by all the kids in the vehicle.

21     The court noted that it could not hear the things that Defendant Macias had represented that

22     were said on the call in Plaintiff's arrest warrant. The court further noted that the important

23     details of the events that gave rise to the complaint against Plaintiff came from the questions

24     of the Defendants and not from the mouths of the witness. Having failed to listen to the

25     interview tapes before the complaint was filed; Plaintiff is informed and believes that the AG

26     was not aware of these facts. Following the court's finding, Plaintiff was released from

27     custody.

28 53. As Plaintiff was leaving the courthouse, he heard an unknown Merced County sheriff's

1    deputy say, "This is bullshit, I know this guy did it." In addition, a social media blogger at

2    the Merced Sun Star has repeatedly attributed statements that Plaintiff was an accomplice to

3    murder and got away with murder to unnamed sources in the Merced County Sheriff's

4    Department. Plaintiff is informed and believes that Defendants Macias, Hale and Sanchez

5    were sources of this false and defamatory information. Plaintiff further is informed and

6    believes that Defendants Macias, Hale and Sanchez continue to defame him by accusing him

7    of being an accomplice to murder and stating the only reason he was not held to answer is

8    because of the Attorney General's mistakes.

9    54. Plaintiff had spent 8 months in county jail and missed his first semester of college Ouachita

10   Baptist University in Arkansas for which he had a wrestling scholarship. Plaintiff lost the

11   scholarship because he could not attend school the first semester.  Plaintiff then had a

12   difficult time transitioning into college in Arkansas and returned to Merced. Every day

13   Plaintiff spends in Merced, he fears for his life because gang members believe he was

14   involved in the shooting of Bernabed Hernandez. Plaintiff also suffered substantial financial

15   losses in the form of attorney's fees and costs. Mr. Morse has suffered and continues to

16   suffer from severe emotional distress as a result of his incarceration and wrongful arrest and

17   prosecution.

18   55. Despite overwhelming evidence that well known gang members Roe 1 and Roe 2 were

19   responsible for the shooting of Bernabed Hernandez, the Sheriff's Department and the

20   Attorney General have done nothing to further the investigation and or prosecution of well

21   known gang members Roe 1 and Roe 2 because doing so would prove their incompetence

22   and culpability in the wrongful arrest and detention of Plaintiff. Because of this lack of

23   action, Plaintiff remains covered in a cloud of suspicion and the real perpetrators of this

24   crime remain free.

25   56. The investigation, arrest and prosecution of Plaintiff described herein was malicious, without

26   just cause, and violated Plaintiff's Fourth Amendment and Fourteenth Amendment rights and

27   proximately caused Plaintiff economic damages, including legal expenses, bail, damages to

28   his reputation and severe emotional distress.

## FIRST CAUSE OF ACTION
### (42 U.S.C. § 1983 for 4th Amendment, Due Process and 14th Amendment Violations)
### Against Defendants Hale, Macias and Sanchez

57. Plaintiff hereby re-alleges and incorporates by reference herein paragraphs 1 through 54 above.

58. In doing the acts complained of herein, DEFENDANTS and DOES 1-25, inclusive, and/or each of them, acted under color of law to deprive Plaintiff of certain constitutionally protected rights, including, but not limited to:

   a. The right to be free from unreasonable searches and seizures, as guaranteed by the Fourth Amendment to the Constitution of the United States. Plaintiff's action specifically includes, but is not limited to the wrongful search of his apartment, and the wrongful seizure of his person and the malicious prosecution that kept him seized until the criminal charges were dismissed.

   b. The right to be free from arrest without probable cause guaranteed by the Fourth Amendment to the Constitution of the United States.

   c. The right to due process of law by being informed of all exculpatory evidence in the criminal case against him guaranteed by the Fourth and Fourteenth Amendments of the Constitution of the United States.

59. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered damages including, but not limited to, legal expenses, economic losses, loss of reputation, emotional distress, and other damages.

60. In doing the things alleged herein, Defendants' conduct was despicable. Defendants acted toward Plaintiff with malice, oppression, fraud, and with willful and conscious disregard to Plaintiff's rights, entitling Plaintiff to awards of punitive damages.

## SECOND CAUSE OF ACTION
### Malicious Prosecution in Violation of the Fourth Amendment
### Against Defendants Hale, Macias and Sanchez

61. Plaintiff hereby re-alleges and incorporates by reference herein paragraphs 1 through 58 above.

62. In doing the acts complained of herein, DEFENDANTS and DOES 1-25, inclusive, and/or each of them, acted under color of law to deprive Plaintiff of certain constitutionally protected rights, including, but not limited to

    a.  The right to be free from unreasonable searches and seizures, as guaranteed by the Fourth Amendment to the Constitution of the United States. Plaintiff's action specifically includes, but is not limited to the wrongful search of his apartment, and the wrongful seizure of his person and the malicious prosecution that kept him seized until the criminal charges were dismissed.

    b.  The right to be free from arrest without probable cause guaranteed by the Fourth Amendment to the Constitution of the United States.

    c.  The right to due process of law by being informed of all exculpatory evidence in the criminal case against him.

63. Defendants caused the initiation of criminal proceedings against Plaintiff without probable cause and with malice and reckless indifference.

64. The criminal proceedings were terminated in Plaintiff's favor for lack of probable cause.

65. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered damages including, but not limited to, legal expenses, economic losses, loss of reputation, emotional distress, and other damages.

66. In doing the things alleged herein, Defendants' conduct was despicable. Defendants acted toward Plaintiff with malice, oppression, fraud, and with willful and conscious disregard to Plaintiff's rights, entitling Plaintiff to awards of punitive damages.

**THIRD CAUSE OF ACTION**
Violation of Civil Code 52.1
**Against All Defendants**

67. Plaintiff hereby re-alleges and incorporates by reference herein paragraphs 1 through 64 above.

68. As against Defendants, Plaintiff alleges that Defendants caused the initiation of a malicious criminal prosecution against Plaintiff in violation of his First and Fourth Amendment rights under the United States Constitution and corresponding rights under the California

EXHIBIT A, PAGE 20

1  Constitution.

2  69. Defendant Merced County and Sheriff Tom Cavallero are liable under a theory of respondeat

3  superior.

4  70. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered

5  damages including, but not limited to, legal expenses, economic losses, loss of reputation,

6  emotional distress, and other damages.

7  71. In doing the things alleged herein, Defendants' conduct was despicable. Defendants acted

8  toward Plaintiff with malice, oppression, fraud, and with willful and conscious disregard to

9  Plaintiff's rights, entitling Plaintiff to awards of punitive damages.

10  **FOURTH CAUSE OF ACTION**<br>**False Arrest/Imprisonment**

11  **Against all Defendants**

12  72. Plaintiff hereby re-alleges and incorporates by reference herein paragraphs 1 through 69

13  above.

14  73. Defendants and DOES 1-50 and each of them by their actions caused Plaintiff to be confined

15  or knew to a substantial certainty that Plaintiff would be confined due to their actions.

16  74. Defendants made material misrepresentations and omissions in the arrest warrant that they

17  knew would cause the judge to issue a warrant that was not supported by probable cause.

18  75. Defendants Merced County and Sheriff Tom Cavallero are liable for Plaintiff's wrongful

19  confinement under the doctrine of respondeat superior.

20  76. As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered

21  damages including, but not limited to, legal expenses, economic losses, loss of reputation,

22  emotional distress, and other damages.

23  77. In doing the things alleged herein, Defendants' conduct was despicable. Defendants acted

24  toward Plaintiff with malice, oppression, fraud, and with willful and conscious disregard to

25  Plaintiff's rights, entitling Plaintiff to awards of punitive damages.

26  **FIFTHCAUSE OF ACTION**<br>**Negligent Infliction of Emotional Distress**<br>**Against Hale, Macias and Sanchez**

27  78. Plaintiff hereby re-alleges and incorporates by reference herein paragraphs 1 through 75

28

1  above.

2  79. Defendants were negligent and their negligence was a substantial factor in causing Plaintiff

3  to suffer serious emotional distress.

### SIXTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress
### Against Hale, Macias and Sanchez

80. Plaintiff re-alleges and incorporates by reference herein paragraphs 1 through 77 as though

fully set forth herein.

81. Defendants, in the conduct set forth above, engaged in outrageous behaviors.  By such

conduct, Defendants intended to cause Plaintiff emotional distress, or engaged in conduct

with reckless disregard of the probability of causing Plaintiff emotional distress or both.

82. As a proximate result of Defendants' conduct, Plaintiff has suffered severe emotional

distress.

83. The outrageous conduct of Defendants was a substantial factor in the severe emotional

distress suffered by Plaintiff.

84. Defendants' wrongful conduct has caused Plaintiff to suffer and continue to suffer injury,

including, but not limited to, economic damages, severe emotional distress, and other

damages.

85. In doing the things alleged herein, Defendants' conduct was despicable.  Defendants acted

towards Plaintiff with malice, oppression and fraud and willful and conscious disregard to

Plaintiff's rights entitling him to an award of punitive damages.

### SEVENTH CAUSE OF ACTION
### DEFAMATION
### Against Macias, Hale, and Sanchez, and Does 1-100

86. Plaintiff hereby re-alleges and incorporates by reference herein paragraphs 1 through 85

above.

87. As described in detail above, Defendants Macias, Hale, Sanchez and Does 1-100 have

intentionally and knowingly published false information to others, falsely accusing Plaintiff

of serious felonies and crimes of moral turpitude.

88. Defendants conduct was outside of the criminal investigation, to the public and the press and

EXHIBIT A, PAGE 22

1   amounts simply to defamatory statements designed to influence public opinion about

2   Plaintiff.

3   89. Defendants' false publications are *per se* defamatory.

4   90. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered

5   damages including, but not limited to, legal expenses, economic losses, loss of reputation,

6   emotional distress, and other damages.

7   91. In doing the things alleged herein, Defendants' conduct was despicable. Defendants acted

8   toward Plaintiff with malice, oppression, fraud, and with willful and conscious disregard to

9   Plaintiff's rights, entitling Plaintiff to awards of punitive damages.

10

11                              **PRAYER FOR RELIEF**

12      **WHEREFORE,** Plaintiff respectfully requests relief as follows:

13   1.      For special and economic damages, including back pay and front pay, benefits and

14   consequential damages;

15   2.      For general and non-economic damages;

16   3.      For punitive damages;

17   4.      For costs and reasonable attorneys fees, including a contingency fee enhancement beyond

18   the lode star;

19   5.      For prejudgment interest at the legal rate; and

20   6.      For such other and further relief as the Court may deem proper.

21

22   DATED: 11/19/15

                                        GWILLIAM, IVARY, CHIOSSO,
                                        CAVALLI & BREWER
23

24

25                                      By _____
                                            J. GARY GWILLIAM
26                                          RANDALL E. STRAUSS
                                            JAYME L. WALKER
27                                          Attorneys for Plaintiff
                                            Ethan Morse
28

**EXHIBIT A, PAGE 23**

1  DEMAND FOR JURY TRIAL

2  DATED: 11/19/15

3

GWILLIAM, IVARY, CHIOSSO,
CAVALLI & BREWER

4

5  By:

6       J. GARY GWILLIAM
        RANDALL E. STRAUSS
7       JAYME L. WALKER
        Attorneys for Plaintiff
8       Ethan Morse

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES
Ethan Morse v. County of Merced, et al.
- 18

1       **FEDERAL COURT PROOF OF SERVICE**

2    Ethan Morse v County of Merced, et al. - Case No. Merced County Superior Court 15-CV-03448

3    STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

4        At the time of service, I was over 18 years of age and not a party to the action.  My
     business address is 633 West 5th Street, Suite 4000, Los Angeles, CA 90071.  I am employed in
5    the office of a member of the bar of this Court at whose direction the service was made.

6        On January 28, 2016, I served the following document(s):  NOTICE OF REMOVAL OF
     CIVIL ACTION UNDER 28 U.S.C. SECTION 1331:  DECLARATION OF MATTHEW
7    HARRISON IN SUPPORT THEREOF

8        I served the documents on the following persons at the following addresses (including fax
     numbers and e-mail addresses, if applicable):

9

10      **SEE ATTACHED SERVICE LIST**

        The documents were served by the following means:
11

☒       (BY OVERNIGHT DELIVERY) Based on an agreement of the parties to accept service by
12       overnight delivery, I enclosed the documents in an envelope or package provided by an
         overnight delivery carrier and addressed to the persons at the addresses listed above.  I
13       placed the envelope or package for collection and delivery at an office or a regularly
         utilized drop box of the overnight delivery carrier.
14
        I declare under penalty of perjury under the laws of the United States of America and the
15   State of California that the foregoing is true and correct.

16      Executed on January 28, 2016, at Los Angeles, California.

17

18                                      /s/ Cheryl Scranton
                                        Cheryl Scranton
19

20

21

22

23

24

25

26

27

28


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1

**SERVICE LIST**
**Ethan Morse v County of Merced, et al.**
**Merced County Superior Court 15-CV-03448**

2

3
Jayme L. Walker
Gwilliam, Ivary, Chiosso, Cavalli & Brewer
1999 Harrison Street, Suite 1600
Oakland, CA 94612

Attorneys for Plaintiff ETHAN MORSE
T:      (510) 832-5411
F:      (510) 832-1919
Email: ggwilliam@giccb.com
          rstrauss@giccb.com

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW