1

2

3

4

5

6

7                              UNITED STATES DISTRICT COURT

8                         FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10   ETHAN MORSE                                  No.  1:16-cv-00142-DAD-SKO

11              Plaintiff,

12        v.                                      ORDER GRANTING IN PART AND
                                                  DENYING IN PART DEFENDANTS'
13   COUNTY OF MERCED, CHARLES                    MOTION TO DISMISS
     HALE, ERICK MACIAS, and JOSE SAM
14   SANCHEZ individually and as officers of      (Doc. No. 6)
     the MERCED COUNTY SHERIFF'S
15   DEPARTMENT, and DOES 1–100,

16              Defendants.

17

18        This action was originally filed in the Merced County Superior Court on November 19,

19   2015, and was removed to this court on January 28, 2016 by defendants.  (Doc. No. 1.)[1]  On

20   February 4, 2016, defendants filed a motion to dismiss under Federal Rule of Civil Procedure

21   12(b)(6) seeking dismissal of many causes of action on numerous grounds.  (Doc. No. 6.)  On

22   April 5, 2016, the motion came on for hearing with attorney Jayme L. Walker appearing on behalf

23   of plaintiff, attorney Dawn M. Flores-Oster appearing on behalf of defendants County of Merced,

24   Hale, and Sanchez, and attorney Steven Joseph Rothans appearing on behalf of defendant Macias.

25   (Doc. No. 27.)

26   /////

27

28   _____
     [1]  This court has jurisdiction under 28 U.S.C. § 1331.

                                                 1

1   **I.      Background**

2         Plaintiff's wide-ranging complaint concerns his arrest and subsequent criminal charges

3   brought against him stemming from the murder of three people in a gang-related gun battle at a

4   party in Atwater, California on March 30, 2013.  In his complaint, plaintiff alleges as follows.[2]

5         Plaintiff briefly attended the party with other individuals.  As plaintiff and his friends were

6   leaving, a group of gang members (apparent rivals of gang members at the party) arrived and

7   began firing weapons.  Plaintiff and his group were driving away from the scene as the gunshots

8   began.  Two individuals—Matthew Fisher and Samantha Pereira—were killed in the backyard of

9   the house where the party was being held, while another—Bernabed Hernandez Canela—was

10  killed on a street just to the west of that house.

11        One of the individuals in plaintiff's car that evening, Jacob Tellez, was arrested for the

12  murder of Hernandez approximately two weeks later.  He had inadvertently called 911 while the

13  group was fleeing the party.  The 911 call featured an animated Tellez talking about the shooting.

14  However, the audio recording of the call was muffled and the exact words spoken were unclear.

15  When interviewed by a Merced County Sheriff's detective shortly after the shooting, Tellez

16  admitted being at the party and possessing a .22 caliber revolver.  Tellez told police he tried to

17  pull the gun out when the shooting started, but it caught on the seatbelt in plaintiff's car and

18  another occupant of the car—Andrew Massengale—grabbed his arm and told him not to pull the

19  gun out.  Tellez also told police he saw someone lying on the side of the road and it looked like a

20  piece of the person's hair or head was on the ground.  Following his interview of Tellez the

21  detective again listened to the 911 call recording.  Determining Tellez's account in his interview

22  was consistent with what could be deciphered from his 911 call, the detective released Tellez and

23  requested the warrant for his arrest be recalled.

24  /////

25

26  ---
    [2]  These facts are taken from plaintiff's complaint.  At this stage, the court must accept the factual
27  allegations of the complaint as true and construe them in the light most favorable to the plaintiff.
    *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v. United States*, 915 F.2d 1242, 1245
28  (9th Cir. 1989).

1    Subsequently, defendant detectives Hale, Sanchez, and Macias were assigned to conduct

2    the criminal investigation.  In January 2014, plaintiff's father, Larry Morse—the elected district

3    attorney of Merced County—publicly complained that the Merced County Sheriff's Department

4    was not putting sufficient resources into investigating gang violence, including the unsolved

5    Atwater killings.  In July 2014, defendants Hale, Sanchez, and Macias reopened the investigation

6    after having done no significant work on the case since May 2013.  They made Tellez the target

7    of the investigation into the murder of Hernandez, despite having no additional evidence linking

8    Tellez to the killing other than his 911 call.

9    Tellez was rearrested on July 17, 2014 and the police held a press conference to announce

10   the arrest.  This time Tellez was interviewed by defendant Sanchez and repeated essentially the

11   same version he had given the first detective to interview him, while adding information about an

12   individual Tellez said he saw shooting at Hernandez.  Still, the only evidence regarding Tellez

13   was his own 911 call on the night of the killing.

14   After the police press conference, plaintiff advised his father that he too was at the party

15   with Tellez, was driving and that Tellez had not fired a gun from plaintiff's car.  District Attorney

16   Morse promptly contacted defendant Hale to advise there was a problem with Tellez's arrest.

17   District Attorney Morse then arranged for his son to meet with the investigators.

18   Defendants Macias and Hale interviewed plaintiff on July 20, 2014.  Plaintiff corroborated

19   Tellez's account, stating the group of friends had been at the scene only briefly, were leaving as

20   shots broke out, that Tellez had a .22 caliber gun, that Massengale told Tellez not to shoot it and

21   that no shots were fired from plaintiff's car.  The defendants subsequently interviewed all the

22   witnesses in the car, with the exception of Massengale, whose father would not permit him to

23   speak with police without an attorney.  Defendants implied during their interviews of the other

24   witnesses that they would be charged with a crime if they failed to align their stories with the

25   defendants' theory of the case.[3]  Eventually, after much convincing from defendant Macias, one

26   of the individuals in the car—Sabrina Ceccolli—told police that although she was 95 percent sure

27   _____

[3]  Details of defendants' theory of the criminal case are not included in plaintiff's complaint,

28   however, plaintiff implies defendants sought evidence linking both him and Tellez to the murders.

1   no one shot a gun from plaintiff's car, some of the shots were louder than others and perhaps

2   some of them could have come from the car.  Similarly, Robert Tern, another passenger in the

3   car, initially told some of the defendants he was positive Tellez had not fired a gun.  However,

4   after the defendants threatened to jail him for lying, handcuffed him for forty-five minutes, and

5   told him he was a suspect in a triple homicide, Tern changed his story.[4]

6       Other witnesses, including Jacob Delgadillo and Tony Gomes, told police that Tellez did

7   not fire a gun.  Nevertheless, defendant Macias instead wrote in his report that Delgadillo told

8   him Tellez had pointed a gun out of the window of the car.  Gomes had actually identified two

9   other shooters, including one who was previously identified by Tellez, who he had seen shooting

10  in the direction of Hernandez.  Macias's report of the interview contains no mention of these

11  individuals, and no further investigation into these potential suspects was conducted by

12  authorities.

13      In his affidavit supporting the warrant for Tellez's second arrest, defendant Macias falsely

14  stated that Tellez incriminated himself by suggesting on the 911 call that he had shot Hernandez.

15  Macias also misrepresented the statements of a number of witnesses, including by suggesting that

16  Ceccolli told him she heard gunshots that sounded as if they were coming from plaintiff's car.

17  Defendant Macias did not advise the reviewing judge of the numerous statements exonerating

18  Tellez from involvement in the shooting, nor did he advise the judge that although Tellez

19  possessed a .22 caliber revolver on the night in question, Hernandez was known by police to have

20  been shot with .38 and .25 caliber bullets which could not have been fired from Tellez's gun.

21      The California Attorney General's Office took over prosecution of the case from District

22  Attorney Morse on July 23, 2014, because of the involvement of plaintiff, District Attorney

23  Morse's son.  Plaintiff was arrested by deputies on July 25, 2014 as an accessory to murder.  A

24  former sheriff called District Attorney Morse the Sunday after his son's arrest and suggested that

25  he apologize to the Sheriff's Department when he next addressed the public.  The Attorney

26  General's Office charged plaintiff with Hernandez's murder along with various gang

27

28  [4]  The complaint does not allege in what way Tern changed his story.

4

1  enhancements on July 29, 2014.  The Deputy Attorney General in charge of the case did not

2  conduct any independent review of the evidence prior to charging plaintiff with the murder, nor

3  did the defendant detectives disclose the exculpatory evidence—such as the names of the shooters

4  identified by the witnesses—to the new prosecutor.

5       In November 2014, a confidential informant came to the Merced Police Department to

6  discuss the triple murder.  He advised Police Detective Paul Johnson he knew that the two gang

7  members identified by Gomes had shot Hernandez because one of them confessed to him.  When

8  Police Detective Johnson attempted to convey this information to defendant Sheriff's Supervising

9  Detective Hale, Johnson was rebuffed, and no further investigation was conducted by the Merced

10  County Sheriff's Department.

11       From November 10, 2014 to November 14, 2014, a preliminary hearing was held in the

12  prosecution of plaintiff and Tellez, at which testimony from Massengale was introduced.  At the

13  close of that preliminary hearing the presiding judge declined to hold either Tellez or plaintiff to

14  answer and found that both were factually innocent.  The judge also noted that the 911 call did

15  not contain any admission by Tellez that he shot anyone.  Further, the judge found he could not

16  hear the words defendant Macias had represented were heard on the call, and also observed that

17  many of the allegedly incriminating details came from defendants' questions, not from the

18  answers given by the various witnesses in response to those questions.

19       As he was leaving the courthouse following the preliminary hearing, a sheriff's deputy

20  was heard to exclaim, "This is bullshit, I know this guy did it."  Subsequently, a social media

21  blogger for the local newspaper attributed statements to a sheriff's department source to the effect

22  that plaintiff "had gotten away with murder."  Plaintiff believes defendants continue to defame

23  him by accusing him of being an accomplice to murder.

24       As a result of the actions of the Merced County Sheriff's Department, plaintiff spent a

25  number of months in the county jail, missing his first semester at college in Arkansas where he

26  was slated to go on a wrestling scholarship.  Because he could not attend the first semester of

27  college, plaintiff lost his scholarship, and ultimately returned to Merced, where he now lives in

28  fear of retaliation because the publicity surrounding the case led gang members to believe that he

1  was, in fact, involved in the killing.  Plaintiff suffers from severe emotional distress as a result of

2  his wrongful arrest and detention.  He further alleges that neither of the two gang members

3  identified by the various sources as the shooters of Hernandez were ever arrested or investigated

4  further by the Merced County Sheriff's Department.

5      Based on these allegations, plaintiff brings causes of action under 42 U.S.C. § 1983

6  alleging Fourth Amendment claims against defendants Hale, Macias, and Sanchez for unlawful

7  searches and seizures, malicious prosecution, and the failure to advise him and others of

8  exculpatory evidence.  The last of these claims is also alleged to be a violation of plaintiff's

9  Fourteenth Amendment due process rights.  Plaintiff also alleges both the individual and county

10  defendants violated California Civil Code § 52.1, also known as the "Bane Act," by instituting a

11  malicious prosecution against him.  In connection with this claim plaintiff asserts that defendant

12  Merced County and Merced County Sheriff Tom Cavallero[5] are "liable under a theory of

13  respondeat superior."  (Doc. No. 1 at ¶ 69.)  Plaintiff also alleges state law tort claims for false

14  arrest/false imprisonment against all defendants; negligent and intentional infliction of emotional

15  distress against defendants Hale, Macias, and Sanchez; and defamation against the individual

16  defendants and Doe defendants 1–100.

17  **II.    Legal Standards**

18      The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal

19  sufficiency of the complaint.  *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir.

20  1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of

21  sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901

22  F.2d 696, 699 (9th Cir. 1990).  A plaintiff is required to allege "enough facts to state a claim to

23  relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A

24  claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

25

26  [5]  Sheriff Cavallero is not identified as a defendant in the caption of the complaint nor is he listed
     as such on this court's docket.  It is unclear whether plaintiff intends that he be named as a party
27  to this action, though the court observes that there is no indication in the docket that he has been
     served with a summons and complaint.  (Doc. No. 20.)
28

1  the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v.*

2  *Iqbal*, 556 U.S. 662, 678 (2009).

3       In determining whether a complaint states a claim on which relief may be granted, the

4  court accepts as true the allegations in the complaint and construes the allegations in the light

5  most favorable to the plaintiff.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v.*

6  *United States*, 915 F.2d 1242, 1245 (9th Cir. 1989).  However, the court need not assume the truth

7  of legal conclusions cast in the form of factual allegations.  *United States ex rel. Chunie v.*

8  *Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).  While Rule 8(a) does not require detailed

9  factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me

10  accusation."  *Iqbal*, 556 U.S. at 678.  A pleading is insufficient if it offers mere "labels and

11  conclusions" or "a formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S.

12  at 555.  *See also Iqbal*, 556 U.S. at 676 ("Threadbare recitals of the elements of a cause of action,

13  supported by mere conclusory statements, do not suffice.").  Moreover, it is inappropriate to

14  assume that the plaintiff "can prove facts which it has not alleged or that the defendants have

15  violated the . . . laws in ways that have not been alleged."  *Associated Gen. Contractors of Cal.,*

16  *Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

17       In ruling on a motion to dismiss brought pursuant to Rule 12(b)(6), the court is permitted

18  to consider material which is properly submitted as part of the complaint, documents that are not

19  physically attached to the complaint if their authenticity is not contested and the plaintiff's

20  complaint necessarily relies on them, and matters of public record.  *Lee v. City of Los Angeles*,

21  250 F.3d 668, 688–89 (9th Cir. 2001).

22  **III.**    **Analysis**

23       Defendants seek dismissal of many of plaintiff's causes of action on the following

24  grounds:

25      1.   Punitive damages may not be awarded against Merced County in light of California

26            Government Code § 818.

27  /////

28  /////

2. Plaintiff has failed to plead with sufficient specificity because many of the complaint's factual allegations include generic references to "defendants," without specifying which of the named defendants is being referred to.

3. The complaint fails to specify the statutory basis for the liability of Merced County, as required by California law.

4. Plaintiff has not alleged compliance with the directive in *State of California v. Superior Court of Kings County (Bodde)*, 32 Cal. 4th 1234 (2004), requiring that claims against a public entity to first be presented to the entity prior to commencement of litigation.

5. Even if some of plaintiff's claims were timely presented to the public entity in question, others were not, in violation of the claim presentation requirements set out in *Fall River Joint Unified School District v. Superior Court of Shasta County*, 206 Cal. App. 3d 431 (1988).

6. Plaintiff's defamation claims must fail because there is no specific reference to any alleged defamatory statement, the individual who allegedly made such statements is not identified, and there is no allegation that the alleged statements were false.

7. California Civil Code § 47 precludes all state law claims save the malicious prosecution claim.

8. Plaintiff failed to plead sufficient facts to support a claim under the Bane Act, because he did not allege threats, intimidation, or coercion independent from the alleged constitutional violation.

9. There is no independent tort of negligent infliction of emotional distress in California law.

10. Plaintiff has failed to allege he was the victim of extreme and outrageous conduct sufficient to sustain a claim for intentional infliction of emotional distress.

11. The individual defendants are entitled to immunity with respect to plaintiff's malicious prosecution and negligent and intentional infliction of emotional distress claims under California Government Code § 821.6.

12. Pursuant to California Government Code § 815.2(b), Merced County is not liable as to state law claims if the individual defendants are entitled to immunity with respect to those claims and to the extent state law claims are dismissed as to individual defendants, they must also be dismissed against the county.

13. Plaintiff has failed to plead sufficient facts to support a claim for punitive damages against the individual defendants (presumably on any cause of action).

14. Finally, to the extent the court does not dismiss any claim, the defendants request a more definite statement pursuant to Rule 12(e) of the Federal Rules of Civil Procedure.

Each of defendants' arguments is addressed in turn below.

*1.     Punitive Damages Unavailable Against Merced County*

Defendants claim punitive damages may not be awarded against Merced County pursuant to California Government Code § 818.[6]  That statute states:

> Notwithstanding any other provision of law, a public entity is not liable for damages awarded under Section 3294 of the Civil Code [which authorizes exemplary or punitive damages in certain circumstances] or other damages imposed primarily for the sake of example and by way of punishing the defendant.

Cal. Gov. Code § 818.  Counties and sheriffs' departments in California are generally considered public entities.  *See Zelig v. County of Los Angeles*, 27 Cal. 4th 1112, 1127–28 (2002).  In his opposition to the pending motion, plaintiff states he intends to seek punitive damages only against the individual defendants.  Accordingly, punitive damages are neither available nor being sought against Merced County or the Merced County Sheriff's Department to the extent plaintiff is attempting to name the latter as a separate defendant.

/////

/////

---

[6]     Though defendants have not argued it, punitive damages are also not available against municipalities under 42 U.S.C. § 1983.  *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) ("[W]e hold that a municipality is immune from punitive damages under 42 U.S.C. § 1983.").

1              *2.      Plaintiff Stated Claims with Sufficient Particularity*

2              According to defendants, because the complaint often refers to "defendants" collectively,

3    it fails to state a claim (apparently any claim) because there is insufficient factual specificity as to

4    which defendant plaintiff is alleging did what.  As a result, defendants contend, the complaint

5    "does not provide notice to any defendant of the specific conduct upon which plaintiff bases his

6    claims as it pertains to each stated claim."  (Doc. No. 6 at 7.)  Plaintiff responds that he has met

7    the pleading requirements under Rule 8, and has pled numerous facts against the individual

8    defendants which put defendants on notice of the conduct on which plaintiff's complaint is based.

9              The notice pleading standard in federal court is set out in Rule 8, and requires a pleading

10   contain a jurisdictional statement, "a short and plain statement of the claim showing that the

11   pleader is entitled to relief" and a demand for the relief sought.  Fed. R. Civ. P. 8(a).  "No

12   technical form is required."  Fed. R. Civ. P. 8(d)(1).  Further, the "[p]leadings must be construed

13   so as to do justice."  Fed. R. Civ. P. 8(e).  A plaintiff is only required to allege "enough facts to

14   state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

15   (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

16   court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

17   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The point of the liberal notice pleading system is "to

18   focus litigation on the merits of a claim."  *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 514

19   (2002).  "Notice pleading requires the plaintiff to set forth in his complaint *claims for relief*, not

20   causes of action, statutes or legal theories."  *Alvarez v. Hill*, 518 F.3d 1152, 1157 (9th Cir. 2008).

21   "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal

22   theory or sufficient facts to support a cognizable legal theory."  *Mendiondo v. Centinela Hosp.*

23   *Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

24             In his complaint plaintiff has alleged numerous, detailed facts in support of his contention

25   that the individual defendants manipulated witnesses, misrepresented facts to the state court in

26   sworn statements, withheld exculpatory evidence, and ultimately had plaintiff arrested and

27   charged with a murder they knew they lacked any evidence linking him to, while at the same time

28   ignoring key evidence linking others to the murder to other.  One can reasonably infer from the

                                                       10

1   factual allegations of the complaint that plaintiff is claiming that he was targeted in this way

2   because his father was a local elected official who had criticized the sheriff's department. The

3   complaint is certainly adequate to place the defendants on notice as to the activities they are

4   alleged to have engaged in, the legal basis for the claims against them, and the relief sought by

5   plaintiff. This is all Rule 8 requires, and defendants have presented no persuasive argument that

6   the collective reference to the defendants at various points in the complaint renders it inadequate.

7        *3.     Complaint Fails to Reference a Statutory Basis of Merced County's Liability*

8        According to defendants, plaintiff's claims against Merced County for wrongful arrest and

9   detention, and for violation of California Civil Code § 52.1, are deficient because the complaint

10   does not cite a specific statutory basis for such claims. Plaintiff noted in his opposition to the

11   motion to dismiss he is relying on California Government Code §§ 815.2, 820, and 820.4 to

12   allege claims for false arrest and false imprisonment. However, these statutory provisions are not

13   specifically identified in the complaint.

14        "Except as otherwise provided by statute," a public entity is not liable for an injury,

15   whether it arises out of an act or omission of the entity itself, a public employee, or any other

16   person. Cal. Gov. Code § 815. Under California law, since all government tort liability is

17   dependent on a statutory basis, a plaintiff must plead every fact with particularity, including the

18   statutory basis for the claim. *See Susman v. City of Los Angeles*, 269 Cal. App. 2d 803, 808–09

19   (1969).

20        California Civil Code § 52.1 permits individuals to bring private actions for damages

21   whenever the exercise or enjoyment of their constitutional rights under state or federal law is

22   interfered with by threat, intimidation, or coercion. It appears claims under § 52.1 may be

23   brought against public entities. *See Shoyoye v. County of Los Angeles*, 203 Cal. App. 4th 947,

24   950 (2012) (Bane Act claims brought against Los Angeles County). Public entities may be held

25   liable for injuries proximately caused by their employees within the scope of employment if the

26   act or omission would "have given rise to a cause of action against that employee or his personal

27   representative." Cal. Gov. Code § 815.2. *See also San Mateo Union High Sch. Dist. v. County of*

28   *San Mateo*, 213 Cal. App. 4th 418, 432–33 (2013) ("In addition to limited statutory liability for

their own conduct and legal obligations, public entities may incur liability, based on *respondeat superior* principles, for the misconduct of their employees that occurred in the scope of their employment.") (citations and quotations omitted).  "[A] public employee is liable for injury caused by his act or omission to the same extent as a private person."  Cal. Gov. Code § 820.  "A public employee is not liable for his act or omission, exercising due care, in the execution or enforcement of any law.  Nothing in this section exonerates a public employee from liability for false arrest or false imprisonment."  Cal. Gov. Code § 820.4.

Because the statutory basis for plaintiff's false arrest and false imprisonment claims is not identified in his complaint but rather only in his opposition to the motion to dismiss, these claims against the county must be dismissed.  However, since plaintiff clearly has a statutory basis for these claims, the court will grant him leave to amend the complaint to add the statutory bases for these state law claims.  Because plaintiff's claim for violation of Civil Code § 52.1 is clearly based in statute, it may proceed, and defendant's motion to dismiss in this respect will be denied.

>    *4.*     *Plaintiff Alleges Timely Presentation of Claims*

Defendants argue that plaintiff failed to comply with the *Bodde* maxim, which requires claims to be presented first to a government agency for payment.  According to defendants, plaintiff failed to plead compliance with the claim presentation requirements because the claim must be presented within six months of the accrual of the cause of action.  Plaintiff was arrested on July 25, 2014.  He filed a claim against Merced County on May 12, 2015.  According to defendants, his claim was therefore untimely, presumably because defendants believe plaintiff's cause of action accrued on the date he was originally arrested.  Plaintiff responds that, by statute, claims against police officers are tolled while criminal charges are pending.

In *State of California v. Superior Court of Kings County* (*Bodde*), 32 Cal. 4th 1234 (2004), the California Supreme Court noted that Government Code § 900, *et seq.* imposes a claim presentation requirement for tort suits against government entities.  "[U]nder these statutes, failure to timely present a claim for money or damages to a public entity bars a plaintiff from filing a lawsuit against that entity."  *Bodde*, 32 Cal. 4th at 1239.  The "submission of a claim to a public entity pursuant to section 900 *et seq.* is a condition precedent to a tort action and the failure

1   to present the claim bars the action." *Id.* at 1240 (citations and quotations omitted). Under

2   California law, this requires a plaintiff to "allege facts demonstrating or excusing compliance

3   with the claim presentation requirement." *Id.* at 1243. "A claim relating to a cause of action for

4   death or for injury to person . . . shall be presented . . . not later than six months after the accrual

5   of the cause of action." Cal. Gov. Code § 911.2.

6        Plaintiff argues that under California Government Code § 945.3 the statute of limitations

7   is tolled for actions against police officers while charges are pending.    However, § 945.3

8   specifically excepts § 911.2, which controls timing of presentation to a board of a public entity,

9   stating : "Nothing in this section shall prohibit the filing of a claim with the board of a public

10  entity, and this section shall not extend the time within which a claim is required to be presented

11  pursuant to Section 911.2." Cal. Gov. Code § 945.3. All of this is, however, is immaterial, since

12  the time for filing a claim under § 911.2 does not begin to run until the action accrues.

13       A cause of action for malicious prosecution accrues when "the underlying proceeding

14  [has] been terminated favorably to the malicious prosecution plaintiff." *Ray v. First Federal

15  Bank*, 61 Cal. App. 4th 315, 318 (1998). More specifically, the cause accrues "at the time of

16  entry of judgment in the underlying action in the trial court." *Stavropoulos v. Superior Court of

17  Los Angeles County*, 141 Cal. App. 4th 190, 197 (2006). Thus, a cause of action for false

18  imprisonment in California "accrues upon release from confinement." *Scannell v. County of

19  Riverside*, 152 Cal. App. 3d 596, 614 (1984). Moreover, the California Supreme Court has

20  clarified "[f]alse arrest and false imprisonment are not separate torts. False arrest is but one way

21  of committing a false imprisonment." *Asgari v. City of Los Angeles*, 15 Cal. 4th 744, 753 n.3

22  (1997) (citations and quotations omitted). "A cause of action for intentional infliction of

23  emotional distress accrues . . . once the plaintiff suffers severe emotional distress as a result of

24  outrageous conduct on the part of the defendant." *Cantu v. Resolution Trust Corp.*, 4 Cal. App.

25  4th 857, 889 (1992). Finally, a cause of action for defamation accrues "at the time the

26  defamatory statement is 'published,'" meaning "when the defendant communicates the

27  defamatory statement to a person other than the person being defamed." *Shively v. Bozanich*, 31

28  /////

13

1  Cal. 4th 1230, 1246–47 (2003).[7]

2       Here, plaintiff alleges in his complaint as follows.  Plaintiff was arrested on July 25, 2014.

3  (Doc. No. 1 at 15.)  A preliminary hearing was held in the criminal prosecution of plaintiff and

4  Tellez from November 10, 2014 through November 14, 2014, at the end of which plaintiff was

5  found to be factually innocent of the charges.[8]  (Doc. No. 1 at 17.)  As plaintiff was leaving the

6  courthouse, he heard a deputy remark, "This is bullshit, I know this guy did it," and a short while

7  later, a local newspaper published remarks from an unnamed source in the sheriff's department

8  that plaintiff and Tellez had "gotten away with murder."  (Doc. No. 1 at 17–18.)  While the

9  specific date is not listed in the complaint, presumably this occurred on November 14, 2014.  It

10  therefore appears that plaintiff's state law claims accrued on or about November 14, 2014.

11  Therefore, in order to comply with § 911.2, plaintiff was required to present the claims to the

12  county on or about May 14, 2015.  As alleged in the complaint, he timely presented the claim on

13  May 12, 2015, and it was rejected by Merced County on June 2, 2015.  (Doc. No. 1, at 8–9.)

14  Accordingly, defendant's motion to dismiss will be denied in this regard.

15       *5.*    *Plaintiff Did Not Present Defamation Claims to County*

16       Defendants' claim that, pursuant to the decision in *Fall River Joint Unified School*

17  *District*, 206 Cal. App. 3d 431 (1988), prior to filing a lawsuit against a public entity, a claimant

18  must present each legal theory of recovery or cause of action to that entity.  According to

19  defendants, if a complaint alleges a factual basis for recovery against a public entity not reflected

20  in the written claim submitted, it must be dismissed.  Further, defendants assert that although the

21  law allows for some variance, a wholesale change of theory between the claim and the complaint

22  is not permitted.  Because plaintiff failed to allege facts which would support defamation in his

23  claim submitted to Merced County, defendants contend that any cause of action for defamation

24  against the county set forth in plaintiff's complaint in this action must be dismissed.

---

25  [7] Claims brought pursuant to § 1983 are not subject to state claim presentation statutes.  *Ford v.*
26  *Long Beach Unified Sch. Dist.*, 461 F.3d 1087, 1089 (9th Cir. 2006).

27  [8] For purposes of addressing the pending motion, the court will assume that the state court found
a lack of probable cause and therefore declined to hold plaintiff and Tellez to answer on the
28  charges brought against them.  However, those words are not used in the complaint.

14

1    Plaintiff responds that he "clearly set forth facts in his government claim that Defendants

2    falsely and maliciously accused him of a heinous crime," and these accusations were "defamation

3    per se." (Doc. No. 21 at 18.) According to plaintiff, this is more than sufficient to put the County

4    and the individual defendants on notice that the specific statements of defendants cited in ¶ 53 of

5    the complaint—namely, "This is bullshit, I know this guy did it," and the anonymous newspaper

6    comments that plaintiff got away with murder—could be the basis for defamation claims.

7    California Government Code § 905 states "[t]here shall be presented . . . all claims for

8    money or damages against local public entities." Moreover, "no suit for money or damages may

9    be brought against a public entity on a cause of action for which a claim is required to be

10   presented." Cal. Gov. Code § 945.4. Further, "a cause of action against a public employee or

11   former public employee for injury resulting from an act or omission in the scope of his

12   employment as a public employee is barred if an action against the employing public entity for

13   such injury is barred" under § 900, *et seq*. Cal. Gov. Code § 950.2. Thus, claims against a public

14   employee or former public employee are subject to the claim presentation requirement of §§ 905

15   and 945.4, but only if the cause of action is "for injury resulting from an act or omission in the

16   scope of [the employee's] employment as a public employee." Cal. Gov. Code § 950.2.

17   The crucial question here appears to be one unaddressed by the parties—whether the

18   allegedly defamatory statements were "in the scope of [the defendants'] employment." Cal. Gov.

19   Code § 950.2. If they were, then California's claim presentation requirements apply to them. If

20   they were not, they are not subject to the claim presentation requirements at all. Indeed, the issue

21   of whether the acts occurred within the scope of defendants' employment is of added importance

22   since tortious acts occurring within the scope of employment create vicarious liability for

23   government agencies under California law. *See* Cal. Gov. Code § 815.2; *see also San Mateo*

24   *Union High Sch. Dist. v. County of San Mateo*, 213 Cal. App. 4th 418, 432–33 (2013) ("In

25   addition to limited statutory liability for their own conduct and legal obligations, public entities

26   may incur liability, based on *respondeat superior* principles, for the misconduct of their

27   employees that occurred in the scope of their employment."). The court notes that plaintiff has

28   asserted defamation claims only against the individual defendants, and not against the county

15

1    defendant, suggesting that he may believe the alleged acts were undertaken outside of the scope

2    of the defendants' employment and therefore provide no basis for *respondeat superior* liability.[9]

3        "An employee acts within 'the scope of his employment' when he is engaged in work he

4    was employed to perform or when an act is incident to his duty and was performed for the benefit

5    of his employer and not to serve his own purpose." *Fowler v. Howell*, 42 Cal. App. 4th 1746,

6    1750–51 (1996) (citing *Mazzola v. Feinstein*, 154 Cal. App. 3d 305, 311 (1984)).  "The proper

7    inquiry is not whether the wrongful act itself was authorized but whether it was committed in the

8    course of a series of acts of the employee which were authorized by the employer." *Id.* (quoting

9    *Perez v. Van Groningen & Sons, Inc.*, 41 Cal. 3d 962, 970 (1986)).  The "scope of employment"

10   is viewed broadly to "include willful and malicious torts as well as negligence." *Id.* (citing *John*

11   *R. v. Oakland Unified Sch. Dist.*, 48 Cal. 3d 438, 447 (1989).  The employee need not be

12   "engaged in the ultimate object of his employment" at the time of his wrongful act in order to be

13   acting within the scope of his employment. *Id.*  Ordinarily, the question of the scope of

---

14   [9]  The "scope of employment" question appears to be dispositive.  The defamation claims were
     apparently not presented in the administrative claim filed by plaintiff with the county.  *See Fall*
15   *River*, 206 Cal. App. 3d at 433–36.  The California Supreme Court has stated the purpose of claim
     presentation statutes is "to provide the public entity sufficient information to enable it to
16   adequately investigate claims and to settle them, if appropriate, without the expense of litigation."
     *City of San Jose v. Superior Court of Santa Clara County*, 12 Cal. 3d 447, 455 (1974).  "A theory
17   of recovery not included in the claim may not thereafter be maintained, . . . [but] the claim need
18   not conform to pleading standards."  *Shoemaker v. Myers*, 2 Cal. App. 4th 1407, 1426 (1992).
     Rather, courts employ a test of substantial, rather than strict, compliance which is satisfied if "the
19   claim satisfied the purpose of the act without prejudice to the government."  *Elias v. San*
     *Bernardino County Flood Control Dist.*, 68 Cal. App. 3d 70, 74–75 (1977).  Here, plaintiff has
20   clarified that his defamation claims are based on the two specific sets of statements:  1) a
     comment plaintiff heard as he was leaving the courthouse in which an unidentified sheriff's
21   deputy said, "This is bullshit, I know this guy did it," (Doc. No. 1 at 18); and 2) anonymous
22   comments in a *Merced Sun Star* blog attributing statements that plaintiff was an accomplice to
     murder and got away with murder to unnamed sources in the Merced County Sheriff's
23   Department, believed to be defendants Macias, Hale, and Sanchez (Doc. No. 1 at 18).  Plaintiff
24   does not contend that the criminal proceeding itself was defamatory.  In opposition to the pending
     motion plaintiff argues the defendants knew they were falsely accusing him of murder and that
25   such false accusations are defamation per se.  This argument is unpersuasive.  Again, plaintiff is
     not alleging that the criminal prosecution was itself defamatory.  Rather, plaintiff alleges only
26   that two sets of statements made after his preliminary hearing were defamatory.  Yet, there is no
27   reference to either set of statements in the administrative claim filed by plaintiff with Merced
     County, and no reference therein to defamation.  The County therefore was not given the required
28   notice with respect to such claims.

1   employment in California law is one of fact, unless the "facts are undisputed and no conflicting

2   inferences are possible." *Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*, 12 Cal. 4th 291 (1995)

3   (quoting *Mary M. v. City of Los Angeles*, 54 Cal. 3d 202, 215 (1991)). *See also Farmers Ins.*

4   *Group v. Cty. of Santa Clara*, 11 Cal. 4th 992, 1019 (1995).

5          As noted above, plaintiff has alleged the purportedly defamatory comments occurred at

6   two separate times and places. The court has nothing before it from which to determine what the

7   scope of the officers' employment was under California law, and whether they were acting within

8   it at the time these allegedly defamatory statements occurred. Nor has either party addressed this

9   point. Therefore, defendants' motion to dismiss the defamation claims on this ground will be

10   denied without prejudice.

11          *6.      Plaintiff's Defamation Claims Against the Individual Defendants*

12          According to defendants, plaintiff's defamation claims must also be dismissed because

13   his complaint does not set out "the specific words or the substance of" the allegedly defamatory

14   statements. In particular, defendants argue that while "each defendant may be able to make an

15   educated guess as to the alleged defamatory statement(s) plaintiff alleges pertains to him,"

16   plaintiff must plead the specific statements and who published the statements in order to state a

17   cognizable defamation claim. Defendants may also be asserting plaintiff failed to plead that any

18   of the statements were false as is required.

19          "A claim for defamation requires proof of a false and unprivileged publication that

20   exposes the plaintiff 'to hatred, contempt, ridicule, or obloquy, or which causes him to be

21   shunned or avoided, or which has a tendency to injure him in his occupation.'" *McGarry v.*

22   *University of San Diego*, 154 Cal. App. 4th 97, 112 (2007) (quoting Cal. Civ. Code § 45). A

23   complaint is insufficient when it "does not allege either the specific words or the substance of

24   statements" alleged to be defamatory. *Lipman v. Brisbane Elementary Sch. Dist.*, 55 Cal. 2d 224,

25   235 (1961) *abrogated on other grounds as noted in Brown v. Kelly Broad. Co.*, 48 Cal. 3d 711,

26   753 n.37 (1989). The defining feature of a defamation claim is a statement of fact that is

27   "provably false," and "'rhetorical hyperbole,' 'vigorous epithet[s],' 'lusty and imaginative

28   expression[s] of . . . contempt,' and language used 'in a loose, figurative sense' have all been

1   accorded constitutional protection." *Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1048

2   (2008) (quoting *Ferlauto v. Hamsher*, 74 Cal. App. 4th 1394, 1401 (1999)).  As one California

3   court has noted:

> It is sometimes said to be a requirement, and it certainly is the
> common practice, to plead the exact words or the picture or other
> defamatory matter.  The chief reason appears to be that the court
> must determine, as a question of law, whether the defamatory
> matter is on its face or capable of the defamatory meaning
> attributed to it by the innuendo.  Hence, the complaint should set
> the matter out verbatim, either in the body or as an attached exhibit.

8   *Comstock v. Aber*, 212 Cal. App. 4th 931, 948 (2012) (quoting 5 Witkin, Cal. Procedure (5th ed.

9   2008) Pleading, § 739, p. 159).

10          As noted above, however, plaintiff alleges two distinct sets of statements as being

11   defamatory.  With respect to the statements published in the *Merced Sun Star*, plaintiff asserts

12   defendant Macias, Hale, and Sanchez "continue to defame him by accusing him of being an

13   accomplice to murder and stating the only reason he was not held to answer is because of the

14   Attorney General's mistakes."  (Doc. No. 1 at 18.)  In his complaint plaintiff sets out either

15   specific defamatory words or the substance of statements which are purportedly defamatory.  *See*

16   *Lipman*, 55 Cal. 2d at 235.  This is sufficient to state a claim for defamation.  Plaintiff need not be

17   able to allege which of the three named individual defendants gave unattributed statements to a

18   newspaper reporter, or which defendant (admittedly unknown by plaintiff) made the allegedly

19   defamatory statement following the preliminary hearing, prior to the conducting of discovery.

20   Plaintiff has adequately alleged that the statements in question were false.  Therefore, defendants'

21   motion to dismiss plaintiff's defamation claims will be denied.

22          7.      *California Civil Code § 47*

23          Defendants also seeks dismissal of "the state claims except for the malicious prosecution

24   claim" pursuant to California Civil Code § 47.[10]  They contend that "it is fair for defendants to

25   presume despite the lack of clarity, the alleged slanderous statements were made while defendants

26   were marshaling evidence and investigating a murder," and are therefore privileged.  Opposing

---

27

[10]  Defendants clarified at the hearing on the pending motion that they seek dismissal of only the

28   defamation claim on the basis of Civil Code § 47.

1    dismissal, plaintiff argues that the specific statements made following his preliminary hearing

2    were not made in furtherance of the investigation and are therefore not protected.

3         California Civil Code § 47(b) provides that a "privileged publication or broadcast is one

4    made . . . [i]n any . . . judicial proceeding . . . .[11]  As explained by the California Supreme Court,

5    the litigation privilege found in Civil Code § 47(b) provides a "publication or broadcast" made as

6    part of a "judicial proceeding" is absolutely privileged.  *Action Apartment Ass'n, Inc. v. City of*

7    *Santa Monica*, 41 Cal. 4th 1232, 1241 (2007).  "The usual formulation is that the privilege applies

8    to any communication:  (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other

9    participants authorized by law; (3) to achieve the objects of the litigation; and (4) that has some

10   connection or logical relation to the action."  *Id.*  The privilege applies not just to statements made

11   during judicial proceedings, but "may extend to steps taken prior thereto, or afterwards."  *Id.*

12   (quoting *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1057 (2006)).  The privilege "derives from

13   common law principles establishing a defense to the tort of defamation," and was "primarily

14   designed to limit an individual's potential liability for defamation."  *Id.* (quoting *Oren Royal*

15   *Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc.*, 42 Cal. 3d 1157, 1163 (1986)).

16        Defendants' argument is unavailing.  The statements at issue occurred after the court

17   declined to hold plaintiff to answer following his preliminary hearing at which time there was a

18   judicial finding that probable cause was lacking.  Therefore, the alleged defamatory statements

19   cannot be said to have been made to "achieve the objects of the litigation," since the criminal

20   prosecution had already concluded in plaintiff's favor.  Defendants' alleged defamatory

---

21   [11]  In their reply, defendants argue that certain paragraphs of the complaint "do not identify any of
22   the alleged defamatory statements (whatever they may be) were made with malice, implicating
     Cal. Civil Code section 47(c)."  (Doc. No. 24 at 16.)  The implicated privilege—commonly
23   denominated the "common interest" privilege—requires the defendant to first demonstrate the
     statement in question was "made on a privileged occasion," after which the burden becomes
24   plaintiff's to show malice.  *Taus v. Loftus*, 40 Cal. 4th 683, 721 (2007).  The California Supreme
     Court has noted, "the common-interest privilege has proved to be a source of vexation and
25   bafflement to courts and commentators alike."  *Lundquist v. Reusser*, 7 Cal. 4th 1193, 1204 n.10
     (1994).  Defendants do not explain how the communications in question were "made on a
26   privileged occasion."  Accordingly, dismissal is not appropriate on this ground. Similarly,
27   defendant do not explain how the statements at issue could be construed as having been made "in
     the proper discharge of an official duty" under § 47(a).  Therefore, that provision provides no
28   basis for dismissal.

1 statements are therefore not protected by the litigation privilege and are not subject to dismissal.

2      8.    *Plaintiff's Bane Act Claim*

3      According to defendants, plaintiff's Bane Act claim, brought pursuant to California Civil

4 Code § 52.1 should be dismissed because his complaint does not allege the existence of threats,

5 intimidation, or coercion separate and apart from the inherent coercion in his alleged false

6 imprisonment. Additionally, defendants contend that plaintiff's claims under § 52.1 against

7 Merced County must be dismissed because no allegations specific to the county are alleged in the

8 complaint, though defendant also says it "believed the County's liability was vicarious only."

9 (Doc. No. 6 at 27.) According to plaintiff, the coercion in an intentional deprivation of one's

10 liberty without probable cause is sufficient to state a claim under § 52.1.[12]

11      Another judge of this court has recently recognized the split among the District Courts of

12 California concerning what is required to state a cognizable Bane Act claim:

> The Bane Act, codified in the California Civil Code, authorizes individual civil actions for damages and injunctive relief by individuals whose federal or state rights have been interfered with by threats, intimidation, or coercion. Cal. Civ. Code § 52.1. Section 52.1 "does not extend to all ordinary tort actions because its provisions are limited to threats, intimidation, or coercion that interferes with a constitutional or statutory right." *Venegas v. County of Los Angeles*, 32 Cal.4th 820, 843 (2004). After a recent California Court of Appeal decision, *Shoyoye v. County of Los Angeles*, 203 Cal. App. 4th 947 (2012), federal district courts have reached different results in trying to answer the question whether a plaintiff bringing a Bane Act claim must introduce independent evidence showing threats, intimidation, or coercion, in addition to showing a constitutional violation. *See Davis v. City of San Jose*, —–F.Supp.3d ——, No. 14–2035, 2014 WL 4772668, *6 (N.D. Cal. Sept.24, 2014) (collecting cases). One group has concluded intentional conduct or excessive force claims suffice alone. *Id.* The other has held "something more than an inherently coercive violation is required to state a claim under the Bane Act." *Id.* At least in the Fourth Amendment context, this court has sided with the first camp. *See Johnson v. Shasta County*, No. 14–01338, 2015 WL 75245, at *13 (E.D. Cal. Jan. 6, 2015) ("'Where Fourth Amendment unreasonable seizure or excessive force claims are raised and intentional conduct is at issue, there is no need for a plaintiff to allege a showing of coercion independent from the coercion inherent in the seizure or use of force.'" (quoting *Dillman v. Tuolumne County*, No. 1300404, 2013 WL 1907379, at *21 (E.D. Cal. May 7, 2013)).

_____

28 [12] Plaintiff does not separately discuss any § 52.1 claims against Merced County.

1    *Akey v. Placer County*, No. 2:14-cv-02402-KJM-KJN, 2015 WL 1291436 (E.D. Cal. Mar. 20,

2    2015).  The order in *Akey* was issued shortly after the California Court of Appeals concluded that

3    where there is an "allegedly unlawful arrest but no alleged coercion beyond the coercion inherent

4    in any arrest . . . [the] wrongful arrest or detention, without more, does not satisfy both elements

5    of section 52.1."  *Allen v. City of Sacramento*, 234 Cal. App. 4th 41, 69 (2015).  Since the

6    decision in *Allen*, two California District Judges have come to a conclusion contrary to that

7    reached by the court in *Allen* while specifically acknowledging its holding.  *See Adamson v. City*

8    *of San Francisco*, No. 13-cv-05233-DMR, 2015 WL 5467744, at *9 (N.D. Cal. Sept. 17, 2015)

9    ("[T]his court has previously held, consistent with the weight of authority in this district, that a

10   section 52.1 claim 'does not require threats, coercion, or intimidation independent from the

11   threats, coercion, or intimidation inherent in the alleged constitutional or statutory violation.'");

12   *McKibben v. McMahon*, No. EDCV 14-02171 (JGB), 2015 WL 10382396, at *4 (C.D. Cal. Apr.

13   17, 2015) (distinguishing *Allen*).  "In the absence of a controlling California Supreme Court

14   decision, [a federal court] must predict how the California Supreme Court would decide the issue,

15   using intermediate appellate court decisions, statutes, and decisions from other jurisdictions as

16   interpretive aids."  *Gravquick A/S v. Trimble Navigation Int'l Ltd.*, 323 F.3d 1219, 1222 (9th Cir.

17   2003).

18          Here, plaintiff has alleged defendants "caused the initiation of a malicious criminal

19   prosecution against Plaintiff in violation of his First[13] and Fourth Amendment rights under the

20   United States Constitution and corresponding rights under the California Constitution."  (Doc.

21   No. 1 at 20–21.)  Until the California Supreme Court or the Ninth Circuit Court of Appeals holds

22   otherwise, the undersigned will follow the weight of authority among District Courts in California

23   and find that there is no need for a plaintiff to allege coercion independent from the coercion

24

---

25   [13]  Plaintiff does not allege First Amendment violations by the defendants anywhere in his
     complaint.  (*See* Doc. No. 1 at 19 (alleging causes of action under 42 U.S.C. § 1983 for violations

26   of the Fourth and Fourteenth Amendments).)  Nor does this cause of action explain how
     defendants violated his First Amendment rights in instituting a malicious prosecution against him

27   for murder.  Plaintiff may well have made a typographical error in including reference to the First
     Amendment.  Accordingly, the court will ignore it.

28

1   inherent in the seizure of the plaintiff without probable cause to state such a claim.  Because

2   California imposes vicarious liability on public entities by statute (Cal. Gov. Code § 815.2), it

3   appears plaintiff may state a claim against the County of Merced for the individual defendants'

4   Bane Act violations as well.

5           9.      *Plaintiff's Claim for Negligent Infliction of Emotional Distress*

6           Defendants argue there is no independent tort of negligent infliction of emotional distress

7   under California law and that such a claim may only arise in either a direct victim or bystander

8   setting.  Further, defendants argue "[t]he facts as alleged do not support the claim."  (Doc. No. 6

9   at 27.)  Plaintiff first asserted in his opposition to the pending motion that he was simply alleging

10  negligence, not negligent infliction of emotional distress.  However, at the hearing on the pending

11  motion counsel for plaintiff changed course and contended this was a separate cause of action

12  alleging negligent infliction of emotional distress, as approved of in *Martinez v. City of Los*

13  *Angeles*, 141 F.3d 1373 (9th Cir. 1998), rather than simply a negligence claim.

14          Defendants are correct that there is no independent tort of negligent infliction of emotional

15  distress under California law.  *Burgess v. Superior Court*, 2 Cal. 4th 1064, 1072 (1992) ("We

16  have repeatedly recognized that '[t]he negligent causing of emotional distress is not an

17  independent tort, but the tort of negligence.'") (quoting *Marlene F. v. Affiliated Psychiatric*

18  *Medical Clinic, Inc.*, 48 Cal. 3d 583, 588 (1989))).  Negligent infliction of emotional distress is

19  instead a subset of negligence that extends the ability to recover damages to indirect victims who,

20  while not suffering physical injury as the result of a tortfeasor's acts, nonetheless suffer severe

21  emotional distress.  *See, e.g., Dillon v. Legg*, 68 Cal. 2d 728, 747–48 (1968) (allowing mother to

22  pursue damages for emotional trauma resulting from witnessing the death of her child).

23  However, when emotional distress accompanies physical injury, negligent infliction of emotional

24  distress is not the appropriate cause of action for seeking recovery of the resulting damages.

25  Rather, when a plaintiff is physically injured and suffers emotional distress as a result, damages

26  stemming from the emotional distress are treated as a "parasitic item" to be recovered through a

27  claim of ordinary negligence.  *Thing v. La Chusa*, 48 Cal. 3d 644, 651 (1989); *see also Summers*

28  *v. Delta Airlines, Inc.*, 805 F. Supp. 2d 874, 887 (N.D. Cal. 2011) ("Under California law, it is

1   well-settled that in ordinary negligence actions for physical injury, recovery for emotional distress

2   caused by that injury is available as an item of parasitic damages.") (quotation omitted).

3          A negligent infliction of emotional distress claim as a vehicle for recovery when one is not

4   directly injured is available only in limited circumstances.  Under the "direct victim" theory, a

5   plaintiff may recover damages for serious emotional distress—absent a physical injury—if the

6   distress results from "a breach of duty owed the plaintiff that is 'assumed by the defendant or

7   imposed on the defendant as a matter of law, or that arises out of a relationship between the

8   two.'"  *Burgess*, 2 Cal. 4th at 1073 (quoting *Marlene F.*, 48 Cal. 3d at 590).  "To recover damages

9   for emotional distress, absent physical injury, in a 'bystander case' the plaintiff must be: (1)

10   Closely related to the injury victim; (2) Present at the scene of the injury-producing event at the

11   time it occurs and is then aware that it is causing injury to the victim; and (3) Suffer emotional

12   distress as a result, beyond that which would occur in a disinterested witness." *Megargee ex rel.*

13   *Lopez v. Wittman*, No. CVF 06-0684 AWI-LJO, 2006 WL 2988945, at *16 (E.D. Cal. Oct. 17,

14   2006) (citing *Martin By and Through Martin v. United States*, 984 F.2d 1033, 1037 (9th Cir.

15   1992)).

16          Plaintiff alleges he was directly—as opposed to indirectly—injured by the illegal activity

17   of defendants.  The complaint alleges that negligently inflicted emotional distress because they

18   "were negligent and their negligence was a substantial factor in causing Plaintiff to suffer serious

19   emotional distress."  (Doc. No. 1 at 22.)  Insofar as these allegations reflect an attempt to fit into

20   either the "direct victim" or "bystander" theories outline above, they are wholly insufficient.

21   Plaintiff does not state a cause of action for negligent infliction of emotional distress.[14]

22          *10.    Plaintiff's Intentional Infliction of Emotional Distress Claim*

23          According to defendants, plaintiff failed to allege he was the victim of extreme and

24   outrageous conduct sufficient to sustain a claim for intentional infliction of emotional distress.

25   Plaintiff responds that defendants' arrest of plaintiff "based on misrepresentations in an arrest

26   _____

27   [14]  This does not mean plaintiff may not introduce at trial evidence of his emotional distress and
     attempt to recover damages for it through his other tort claims against defendants.  As the
     *Martinez* case, upon which plaintiff relies, suggests, claims for emotional distress damages are

28   simply derivative of the cognizable, underlying claims.

1    warrant," combined with the withholding of evidence from the prosecuting Deputy Attorney

2    General and "wantonly refus[ing] to investigate persons who had confessed to committing the

3    crime . . . is extreme and outrageous conduct."  (Doc. No. 21 at 23.)

4         The tort of intentional infliction of emotional distress has three elements:  "(1) extreme

5    and outrageous conduct by the defendant with the intention of causing, or reckless disregard of

6    the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme

7    emotional distress; and (3) actual and proximate causation of the emotional distress by the

8    defendant's outrageous conduct."  *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009).  Extreme and

9    outrageous conduct is described as being conduct which is "intentional or reckless and which is

10   outside the bounds of decency."  *Christensen v. Superior Court of Los Angeles County*, 54 Cal. 3d

11   868, 904 (1991).  The California Supreme Court has noted that threats of harm or death can meet

12   this criteria, as can harassing e-mails or well-pled claims of sexual harassment.  *Id.* at 1051 (citing

13   cases).  Because there is no bright line rule for when conduct qualifies as outrageous, it is usually

14   a question of fact for a jury to decide.  *Yun Hee So v. Sook Ja Shin*, 212 Cal. App. 4th 652, 671–

15   72 (2013).  A court may dismiss such claims as a matter of law if the conduct alleged is

16   insufficiently outrageous, particularly where the conduct alleged amounts to "mere insults,

17   indignities, threats, annoyances, petty oppressions, or other trivialities."  *Hughes*, 46 Cal. 4th at

18   1051 (quotations and citations omitted).

19        Here, the conduct alleged by plaintiff in his complaint goes far beyond "mere insults" or

20   indignities.  Taking those allegations as true, the individual defendants knowingly misrepresented

21   information in order to arrest him and charge him with murder, apparently in order to exact

22   political retribution against plaintiff's father, a local politician who had been critical of the

23   Sherriff's Department.  A jury could certainly find this behavior was extreme and outrageous and

24   beyond the bounds of decency.  Accordingly, defendants' motion to dismiss this claim will be

25   denied

26        11.    *Defendant's Immunity Under Government Code § 821.6*

27        The individual defendants argue that California Government Code § 821.6 immunizes

28   them from liability for malicious prosecution and negligent and intentional infliction of emotional

1    distress.  Plaintiff responds that he is not pursuing a state law malicious prosecution because

2    defendants are immune, but contends that § 821.6 does not immunize the defendants from

3    liability under 42 U.S.C. § 1983 for malicious prosecution.[15]  Further, plaintiff asserts § 821.6

4    does not immunize defendants from claims of false arrest or false imprisonment, and therefore

5    should also not immunize defendants from his claims of negligence and intentional infliction of

6    emotional distress.  In their reply, defendants suggest they are actually arguing that § 821.6 also

7    provides them immunity from plaintiff's defamation claims in addition to those other claims.

8         "A public employee is not liable for injury caused by his instituting or prosecuting any

9    judicial or administrative proceeding within the scope of his employment, even if he acts

10   maliciously and without probable cause."  Cal. Gov. Code § 821.6.  "Although Government Code

11   section 821.6 has primarily been applied to immunize prosecuting attorneys and other similar

12   individuals, this section is not restricted to legally trained personnel but applies to all employees

13   of a public entity."  *Kemmerer v. County of Fresno*, 200 Cal. App. 3d 1426, 1436 (1988).

14   "Neither is the section 'limited to suits for damages for malicious prosecution, although that is a

15   principal use of the statute.'"  *Id.* (quoting *Kayfetz v. State of California*, 156 Cal. App. 3d 491,

16   497 (1984)).  This section has been held to apply to peace officers.  *Johnson v. City of Pacifica*, 4

17   Cal. App. 3d 82, 86–87 (1970).  However, § 821.6 does not provide immunity for false arrest,

18   false imprisonment, or a claim for arrest without probable cause brought under California Civil

19   Code § 52.1.  *See Gilan v. City of San Marino*, 147 Cal. App. 4th 1033, 1050–51 (2007).  Finally,

20   the Ninth Circuit has held that while § 821.6 immunizes state employees from malicious

21   prosecution claims, it does not affect false arrest/false imprisonment claims or claims that are

22   "derivative" of them.  *Cousins v. Lockyer*, 568 F.3d 1063, 1071–72 (9th Cir. 2009).  *But see*

---

23   [15]  This appears to be correct.  *See Kimes v. Stone*, 84 F.3d 1121, 1128 (9th Cir. 1996) ("[S]tate
24   immunity law does not govern § 1983 claims.")  More importantly, defendants did not move to
     dismiss plaintiff's § 1983 claims on the basis of state law immunity.  It is true that in their reply
25   (Doc. No. 24 at 17), defendants suggest that plaintiff may not state a § 1983 cause of action due
     to his failure to allege an equal protection violation.  *See Cline v. Brusett*, 661 F.2d 108, 112 (9th
26   Cir. 1981); *Bretz v. Kelman*, 773 F.2d 1026, 1031 (9th Cir. 1985).  However, defendants allude to
     this argument only in their reply and it therefore has not been briefed by the parties.  Accordingly,
27   to the extent defendants seek dismissal of plaintiff's § 1983 malicious prosecution claim on this
     grounds improperly raised only in reply, their motion will be denied.
28

1    *Bocanegra v. Jakubowski*, 241 Cal. App. 4th 848, 854 (2015).

2       Above, the court has already concluded that plaintiff has failed to state a separate cause of

3 action for negligent infliction of emotional distress.[16]  Plaintiff's intentional infliction of

4 emotional distress claims are clearly derivative of his false imprisonment claim.  (*See* Doc. No.

5 22 at ¶ 81) ("Defendants, in the conduct set forth above, engage in outrageous behaviors.  By

6 such conduct, Defendants intended to cause Plaintiff emotional distress, or engaged in conduct

7 with reckless disregard of the probability of causing Plaintiff emotional distress or both.").

8       Defendants assert in their reply that they are immune under § 821.6 to plaintiff's

9 defamation claims.  According to defendants, "[t]he scope of the immunity [granted by the

10 statute] 'is dependent not on when the acts occurred, but whether they are causally connected to

11 the investigation and prosecution.'"  (Doc. No. 24 at 16) (quoting *County of Los Angeles v.*

12 *Superior Court of Los Angeles County*, 181 Cal. App. 4th 218, 230 (2009).)  Here, plaintiff's

13 defamation claims are based on the post-hearing statements of the individual defendants, after

14 both the investigation and prosecution of the criminal charges were concluded.  Such statements

15 cannot be described as being "part of the investigation and prosecution process" and, therefore,

16 do not fall under the immunity conferred by § 821.6.  Accordingly, this aspect of defendants'

17 motion to dismiss the claims will be denied.

18       *12.*     *County Immunity*

19       Defendants also argue that to the extent claims are dismissed against the individual

20 plaintiffs or they are held immune, the claims must also be dismissed against Merced County

21 because plaintiff is proceeding on a vicarious liability theory.  Plaintiff offers no opposition.  As

22 set forth above, the court finds only that plaintiff failed to state a cognizable claim for negligent

23 infliction of emotional distress.  That claim is leveled by plaintiff only against the individual

24

---

25 [16]  To the extent plaintiff is seeking to present alternate theories of false imprisonment—one
intentional, one negligent—the court will not assess the merit of each of those theories now since
26 defendants do not contest that plaintiff has alleged a cognizable false imprisonment claim.  *See*
*Westways Word Travel v. AMR Corp.*, 182 F. Supp. 2d 952, 957 (C.D. Cal. 2001) ("[I]t would be
27 burdensome to have the district court 'prune' a complaint at the pleading stage by making a
determination with regard to each allegation within a cause of action that is legally cognizable
28 when viewed in its totality.") (quoting *Bernheim v. Litt*, 79 F.3d 318, 316 (2d Cir. 1996)).

1  defendants.  There defendants' motion to dismiss that claim as to the defendant County will be

2  denied as unnecessary.

3       *13.*     *Plaintiff's Claims for Punitive Damages Against the Individual Defendants*

4       Defendants argue that plaintiff has failed to plead sufficient facts to support a claim for

5  punitive damages against the individual defendants, presumably with respect to any of his causes

6  of action.  Plaintiff argues the factual allegations suggesting defendants targeted him for

7  prosecution in order to exact political retribution against his father are sufficient to sustain a

8  punitive damages claim because they demonstrate malice and that defendants acted in conscious

9  disregard of plaintiff's constitutional rights.

10       "The standard for punitive damages under § 1983 mirrors the standard for punitive

11  damages under common law tort cases."  *Dang v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005).

12  "[M]alicious, wanton, or oppressive acts or omissions are within the boundaries of traditional tort

13  standards for assessing punitive damages and foster 'deterrence and punishment over and above

14  that provided by compensatory awards.'"  *Id.* (quoting *Smith v. Wade*, 461 U.S. 30, 54 (1983)).

15  Here, if the facts as alleged in plaintiff's complain are proven, a reasonable jury could find the

16  individual defendants' behavior to be malicious, wanton, or oppressive.  Accordingly, defendants

17  are not entitled to dismissal of plaintiff's punitive damages claim.

18       *14.*     *Defendants' Request for a More Definite Statement*

19       Defendants alternatively move for a more definite statement of plaintiff's claims under

20  Rule 12(e), arguing that "the Complaint lacks any factual specificity with respect to the alleged

21  wrongful conduct of each of the individual defendants."  Plaintiff did not respond to this

22  argument in his opposition.

23       Rule 12 states a party may move for a more definite statement if the pleading is "so vague

24  and ambiguous that the party cannot reasonably prepare a response."  Fed. R. Civ. P. 12(e).  In so

25  moving, the party "must point out the defects complained of and the details desired."  *Id.*  Such

26  motions are "not favored by the courts since pleadings in federal courts are only required to fairly

27  notify the opposing party of the nature of the claim."  *Griffin v. Cedar Fair, L.P.*, 817 F. Supp. 2d

28  1152, 1154 (N.D. Cal. 2011) (quoting *Resolution Trust Corp. v. Dean*, 854 F. Supp. 626, 629 (D.

1    Ariz. 1994)).  Finally, motions for a more definite statement "should not be granted unless the

2    defendant cannot frame a responsive pleading."  *Famolare, Inc. v. Edison Bros. Stores, Inc.*, 525

3    F. Supp. 940, 949 (E.D. Cal. 1981).

4          Here, defendants' only concrete complaint about the vagueness of plaintiff's complaint is

5    that it generically refers to "defendants" on occasion, rather than specifying which of the

6    individual defendants is alleged to have acted.  However, plaintiff has included significant factual

7    detail in his complaint and those allegations are more than sufficient to put defendants on notice

8    of the claims and actions being alleged.  Defendants' motion for a more definite statement will

9    therefore be denied.

10   **IV.    Conclusion**

11         For all of the reasons set forth above, defendants' motion to dismiss (Doc. No. 6) is

12   granted in part and denied in part as follows:

13         1.    The motion to dismiss plaintiff's punitive damages claim against Merced County

14               is granted;

15         2.    The motion to dismiss due to plaintiff's failure to allege his claims with

16               sufficiently particularity is denied;

17         3.    The motion to dismiss Merced County due to plaintiff's failure to allege a statutory

18               basis for his false arrest and imprisonment causes of action is granted with leave to

19               amend and is denied as to plaintiff's cause of action brought pursuant to California

20               Civil Code § 52.1;

21         4.    The motion to dismiss due to plaintiff's failure to timely file an administrative

22               claim with Merced County is denied;

23         5.    The motion to dismiss due to plaintiff's failure to present an administrative claim

24               to Merced County with respect to his defamation cause of action is denied;

25         6.    The motion to dismiss due to plaintiff's failure to state a defamation cause of

26               action against the individual defendants is denied;

27         7.    The motion to dismiss the defamation cause of action pursuant to Civil Code § 47

28               is denied;

8.      The motion to dismiss plaintiff's California Civil Code § 52.1 cause of action due to his failure to allege a threat, intimidation, or coercion separate and independent of the constitutional violation is denied;

9.      The motion to dismiss plaintiff's negligent infliction of emotional distress cause of action for failure to state a claim is granted;

10.     The motion to dismiss plaintiff's intentional infliction of emotional distress cause of action for failure to state a claim is denied;

11.     The motion to dismiss plaintiff's state law tort claims pursuant to Government Code § 821.6 is denied;

12.     The motion to dismiss any of plaintiff's claims against Merced County which are premised on the vicarious liability of the individual defendants is denied;

13.     The motion to dismiss due to plaintiff's failure to state a claim for punitive damages against the individual defendants' is denied; and

14.     The motion for a more definite statement is denied.

As to the dismissed claims identified above, plaintiff is granted leave to file an amended complaint within twenty-one days of service of this order.[17]

IT IS SO ORDERED.

Dated:   **June 13, 2016**                                                          
UNITED STATES DISTRICT JUDGE

---

[17] Plaintiff is advised that the court cannot refer to a prior pleading in order to make plaintiff's amended complaint complete. Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. This is because, as a general rule, an amended complaint supersedes the original complaint. *See Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967), *overruled on other grounds by Lacey v. Maricopa County*, 693 F.3d 896 (9th Cir. 2012). Once an amended complaint is filed, the original pleading no longer serves any function in the case. Finally, an amended complaint must bear the docket number assigned to this case and be labeled "Amended Complaint."