J. GARY GWILLIAM (SBN 33430)
RANDALL E. STRAUSS (SBN 168363)
JAYME L. WALKER (SBN 273159)
Gwilliam, Ivary, Chiosso, Cavalli & Brewer
1999 Harrison St. Ste. 1600
Oakland, CA 94612
Telephone: (510) 832-5411
Facsimile: (510) 832-1918
Email: ggwilliam@giccb.com
rstrauss@giccb.com

ATTORNEYS FOR PLAINTIFF
ETHAN MORSE

UNITED STATES DISTRIC COURT

EASTERN DISTRICT OF CALIFORNIA

ETHAN MORSE,

      Plaintiff,

vs.

COUNTY OF MERCED, CHARLES HALE, ERICK MACIAS AND JOSE SAM SANCHEZ individually and as officers of the MERCED COUNTY SHERIFF'S DEPARTMENT and DOES 1-100,

      Defendants

Case No.: 1:16-CV-00142-DAD-SKO

SECOND AMENDED COMPLAINT FOR DAMAGES

1. Violations of 42 USC § 1983 (Individual Defendants for 4th Amendment, Due Process and 14th Amendment Violations)
2. Malicious Prosecution in Violation of the Fourth Amendment (42 USC § 1983)
3. Violation of Civil Code 52.1
4. False Imprisonment/False Arrest
5. Intentional Infliction of Emotional Distress
6. Defamation

DEMAND FOR JURY TRIAL

ETHAN MORSE complains and alleges as follows:

## PARTIES

1. PLAINTIFF ETHAN MORSE was an 18 year old recent high school graduate when he was falsely and maliciously arrested as an accessory to murder. Mr. Morse is, and was at all times herein mentioned, a citizen of the United States and a resident of Merced County.

2. Defendant MERCED COUNTY is a county incorporated, duly organized and existing under the laws of the State of California. The County of Merced operates under its authority the Merced County Sheriff's Department. Merced County is vicariously liable for the individual defendants' wrongful arrest and detention of Plaintiff as well as violations of Plaintiff's constitutional rights under California Civil Code 52.1.

3. CHARLES "CHUCK" HALE; ERICK MACIAS AND DETECTIVE JOSE SAM SANCHEZ are employees of the Merced County Sherriff's Office. They are being sued individually and in their official capacities.

4. Plaintiff is ignorant of the true names and capacities of Defendants sued herein as Does 1 through 100, inclusive, and therefore sued these defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes, and thereon alleges, that each of these fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiff's injuries as herein alleged were proximately caused by the aforementioned defendants.

## JURISDICTION AND VENUE

5. All of the alleged wrongful acts occurred in the County of Merced.

6. This court has jurisdiction of federal claims under 42 USC § 1983. *Martinez v. California*, (1980) 444 US 277, 283 n.7; *Ochoa v. Superior Court* (1985) 39 Cal.3d 159, 173, fn. 10.

## CONDITIONS PRECEDENT

7. For the state claims against public entities and employees, on May 12, 2015, Ethan Morse filed a timely government claim form against Merced County, and named the individual

Defendants Macias, Hale and Sanchez. That claim was rejected on June 2, 2015.

## STATEMENT OF FACTS

8. On March 30, 2013, three people were murdered in a gun battle involving rival gang members at a party in Atwater, California.

9. Plaintiff Ethan Morse and Jacob Tellez were briefly at the party. Plaintiff Morse had driven Tellez, and six other teenagers, Sabrina Ceccoli, Robert Tern, Cameron Johnson Valenzulea, Jacob Delgadillo, Tony Gomes, and Andrew Massengale, to the party. The group went into the party, stayed approximately 10 minutes, and then left. A couple of the kids mentioned having a bad feeling because they thought there were gang members at the party. The others agreed and all went back to Plaintiff's vehicle to leave the party.

10. As Plaintiff and his companions were leaving the party, several gang members arrived. They heard gunshots in the backyard and chaos ensued. Plaintiff and his companions quickly got into the vehicle and began to drive away as gunshots continued. There were more than 100 people at the party and people were running into the streets away from the backyard. At first, Plaintiff drove slowly because he almost hit two kids that were running in the street away from the gunfire.

11. In the backyard shooting, Matthew Fisher and Samantha Pereira, were killed. Fisher was a known gang member. A gun battle ensued and minutes later, another known gang member from a rival gang, Bernabed Hernandez Canela, was killed on Westside Blvd, west of the house where the party was being held.

12. Several rounds of gunfire continued to go off as Plaintiff and his companions drove away heading east on Westside Boulevard towards Highway 99.

13. Approximately two weeks later, on or around April 15, 2013, Jacob Tellez was arrested as a suspect in the murder of Bernabed Hernandez based on a 911 call that Tellez inadvertently made from his pocket. This became known as the "butt dial". In the recording of the 911 call, Mr. Tellez does not know he has dialed 911 and he is speaking animatedly and excitedly about the shooting that has occurred. The call is extremely muffled and it is very difficult to make out much of what Tellez is saying.

14. Detective Pavelski of the Merced County Sheriff's Office ("MSO") interviewed Tellez about the shooting. Tellez admitted he was at the party and admitted he was in possession of a .22 caliber revolver. Tellez further admitted that he started to pull out his gun but it got caught on the seatbelt and Mr. Massengale grabbed his arm and told him not to get the gun out. Mr. Tellez informed Det. Pavelski that he saw someone lying on the side of the road and it looked like a piece of his hair or his head was on the ground. Following the interview, Detective Pavelski listened to the 911 call again. Tellez' story was consistent with what can be heard on the recording. Therefore, Det. Pavelski released Tellez and asked the judge to recall the warrant for his arrest.

15. At some later time, Defendant Chuck Hale took over as the MSO Supervising Detective on the case.

16. In May, 2013, Defendant Erick Macias was assigned to be the lead MSO detective on the case. No significant further action was taken on the case until more than a year later in July, 2014.

17. In January, 2014, Plaintiff's father, Larry Morse, the current elected District Attorney of Merced County, publicly complained that Merced County, and specifically the Merced County Sheriff's Department were not putting enough resources into combating persistent gang violence. Mr. Morse specifically referred to the unsolved triple homicide in Atwater.

18. In July, 2014, in response to criticism by DA Larry Morse that the Sherriff's Office had not spent adequate resources combating gang violence, Defendants Sanchez, Hale and Macias resolved to revive the triple homicide cold case. They began targeting Jacob Tellez for the murder of Bernabed Hernandez, despite the fact that they had no additional evidence against him, and despite the fact that the MSO had previously released Tellez for insufficient evidence.

19. Tellez was rearrested for the murder on July 17, 2014. Tellez was interviewed by Defendant Sanchez and cooperated with police. Tellez told the same story as he had in April, 2015. He also gave further information identifying another person, well known gang member Roe 2 as someone he saw shooting at a "Southerner". Bernabed Hernandez was a "Southerner".

Defendants did not follow up on this lead, despite the fact that they knew well known gang member Roe 2 was at the party, that he was shot at the party, and was a known gang member in a gang that was a rival gang to that which Hernandez was a member.

20. Defendant Hale had Tellez arrested prior to briefing the Merced DA's Office on July 17, 2015. This was a violation of standard practice for police to brief the Merced County District Attorney's Office ("DA") before making an arrest in a cold case or in out of custody homicides. When the DA's office was briefed, it was 1 hour before a self-congratulatory news conference the Sheriff's Office was holding to announce the arrests.

21. During the briefing, Merced County District Attorney's Office was informed that the sole evidence against Tellez was the 911 "butt dial". However, Defendants did not inform the DA's office that they had previously arrested and released Tellez based on exactly the same evidence and that Tellez had previously given a voluntary statement and had disclosed several witnesses that could corroborate his version of events. No efforts were made to locate any of the witnesses nor to test the car that Tellez was in for gunfire prior to Tellez' arrest. Hale also did not disclose that the "victim", Hernandez, was a known gang member. At that time, Hernandez' body had not been tested to see if he had fired a gun prior to being shot.

22. After the press conference, Plaintiff Ethan Morse told his father that he had been at the party with Tellez and that Tellez did not fire a gun from his car. DA Morse immediately notified Defendant Hale that there was a problem with the Tellez arrest and arranged for Plaintiff to speak with the detectives on Sunday, July 20, 2015.

23. On July 20, 2014, Plaintiff Ethan Morse was interviewed by Defendants Macias and Hale. Plaintiff told the detectives information that corroborated what Tellez had told them on two separate occasions, essentially that the kids were at the party for a few minutes and then left, that Tellez had a .22 gun, that Massengale told him not to shoot it and no shots were fired from Plaintiff's car. Plaintiff offered to take a polygraph test but Defendants declined to give him one.

24. There were several material omissions from the police report. Notably, Plaintiff's offer to

take a polygraph was omitted from the police report. It was also omitted from the report that DA Morse had contacted Defendants and arranged for Plaintiff to meet with them voluntarily and without legal counsel.

25. Defendants subsequently interviewed the witnesses in the car, except for Andrew Massengale whose father would not allow him to speak with them without an attorney. Defendants implied to all the witnesses they interviewed that they may be charged with a crime if they did not change their story to the Defendants' theory of the case.

26. Following his interview with the Sheriff's department, Plaintiff told Defendants that he would try to get everyone else that was in the car to come and voluntarily make a statement.

27. The other passengers in the car with Plaintiff and Jacob Tellez were Sabrina Ceccolli, Cameron Johnson, Robert Tern, Andrew Massengale, Tony Gomes, and Jacob Delgadillo.

28. On July 22, 2014, Cameron Johnson was interviewed by Defendant Macias. Johnson told police that Tellez did not shoot a gun at anytime while at the party. During his voluntary interview, Mr. Johnson felt the police were trying to trick him into saying something that would inculpate Plaintiff and Mr. Tellez. Mr. Johnson terminated the interview after police were hostile, yelling at him, accusatory and treating him as if they did not believe him.

29. On July 22, 2014, Defendant Macias and another MSO officer interviewed Sabrina Ceccolli. Ceccolli said in her interview she was 100% sure and then later 95% sure that no one shot a gun from the car. Her repeated statements that Tellez did not shoot a gun from the car are not in the police report. Ceccoli told Defendants she had been around gunshots all her life and she would have heard if a gun had been fired from the car. After much convincing from Defendants, Ceccoli agreed that some of the gunshots she heard were louder and perhaps those gunshots could have come from the car, however, she maintained that she didn't see Tellez shoot anyone.

30. On July 22, 2014, Defendants Macias and Sanchez interviewed Robert Tern. Plaintiff accompanied Mr. Tern do the interview with Defendants because Tern was very nervous and Cameron Johnson had informed Tern and Plaintiff that the Defendants were trying to trick everyone and were very hostile. Tern told a story that corroborated what Tellez had told

police on two occasions and what the other occupants of the vehicle had told police. Tern told Defendants that they had gone to the party for a few minutes and left and as they were leaving the gunshots started. Tern admitted that Tellez had a gun but said he was positive that he didn't shoot it from the car. Tern told police he was 100% positive that Tellez did not fire the gun. Finding that Tern did not corroborate their theory of the case, Defendants threatened Tern that they "didn't want to have to put cuffs on someone that doesn't need them" and if he didn't stop lying they "could be done" and he "would be booked in the County jail." They also told Tern he would be a suspect in a triple homicide.

31. At some point, Tern tried to terminate the interview. When Tern attempted to terminate the interview, he was placed in handcuffs and detained for 45minutes to an hour. The fact that Tern tried to terminate the interview and was put in handcuffs was not included in the police report. After being intimidated by Defendants and threatened with arrest, Tern changed his story.

32. On July 24, 2014, Defendant Macias interviewed Jacob Delgadillo. Delgadillo corroborated the same story as all the other occupants in the car. Delgadillo told police that Jacob Tellez did not shoot a gun from the car. He said he was absolutely sure that Tellez did not fire a gun from the vehicle. In the arrest warrant Defendant Macias says that Delgadillo said Tellez had a "gun" in his hand and points it out the window, but Delgadillo never said that Tellez had a gun in his hand and pointed it out the window. In fact, Defendant Macias attributed statements to Delgadillo that Macias himself made in the interview. The arrest warrant omits that Delgadillo's story was in fact consistent with all the other occupants in the vehicle that Jacob Tellez did not shoot a gun from the car.

33. On July 24, 2014, Defendant Sanchez and another MSO officer interviewed Tony Gomes. Gomes told the same story that he was 100% sure that Tellez had not fired a gun out of the vehicle. Gomes repeatedly told police that he had not seen or heard the gunfire come from the car.

34. During his interview, Mr. Gomes identified other shooters, including mentioning known well known gang members Roe 1 and Roe 2 as people he believed to be Blood gang members and

that he saw shooting in an easterly direction. This was in fact that direction that Bernabed Hernandez was shot. Defendants ignored this part of Gomes' statement. Defendants also ignored the consistent statements that Plaintiff was driving eastbound and that Bernabed Hernandez was shot on the right side of his head as he ran westbound.

35. In his affidavit for Plaintiff's arrest, Defendant Erick Macias swore under penalty of perjury that the contents of the 911 call included Jacob Tellez saying the following: "That's when I GRABBED MY SHIT NIGGA, AND I WAS LIKE FUCK THIS…Pop-pop nigga! Just straight laid out nigga, I seen some of is head, it look like just a piece of head was like fucken hair on the floor when we drove by nigga…I fucken put him to sleep blood." This was a fabrication. The 911 call is so mumbled that only portions of what Mr. Tellez is saying can be made out and Tellez never made the aforementioned statement alleged by Macias. There is no indication that the judge that issued the warrant listened to the 911 tape when signing the arrest warrant. The judge who signed the arrest warrant relied on Defendant Macias' representations which were false.

36. Plaintiff's arrest warrant also contains material misrepresentations of the witness statements. It attributes statements to Ceccolli that the gunshots sounded muffled as if they were coming from the vehicle. Ceccolli never said this in her interview. On the contrary, she said she was 95% sure that no gunshots were fired from the car. Plaintiff's arrest warrant also attributes statements to Ceccolli that she knew Tellez had a gun but she was not sure if he fired it. She never said this either. Plaintiff's arrest warrant further attributes statements to Ceccolli that she says the gun is dropped off after they left party, but Ceccolli maintained throughout her interview that she never saw a gun. The statements attributed to Ceccolli are material misrepresentations and omissions that caused the magistrate to issue an arrest warrant that without such misrepresentations and omissions would have lacked probable cause.

37. The arrest warrant contains only statements that corroborate Defendants' theory of the case and omits that every person in the car, prior to being threatened with arrest and implication in a crime, corroborated what Tellez and Plaintiff had told police happened.

38. Moreover, Defendant Macias omitted that every witness had indicated that Tellez was in

possession of a .22 revolver but Hernandez-Canela was shot with .38 caliber bullets in the chest and a .25 caliber automatic bullet to the head in a very closer range shot. Thus, the Sheriff's Department arrested Plaintiff on this warrant even though there was no evidence connecting the weapon Tellez allegedly had in Plaintiff's car to the weapon used in the murder. The .38 and .25 bullets could not have come from the .22 revolver. There were no bullets found from a .22 revolver and no casings from any .22 revolver were ever found on the roadway.

39. Defendant Macias also omitted from the arrest warrant that the fatal wound to Hernandez-Canela was just below his right ear. Hernandez was running westbound at the time of the shooting, while the vehicle containing Tellez and Morse was eastbound. Thus, the bullet wound was on the wrong side of the victim's head to implicate Tellez and Plaintiff.

40. Without these material misrepresentations and omissions, Plaintiff would never have been arrested, let alone charged with a crime.

41. The Attorney General's Office ("AG") was advised by Merced County DA, where Plaintiff's father is the elected DA, that they had a conflict in this case. At that time the AG took over the case. The AG picked up the case file on or around July 23, 2014.

42. Ethan Morse was arrested as an accessory to murder on July 25, 2014.

43. Former Merced County Sheriff Mark Pazin called several times and then finally left a message for Larry Morse at 7:20 am on the Sunday after Plaintiff's arrest indicating that when DA Morse made his first public comments about his son's arrest, he should apologize to the Sheriff's Department. The Current Sheriff Tom Cavallero was the No. 2 under-Sheriff for Pazin.

44. A mere 4 days after Plaintiff was arrested and less than a week after the AG picked up the case file which included tens if not hundreds of hours of witness statements and hundreds of pages of police reports, AG Barton Bowers filed a criminal complaint against Plaintiff on July 29, 2014, at 10:47 a.m. The criminal complaint charged Plaintiff with murder and with gang enhancements, despite the fact that there was no evidence whatsoever that Plaintiff was involved in gang activity. Plaintiff is informed and believes that Mr. Bowers did not listen to

1. the interviews, did not conduct an independent review, and filed the criminal complaint against Plaintiff solely in reliance on malicious representations from Defendants.

45. Moreover, Defendants withheld substantial exculpatory information from the AG. Plaintiff is informed and believes that Defendants withheld from the AG that a well known gang member, Roe 1, was interviewed in approximately March or April, 2013 and that he had placed himself at the crime scene, stated that he was in a rival gang from Hernandez, and saw Hernandez just before he was shot. Well known gang member Roe 1 further informed police he was in the same gang as Matthew Fisher (one of the decedents shot in the gun battle) and well known gang member Roe 2 (who was shot) and that he transported Roe 2 and Samantha Pereira to the hospital. Despite this information, Defendants did not attempt to locate Roe 2 and did not follow up with Roe 1. None of this information was disclosed to Plaintiff in discovery and none of it is in the police report. This is despite the fact that Gomes also gave a statement that implicated well known gang members Roe 1 and Roe 2. The failure to disclose this information violated Plaintiff's due process rights.

46. Following Plaintiff's arrest in late July or early August, 2014, a woman contacted Plaintiff's mother and told her that her sons witnessed the shooting and that well known gang members Roe 1 and Roe 2 shot Hernandez.

47. In October, 2014, AG Barton Bowers, who filed a criminal complaint against Plaintiff solely based on pressure and representations from Defendants and alleged gang enhancements in that complaint, contacted gang experts at the Merced DA's Office and asked for their assistance in establishing the gang enhancements against Plaintiff, the Merced DA's son. AG Bowers did this despite the fact that the person he contacted reported to Plaintiff's father and despite the fact that Plaintiff's father had properly recused his entire office from the case due to the conflict of interest. Plaintiff's father, DA Morse, was forced to write a letter to AG Kamala Harris to report this egregious conduct and remind her that it would be entirely improper for anyone in his office to assist in the case considering the Defendant was his son.

48. On November 4, 2014, a confidential informant came to the Merced Police Department to talk about the triple homicide in which Plaintiff was charged. The confidential informant

told Merced PD Detective Paul Johnson that well known gang member Roe 1 had confessed that he and Roe 2 were responsible for shooting Hernandez.

49. Detective Johnson informed Defendant Hale of this information and Defendant Hale replied, "What, is Larry [referring to Plaintiff's father] buying you lunch?" Defendant did nothing to follow up on this information, despite his knowledge of inculpatory statements previously made by well known gang member Roe 1 and the statement made by Gomes that inculpated well known gang members Roe 1 and Roe 2. No report of this information was made and Plaintiff is informed and believes that this information was withheld by Defendants from AG Bowers.

50. From November 10-14, 2014, a preliminary hearing was held for Plaintiff and Tellez' cases.

51. Andrew Massengale was in the car with Plaintiff and Jacob Tellez the night of the triple homicide. Massengale testified at the preliminary hearing under oath and his testimony corroborated the testimony given by every other witness before they were intimidated and coerced into changing their stories by Defendants.

52. On November 14, 2014, Judge Ronald Hansen refused to hold Tellez or Plaintiff to answer. He made a factual finding that Tellez (aka Logan) did not fire a gun from Plaintiff's vehicle. He found that both Plaintiff and Tellez were factually innocent. The court also made a finding that the 911 call did not contain any admission by Tellez that he had shot anyone. The court made a finding that the 911 call corroborated Tellez version of events he had told police on two occasions and corroborated the initial stories told by all the kids in the vehicle. The court noted that it could not hear the things that Defendant Macias had represented that were said on the call in Plaintiff's arrest warrant. The court further noted that the important details of the events that gave rise to the complaint against Plaintiff came from the questions of the Defendants and not from the mouths of the witness. Having failed to listen to the interview tapes before the complaint was filed; Plaintiff is informed and believes that the AG was not aware of these facts. Following the court's finding, Plaintiff was released from custody.

53. As Plaintiff was leaving the courthouse, he heard an unknown Merced County sheriff's

deputy say, "This is bullshit, I know this guy did it." In addition, a social media blogger operating under the name Merced County News Television has repeatedly attributed statements that Plaintiff was an accomplice to murder and got away with murder to sources in the Merced County Sheriff's Department. Plaintiff is informed and believes that Defendants Macias, Hale and Sanchez were sources of this false and defamatory information. Plaintiff further is informed and believes that Defendants Macias, Hale and Sanchez continue to defame him by accusing him of being an accomplice to murder and stating the only reason he was not held to answer is because of the Attorney General's mistakes.

54. Plaintiff had spent 4 months in county jail and missed his first semester of college Ouachita Baptist University in Arkansas for which he had a wrestling scholarship. Plaintiff lost the scholarship because he could not attend school the first semester. Plaintiff then had a difficult time transitioning into college in Arkansas and returned to Merced. Every day Plaintiff spends in Merced, he fears for his life because gang members believe he was involved in the shooting of Bernabed Hernandez. Plaintiff also suffered substantial financial losses in the form of attorney's fees and costs. Mr. Morse has suffered and continues to suffer from severe emotional distress as a result of his incarceration and wrongful arrest and prosecution.

55. Despite overwhelming evidence that well known gang members Roe 1 and Roe 2 were responsible for the shooting of Bernabed Hernandez, the Sheriff's Department and the Attorney General have done nothing to further the investigation and or prosecution of well known gang members Roe 1 and Roe 2 because doing so would prove their incompetence and culpability in the wrongful arrest and detention of Plaintiff. Because of this lack of action, Plaintiff remains covered in a cloud of suspicion and the real perpetrators of this crime remain free.

56. The investigation, arrest and prosecution of Plaintiff described herein was malicious, without just cause, and violated Plaintiff's Fourth Amendment and Fourteenth Amendment rights and proximately caused Plaintiff economic damages, including legal expenses, bail, damages to his reputation and severe emotional distress.

## FIRST CAUSE OF ACTION
(42 U.S.C. § 1983 for 4th Amendment, Due Process and 14th Amendment Violations)
**Against Defendants Hale, Macias and Sanchez**

57. Plaintiff hereby re-alleges and incorporates by reference herein paragraphs 1 through 56 above.

58. In doing the acts complained of herein, DEFENDANTS and DOES 1-25, inclusive, and/or each of them, acted under color of law to deprive Plaintiff of certain constitutionally protected rights, including, but not limited to:

   a. The right to be free from unreasonable searches and seizures, as guaranteed by the Fourth Amendment to the Constitution of the United States. Plaintiff's action specifically includes, but is not limited to the wrongful search of his apartment, and the wrongful seizure of his person and the malicious prosecution that kept him seized until the criminal charges were dismissed.

   b. The right to be free from arrest without probable cause guaranteed by the Fourth Amendment to the Constitution of the United States.

   c. The right to due process of law by being informed of all exculpatory evidence in the criminal case against him guaranteed by the Fourth and Fourteenth Amendments of the Constitution of the United States.

59. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered damages including, but not limited to, legal expenses, economic losses, loss of reputation, emotional distress, and other damages.

60. In doing the things alleged herein, Defendants' conduct was despicable. Defendants acted toward Plaintiff with malice, oppression, fraud, and with willful and conscious disregard to Plaintiff's rights, entitling Plaintiff to awards of punitive damages.

## SECOND CAUSE OF ACTION
**Malicious Prosecution in Violation of the Fourth Amendment**
**Against Defendants Hale, Macias and Sanchez**

61. Plaintiff hereby re-alleges and incorporates by reference herein paragraphs 1 through 60 above.

62. In doing the acts complained of herein, DEFENDANTS and DOES 1-25, inclusive, and/or each of them, acted under color of law to deprive Plaintiff of certain constitutionally protected rights, including, but not limited to

   a. The right to be free from unreasonable searches and seizures, as guaranteed by the Fourth Amendment to the Constitution of the United States. Plaintiff's action specifically includes, but is not limited to the wrongful search of his apartment, and the wrongful seizure of his person and the malicious prosecution that kept him seized until the criminal charges were dismissed.

   b. The right to be free from arrest without probable cause guaranteed by the Fourth Amendment to the Constitution of the United States.

   c. The right to due process of law by being informed of all exculpatory evidence in the criminal case against him.

63. Defendants caused the initiation of criminal proceedings against Plaintiff without probable cause and with malice and reckless indifference.

64. The criminal proceedings were terminated in Plaintiff's favor for lack of probable cause.

65. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered damages including, but not limited to, legal expenses, economic losses, loss of reputation, emotional distress, and other damages.

66. In doing the things alleged herein, Defendants' conduct was despicable. Defendants acted toward Plaintiff with malice, oppression, fraud, and with willful and conscious disregard to Plaintiff's rights, entitling Plaintiff to awards of punitive damages.

### THIRD CAUSE OF ACTION
### Violation of Civil Code 52.1
### Against All Defendants

67. Plaintiff hereby re-alleges and incorporates by reference herein paragraphs 1 through 66 above.

68. As against Defendants, Plaintiff alleges that Defendants caused the initiation of a malicious criminal prosecution against Plaintiff in violation of his First and Fourth Amendment rights under the United States Constitution and corresponding rights under the California

Constitution.

69. Defendant Merced County is liable under a theory of respondeat superior.

70. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered damages including, but not limited to, legal expenses, economic losses, loss of reputation, emotional distress, and other damages.

71. In doing the things alleged herein, Defendants' conduct was despicable. Defendants acted toward Plaintiff with malice, oppression, fraud, and with willful and conscious disregard to Plaintiff's rights, entitling Plaintiff to awards of punitive damages.

### FOURTH CAUSE OF ACTION
#### False Arrest/Imprisonment
#### Against all Defendants

72. Plaintiff hereby re-alleges and incorporates by reference herein paragraphs 1 through 71 above.

73. Defendants and DOES 1-50 and each of them by their actions caused Plaintiff to be confined or knew to a substantial certainty that Plaintiff would be confined due to their actions.

74. Defendants made material misrepresentations and omissions in the arrest warrant that they knew would cause the judge to issue a warrant that was not supported by probable cause.

75. California Government Code § 820 provides that a public employee is liable for injury to the same extent as a private person.

76. California Government Code § 820.4 specifically provides that a public employee is liable for false arrest or false imprisonment.

77. Cal. Government Code § 815.2 provides that a public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment. Defendant Merced County is liable for Plaintiff's wrongful confinement under the doctrine of respondeat superior.

78. As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered damages including, but not limited to, legal expenses, economic losses, loss of reputation, emotional distress, and other damages.

79. In doing the things alleged herein, Defendants' conduct was despicable. Defendants acted

toward Plaintiff with malice, oppression, fraud, and with willful and conscious disregard to Plaintiff's rights, entitling Plaintiff to awards of punitive damages.

### FIFTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress
### Against Hale, Macias and Sanchez

80. Plaintiff re-alleges and incorporates by reference herein paragraphs 1 through 79 as though fully set forth herein.

81. Defendants, in the conduct set forth above, engaged in outrageous behaviors. By such conduct, Defendants intended to cause Plaintiff emotional distress, or engaged in conduct with reckless disregard of the probability of causing Plaintiff emotional distress or both.

82. As a proximate result of Defendants' conduct, Plaintiff has suffered severe emotional distress.

83. The outrageous conduct of Defendants was a substantial factor in the severe emotional distress suffered by Plaintiff.

84. Defendants' wrongful conduct has caused Plaintiff to suffer and continue to suffer injury, including, but not limited to, economic damages, severe emotional distress, and other damages.

85. In doing the things alleged herein, Defendants' conduct was despicable. Defendants acted towards Plaintiff with malice, oppression and fraud and willful and conscious disregard to Plaintiff's rights entitling him to an award of punitive damages.

### SIXTH CAUSE OF ACTION
### DEFAMATION
### Against Macias, Hale, and Sanchez, and Does 1-100

86. Plaintiff hereby re-alleges and incorporates by reference herein paragraphs 1 through 85 above.

87. As described in detail above, Defendants Macias, Hale, Sanchez and Does 1-100 have intentionally and knowingly published false information to others, falsely accusing Plaintiff of serious felonies and crimes of moral turpitude.

88. Defendants conduct was outside of the criminal investigation, to the public and the press and

SECOND AMENDED COMPLAINT FOR DAMAGES
Ethan Morse v. County of Merced, et al.
- 16 -

amounts simply to defamatory statements designed to influence public opinion about Plaintiff.

89. Defendants' false publications are *per se* defamatory.

90. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered damages including, but not limited to, legal expenses, economic losses, loss of reputation, emotional distress, and other damages.

91. In doing the things alleged herein, Defendants' conduct was despicable. Defendants acted toward Plaintiff with malice, oppression, fraud, and with willful and conscious disregard to Plaintiff's rights, entitling Plaintiff to awards of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests relief as follows:

1. For special and economic damages, including back pay and front pay, benefits and consequential damages;
2. For general and non-economic damages;
3. For punitive damages;
4. For costs and reasonable attorneys fees, including a contingency fee enhancement beyond the lode star;
5. For prejudgment interest at the legal rate; and
6. For such other and further relief as the Court may deem proper.

DATED:                                          GWILLIAM, IVARY, CHIOSSO,
                                                CAVALLI & BREWER


                                                By: /s/ Jayme Lee Walker
                                                J. GARY GWILLIAM
                                                RANDALL E. STRAUSS
                                                JAYME L. WALKER
                                                Attorneys for Plaintiff
                                                Ethan Morse

**DEMAND FOR JURY TRIAL**

DATED:                                          GWILLIAM, IVARY, CHIOSSO,
                                                CAVALLI & BREWER


                                                By: /s/ Jayme Lee Walker
                                                J. GARY GWILLIAM
                                                RANDALL E. STRAUSS
                                                JAYME L. WALKER
                                                Attorneys for Plaintiff
                                                Ethan Morse

**PROOF OF SERVICE**
*Morse v. County of Merced, et al.*
<u>Eastern District of California Case No. 1:16-CV-00142-DAD-SKO</u>

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is GWILLIAM, IVARY, CHIOSSO, CAVALLI & BREWER, 1999 Harrison St., Suite 1600, Oakland, California 94612.

On June 29, 2016, I served the following document(s) by the method indicated below:

**SECOND AMENDED COMPLAINT FOR DAMAGES**

☒  by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Oakland, California addressed as set forth below. I am readily familiar with the firm's practice of collection and processing of correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in this Declaration.

☐  by placing the document(s) listed above in a sealed envelope(s) and by causing personal delivery of the envelope(s) to the person(s) at the address(es) set forth below. A signed proof of service by the process server or delivery service will be filed shortly.

☐  by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☐  by placing the document(s) listed above in a sealed envelope(s) and consigning it to an express mail service for guaranteed delivery on the next business day following the date of consignment to the address(es) set forth below. A copy of the consignment slip is attached to this proof of service.

| | |
|---|---|
| Matthew P. Harrison<br>Lewis Brisbois Bisgaard & Smith LLP<br>633 W. 5th Street<br>Suite 4000<br>Los Angeles, CA  90071<br>Tel: (213)250-1800<br>Fax: (213)250-7900 | Attorneys for Defendant<br>COUNTY OF MERCED, ET AL. |
| Steven Rothans<br>Carpenter, Rothans & Dumot<br>888 S. Figueroa St., Suite 1960<br>Los Angeles, CA 90017<br>Tel: (213)228-0400<br>Fax: (213)228-0401 | Attorneys for Defendant<br>ERICK MACIAS. |

1 | I declare under penalty of perjury under the laws of the State of California that the
2 | above is true and correct. Executed on June 29, 2016, at Oakland, California.

_____
Stephanie Wickizer