UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ETHAN MORSE,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>COUNTY OF MERCED, CHARLES HALE, ERICK MACIAS, and JOSE SAM SANCHEZ,<br><br>　　　　　Defendants. | No. 1:16-cv-00142-DAD-SKO<br><br><u>FINAL PRETRIAL ORDER</u> |

On August 14, 2017, the court conducted a final pretrial conference in this action. Attorney Jayme L. Walker appeared on behalf of plaintiff. Attorneys Mark Rutter and Danielle Foster appeared as counsel for defendant Macias. Attorney Matthew Harrison appeared on behalf of defendants County of Merced, Charles Hale, and Jose Sam Sanchez. Following the final pretrial conference, the court issued a tentative pretrial order on August 25, 2017. (Doc. No. 108.) That order provided the parties fourteen days in which to object to the tentative pretrial order and seven days to reply to another party's objections. (Doc. No. 108 at 17.) The parties stipulated to continuing the jury trial date to April 17, 2018, and defendants filed objections on September 1, 2017 and September 8, 2017. (Doc. Nos. 109–12.) Plaintiff filed no objections. No parties filed replies to the objections of either set of defendants. Having considered the parties' pretrial statements, counsel's arguments at the pretrial conference, and the parties'

objections to the tentative pretrial order, the court now issues a final pretrial order.

Plaintiff brings this action under 42 U.S.C. § 1983 against defendants, alleging that they violated his Fourth Amendment rights and maliciously prosecuted him for murder in 2014. Plaintiff alleges defendants presented false information in an affidavit in support of a warrant for his arrest in order to cause the reviewing magistrate to issue that warrant, and that they did so either deliberately, or with reckless disregard for the truth of the affidavit. According to plaintiff, defendants' actions caused him to be arrested, charged with, and detained in jail on murder charges until a preliminary hearing took place some four months later in the Merced County Superior Court, at which time he was not held to answer on any criminal charge.

## I.     JURISDICTION/VENUE

Jurisdiction is predicated on 28 U.S.C. §§ 1331 and 1441(a). Jurisdiction is not contested. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2). Venue is not contested.

## II.    JURY

Both parties have demanded a jury trial. The jury will consist of eight jurors.

## III.   UNDISPUTED FACTS

1. On March 30, 2013 (the night before Easter) at approximately 11:00 p.m., a shooting occurred during a large party at a residence located at 9258 Westside Boulevard in Atwater, California (hereinafter referred to as the "Westside Party").

2. As a result of the shooting, three persons were killed (collectively hereinafter referred to as the "Easter Homicides").

3. The Merced County Sheriff's Department ("Sheriff's Department") responded to the scene and thereafter investigated the Easter Homicides.

4. Sheriff's Department Detective Duane Pavelski was initially assigned as the lead investigator of the Easter Homicides.

5. Sheriff's Department Detectives Jose Sam Sanchez and Erick Macias assisted in the investigation.

6. The Sheriff's Department investigation revealed that two persons were shot in the backyard of the house. Those victims were Matthew Fisher and Samantha Parreira.

7. The body of a third victim, Bernabed Hernandez, was found west of the house, alongside Westside Boulevard.

8. Two other victims were also injured as a result of the shootings. They were later identified as Anthony Wiggins and Orasio Fierro.

9. The Sheriff's Department identified Jacob Tellez as a suspect in the shooting of Bernabed Hernandez based upon an accidental 9-1-1 call made from Tellez's cell phone on the night of the Easter Homicides.

10. On March 30, 2013, the Sheriff's Department obtained an arrest warrant for Jacob Tellez. The Affidavit for Probable Cause submitted in support of the arrest warrant was authored by Sheriff's Deputy Orozco.

11. On April 15, 2013, Jacob Tellez was arrested and transported to the Merced County Sheriff's Office where he was interviewed by Detective Pavelski.

12. Jacob Tellez's April 15, 2013 interview with Detective Pavelski was summarized in Supplemental Police Report No. 47 by Detective Pavelski.

13. In May 2013, Detective Macias was assigned as the lead investigator on the Easter Homicide investigation.

14. In May 2014, Sergeant Hale was assigned to the Sheriff's Department Major Crimes Detectives Unit.

15. On June 18, 2014, Detectives Ruiz and Macias interviewed Marcus Whittaker about two homicides—the Easter Homicides and another unrelated homicide (the Olin Bates homicide)—at the Merced Police Department. After Whittaker's interview, the Police Department gave the Sheriff's Department a copy of the audio recording of the interview. That interview was not memorialized in the Sheriff's Department police reports regarding the Easter Homicides investigation until July 2015.

16. Multiple witnesses interviewed by the Sheriff's Department identified Jose Carballido and Jose Botello as the shooters of victims Samantha Parreira and Matthew Fisher. Jose Carballido and Jose Botello were arrested on July 15, 2014, and have been charged with murder. They are currently awaiting trial.

17. On July 15, 2014, the Sheriff's Department obtained a second arrest warrant for Jacob Tellez. The Affidavit for Probable Cause submitted in support of that arrest warrant was authored by Detective Macias.

18. On July 17, 2014, Jacob Tellez was re-arrested and transported to the Sheriff's Office where he was interviewed by Detectives Sanchez and Macias.

19. The July 17, 2014 interview of Jacob Tellez by Detectives Sanchez and Macias was summarized in Supplemental Police Report No. 72 by Detective Sanchez. That report was reviewed and approved by Sergeant Hale.

20. On July 20, 2014, Ethan Morse provided a voluntary statement to the Sheriff's Department regarding the Easter Homicides. He was interviewed by Detective Macias. Sergeant Hale was also present during the interview.

21. The July 20, 2014 interview of Ethan Morse by Detective Macias was summarized in Supplemental Police Report No. 74, authored by Detective Macias. The report was reviewed and approved by Sergeant Hale. The interview date listed in Report No. 74 is incorrect.

22. On July 22, 2014, Detectives Macias and Mike Ruiz interviewed Cameron Johnson regarding the Easter Homicides.

23. The July 22, 2014 interview of Cameron Johnson by Detectives Macias and Ruiz was summarized in Supplemental Police Report No. 79, authored by Detective Macias. That report was reviewed and approved by Sergeant Hale.

24. On July 22, 2014, Detectives Macias and Ruiz interviewed Sabrina Ceccoli regarding the Easter Homicides.

25. The July 22, 2014 interview of Sabrina Ceccoli by Detectives Macias and Ruiz was summarized in Supplemental Police Report No. 80, authored by Detective Ruiz. The report was reviewed and approved by Sergeant Hale.

26. On July 22, 2014, Detectives Macias and Sanchez interviewed Robert Tern regarding the Easter Homicides.

27. The July 22, 2014 interview of Robert Tern by Detectives Macias and Sanchez was summarized in Supplemental Police Report No. 82, authored by Detective Sanchez. The

report was reviewed and approved by Sergeant Hale.

28.　　On July 24, 2014, Detectives Macias and Ruiz interviewed Jacob Delgadillo regarding the Easter Homicides.

29.　　The July 24, 2014 interview of Jacob Delgadillo by Detectives Macias and Ruiz was summarized in Supplemental Police Report No. 84, authored by Detective Macias. The report was reviewed and approved by Sergeant Hale.

30.　　On July 24, 2014, Detectives Sanchez and Justin Ussery interviewed Tony Gomes regarding the Easter Homicides.

31.　　The July 24, 2014 interview of Tony Gomes by Detectives Sanchez and Ussery was summarized in Supplemental Police Report No. 85, authored by Detective Ussery. The report was reviewed and approved by Sergeant Hale.

32.　　On July 24, 2014, the California Attorney General's Office filed a Felony Complaint against Jacob Tellez in Merced County Superior Court, Case No. CRM034519A, charging him with one count of violating Penal Code § 187(a) (murder), one count of violating Penal Code § 26100(c) (shooting from a motor vehicle), one count of violating Penal Code § 29610 (possession of firearm by a minor), and one count of violating Penal Code § 186.22(a) (street terrorism).

33.　　On July 25, 2014, the Sheriff's Department obtained an arrest warrant for Ethan Morse. The Affidavit for Probable Cause submitted in support of that arrest warrant was authored by Detective Macias.

34.　　On July 29, 2014, the California Attorney General's Office filed a Felony Complaint against Ethan Morse in Merced County Superior Court, Case No. CRM034519B, charging him with one count of violating Penal Code § 187(a) (murder) and one count of violating Penal Code § 26100(b) (permitting another to shoot from a vehicle).

35.　　Jacob Tellez's criminal case (Case No. CRM034519A) and Ethan Morse's criminal case (Case No. CRM034519B) were consolidated for purposes of the preliminary hearing.

/////

36. The preliminary hearing was conducted on November 10, 12, 13, and 14, 2014.

37. All criminal charges brought against Ethan Morse were dismissed by the California Superior Court Judge who presided at the preliminary hearing.

IV. <u>DISPUTED FACTUAL ISSUES</u>

1. Whether defendant Macias recklessly or deliberately misstated material facts in his affidavit in support of the warrant for plaintiff's arrest.

2. Whether defendant Hale knew of defendant Macias' misstatements in the affidavit in support of the arrest warrant and approved of the affidavit or failed to prevent the misstatements from being presented to the reviewing magistrate.

3. Whether defendants' Macias and Hale acted maliciously or with reckless disregard for the truth in their investigation of the Hernandez murder which led to the prosecution of plaintiff.

4. Whether the California Attorney General Office's decision to prosecute plaintiff broke the chain of causation stemming from the actions or failures to act of the defendants.

5. Whether defendants Hale, Sanchez and Macias' actions were outrageous and intended to cause plaintiff severe emotional distress.

6. Whether, separate and apart from the affidavit in support of the issuance of the arrest warrant for plaintiff, the facts established probable cause for plaintiff's arrest.

7. Whether there was an intentional interference or attempted interference with the plaintiff's state or federal constitutional or legal rights and whether the interference or attempted interference was undertaken by threats, intimidation, or coercion.

V. <u>DISPUTED EVIDENTIARY ISSUES/MOTIONS IN LIMINE</u>

The parties have not yet filed motions *in limine*. The court does not encourage the filing of motions *in limine* unless they are addressed to issues that can realistically be resolved by the court prior to trial and without reference to the other evidence which will be introduced by the parties at trial. The parties anticipate filing motions *in limine* on the subjects identified below. Any motions *in limine* counsel elects to file shall be filed no later than **March 27, 2018**. Opposition shall be filed no later than **April 3, 2018** and any replies shall be filed no later than

**April 6, 2018**. Upon receipt of any opposition briefs, the court will notify the parties if it will hear argument on any *motions in limine* prior to the first day of trial.

<u>Plaintiff's Anticipated Motions in Limine</u>

1. The admissibility of the prior factual findings made by the court at plaintiff's preliminary hearing before the Merced County Superior Court.

2. The admissibility of evidence that plaintiff or any other occupant of the vehicle driven by plaintiff was drinking alcohol or smoking marijuana on the night of the Easter Homicides.

3. The admissibility of evidence that plaintiff initially told his parents he had not attended the party.

4. The admissibility of evidence of the arrest or conviction of Dylan Morse.

5. The admissibility of Facebook photos or text messages obtained from plaintiff's cell phone or social media accounts.

<u>Defendants' Motions in Limine</u>

1. The admissibility of evidence that this court denied defendants' motion for summary judgment in part.

2. The admissibility of evidence that defendant Macias was "admonished" for not documenting the interview of Marcus Whittaker.

3. The admissibility of Roger Clark's expert opinions.

4. The admissibility of James Hammer's expert opinions.

5. The admissibility of the prior factual findings made by the court at plaintiff's preliminary hearing before the Merced County Superior Court.

6. The admissibility of any factual findings made by the state court during the preliminary hearing before the Merced County Superior Court regarding the credibility of witnesses, the weight of evidence, or the inferences to be drawn from certain evidence.

7. The admissibility of evidence concerning the Hernandez homicide investigation that was conducted after plaintiff's state court preliminary hearing.

/////

8. The admissibility of evidence regarding Sheriff Vern Warnke's report and follow-up letter to California Attorney General's Office suggesting that Larry Morse be investigated by that office for potential misconduct.

9. The admissibility of Larry Morse's opinion testimony regarding the California Attorney General's Office.

10. Whether plaintiff's counsel should be precluded from questioning the Sheriff's Department detectives in the following manner: "As you sit here today, do you believe/have any doubt that Ethan Morse was guilty/innocent?" or "As you sit here today, do you believe/have any doubt that Anthony Wiggins or Marcus Whittaker had anything to do with Bernabed Hernandez's murder?"

11. The admissibility of Larry Morse's and Cindy Morse's opinions regarding plaintiff's damages.

12. Whether Andrew Masengale should be precluded from testifying at trial, and whether his preliminary hearing testimony before the Merced County Superior Court is admissible at trial.

13. The admissibility of evidence of Tern's detention.

14. The admissibility of plaintiff's offer to take a polygraph test.

15. The admissibility of any prior unrelated investigations, including, but not limited to, the Anna Diaz case.

16. The admissibility of evidence regarding a warrant for and the obtaining of Larry Morse's gun.

17. The admissibility of any information about former Sheriff Pazin, including a voicemail message from Pazin to Larry Morse.

18. Whether any reference to the County Board of Supervisors Meeting in January 2014 in which Larry Morse criticized the Sheriff's Department for its handling gang related investigations is admissible.

19. Whether any alleged constitutional violations or deficiencies associated with the murder investigation of Jacob Tellez are admissible.

20. Whether Larry Morse's alleged knowledge that defendant Hale was involved in insurance fraud is admissible.

21. Whether Robert Tern's statements regarding Ethan Morse's character are admissible.

22. Whether Sheriff Warnke's statement he did not think Larry Morse engaged in witness tampering is admissible.

23. Whether plaintiff's opinion that the Merced County detectives "weren't looking for the truth" or were "trying to make money" is admissible.

24. Whether payment by plaintiff's parents of his criminal attorney's fees is an admissible element of plaintiff's damages.

25. The admissibility of evidence regarding defendant Macias's involvement in other, unrelated civil lawsuits.

26. The admissibility of evidence regarding defendant Macias's voluntary transfer out of the detectives unit of the Sheriff's Department.

VI. **RELIEF SOUGHT**

1. Plaintiff seeks economic damages of $72,966.25 in attorneys' fees and costs related to his state court criminal proceedings.

2. Plaintiff seeks economic damages in the amount of $6,000.00 for the scholarship from Ouachita Baptist University he lost as a result of his arrest, prosecution, and incarceration.

3. Plaintiff seeks non-economic damages for damage to his reputation and emotional distress suffered as a result of his arrest, prosecution, and incarceration.

4. Plaintiff seeks attorneys' fees and punitive damages.

VII. **POINTS OF LAW**

Trial briefs addressing the points of law set forth below shall be filed with this court no later than **7 days before trial** in accordance with Local Rule 285.

1. The elements of, standards for, and burden of proof applicable to a Fourth Amendment judicial deception claim brought under 42 U.S.C. § 1983 alleging false statements in and material omissions from an arrest warrant affidavit with knowledge and participation by a

supervisor.

2. The elements of, standards for, and burden of proof applicable to a Fourth Amendment judicial deception claim brought under state law.

3. The elements of, standards for, and burden of proof applicable to a Fourth Amendment malicious prosecution claim brought under 42 U.S.C. § 1983 alleging defendants' bad faith conduct that caused the initiation of criminal proceedings against plaintiff, including false statements in an affidavit in support of an arrest warrant and the misrepresenting and withholding of evidence from the prosecuting Deputy Attorney General.

4. The elements of, standards for, and burden of proof applicable to plaintiff's claim for violations of his constitutional rights under California law (the Bane Civil Rights Act, codified at Civil Code § 52.1) and his common law claims for false arrest against defendants Macias, Hale and the County of Merced and for intentional infliction of emotional distress against defendants Macias, Hale, Sanchez and the County of Merced.

5. The elements of, standards for, and burden of proof applicable in raising a qualified immunity defense at trial.

6. The law with respect to probable cause and whether an affiant may, in keeping with the law, intentionally omit facts material to a probable cause determination from an affidavit submitted in support of the issuance of a warrant.

7. The law governing whether a prosecutor's decision to file charges against plaintiff cuts off the chain of causation for purposes of determining liability on the part of defendants Macias and Hale.

8. The law governing mitigation of damages.

VIII. ABANDONED ISSUES

1. Plaintiff previously dismissed his defamation claim by stipulation.

2. Plaintiff has abandoned any aspect of his claim premised on a wrongful search of his apartment.

/////

/////

## IX. WITNESSES

The parties have prepared a joint witness list comprised of the following witnesses:

1. Plaintiff Ethan Morse
2. Sergeant Ray Alvarez
3. Dr. Paul Berg (plaintiff's expert)
4. Deputy Attorney General Barton Bowers
5. Tom Cavallero
6. Roger Clark (plaintiff's expert)
7. Sabrina Ceccoli
8. Custodian of Records, Merced Union High School District
9. Custodian of Records, Merced College
10. Custodian of Records, Ouachita Baptist University
11. Jacob Delgadillo
12. Undersheriff Jason Goins
13. Tony Gomes
14. Defendant Charles Hale
15. James Hammer (plaintiff's expert)
16. Scott Hardman
17. Cameron Johnson Valenzuela
18. Owen Paul Johnson
19. Defendant Erick Macias
20. Andrew Masengale
21. Kirk McAllister
22. Cindy Morse
23. Larry Morse
24. Deputy Ruben Orozco
25. Detective Duane Pavelski
26. Michael Piper

27. Robert Rojas
28. Detective Mike Ruiz
29. Defendant Jose Sam Sanchez
30. Andrew Schriever
31. Sergeant Scott Skinner
32. Mark Super, Ph.D. (defendants' expert)
33. John J. Tefft (defendants' expert)
34. Jacob Tellez
35. Robert Tern
36. Detective Justin Ussery
37. Katrina Valenti
38. Vern Warnke

Each party may call any of the witnesses listed above.

    A. **The court does not allow undisclosed witnesses to be called for any purpose, including impeachment or rebuttal, unless they meet the following criteria:**

        (1) The party offering the witness demonstrates that the witness is for the purpose of rebutting evidence that could not be reasonably anticipated at the pretrial conference, or

        (2) The witness was discovered after the pretrial conference and the proffering party makes the showing required in paragraph B, below.

    B. Upon the post pretrial discovery of any witness a party wishes to present at trial, the party shall promptly inform the court and opposing parties of the existence of the unlisted witnesses so the court may consider whether the witnesses shall be permitted to testify at trial. The witnesses will not be permitted unless:

        (1) The witness could not reasonably have been discovered prior to the discovery cutoff;

        (2) The court and opposing parties were promptly notified upon discovery of the witness;

|   |   |     |   |
|---|---|-----|---|
| 1 |   | (3) | If time permitted, the party proffered the witness for deposition; and |
| 2 |   | (4) | If time did not permit, a reasonable summary of the witness's testimony was provided to opposing parties. |

## X. EXHIBITS, SCHEDULES, AND SUMMARIES

The parties' joint exhibits are listed in **Docket Number 104**. At trial, joint exhibits shall be identified as JX and listed numerically, e.g., JX-1, JX-2. Plaintiff's exhibits are listed in **Docket Number 106**. At trial, plaintiff's exhibits shall be listed numerically. Defendant's exhibits are listed in **Docket Number 105**. At trial, defendant's exhibits shall be listed alphabetically. All exhibits must be pre-marked. No exhibit shall be marked with or entered into evidence under multiple exhibit numbers.

The parties must prepare exhibit binders for use by the court at trial, with a side tab identifying each exhibit in accordance with the specifications above. **The court requires three separate binders for its own use.** Each binder shall have an identification label on the front and spine.

The parties must exchange exhibits no later than **28 days before trial**. Any objections to exhibits are due no later than **14 days before trial**. The final exhibits are to be submitted to the court by **April 12, 2018**. In making any objection to an exhibit, the party is to set forth the grounds for the objection. As to each exhibit which is not objected to, it shall be marked and will be received into evidence when moved without the need for further foundation.

    A.    **The court does not allow the use of undisclosed exhibits for any purpose, including impeachment or rebuttal, unless they meet the following criteria:**

        (1)    The party proffering the exhibit demonstrates that the exhibit is for the purpose of rebutting evidence that could not have been reasonably anticipated, or

        (2)    The exhibit was discovered after the issuance of this order and the proffering party makes the showing required in paragraph B, below.

    B.    Upon the discovery of exhibits after the discovery cutoff, a party shall promptly inform the court and opposing parties of the existence of such exhibits so that the

court may consider their admissibility at trial. The exhibits will not be received unless the proffering party demonstrates:

(1) The exhibits could not reasonably have been discovered earlier;

(2) The court and the opposing parties were promptly informed of their existence;

(3) The proffering party forwarded a copy of the exhibits (if physically possible) to the opposing party. If the exhibits may not be copied the proffering party must show that it has made the exhibits reasonably available for inspection by the opposing parties.

XI. <u>DISCOVERY DOCUMENTS</u>

Counsel must lodge the sealed original copy of any deposition transcript to be used at trial with the Clerk of the Court no later than **14 days before trial**.

Plaintiff may use the following discovery documents at trial:

1. Defendant Merced County's Responses to Special Interrogatories Set No. 1 and 2.
2. Defendant Merced County's Responses to Requests for Admissions.

Defendants may use the following discovery documents at trial:

1. Defendant Deputy Erick Macias's Interrogatories to Plaintiff (Set One)
2. Plaintiff's Responses to Defendant Deputy Erick Macias's Interrogatories (Set One)
3. Defendant Deputy Erick Macias's Request for Production of Documents to Plaintiff (Set One)
4. Plaintiff's Responses to Defendant Deputy Erick Macias's Request for Production of Documents (Set One) (including supplemental productions)
5. Defendant County of Merced's Special Interrogatories to Plaintiff (Set One)
6. Plaintiff's Responses to Defendant County of Merced's Special Interrogatories (Set One)
7. Defendant County of Merced's Request for Production of Documents to Plaintiff (Set One)

14

| | |
|---|---|
| 1 |       8.   Plaintiff's Responses to Defendant County of Merced's Request for Production of |
| 2 | Documents (Set One) (including supplemental productions) |

      Either party may use deposition testimony at trial for impeachment purposes. *See* Fed. R. Civ. P. 32(a)(2).

XII.    FURTHER DISCOVERY OR MOTIONS

      None.

XIII.   STIPULATIONS

      None.

XIV.   AMENDMENTS/DISMISSALS

      None.

XV.    SETTLEMENT

      The parties attended a settlement conference with United States Magistrate Judge Stanley A. Boone on May 16, 2017, at which time no settlement was reached. No further settlement negotiations or discussions have taken place. As noted at the final pretrial conference, the court will not require a further mandatory settlement conference in this case. However, if desired by the parties prior to trial, the undersigned is willing to schedule a further settlement conferences before Magistrate Judge Boone or before the undersigned in the event all parties were to elect to file a written stipulation waiving any claim of disqualification to the undersigned presiding over the trial of this matter after presiding over such a settlement conference. *See* L.R. 270(b).

XVI.   JOINT STATEMENT OF THE CASE

      The parties have agreed to the following joint statement of the case:

> This is a civil lawsuit that arises out of the Merced County Sheriff's Department's investigation of a gang-related triple homicide that occurred on March 30, 2013 at approximately 11:00 p.m., at a large house party in Atwater, California.
>
> The plaintiff who brought this lawsuit is Ethan Morse. He is suing the County of Merced and three Sheriff's Department detectives that conducted the homicide investigation—Detective Sergeant Charles Hale, Detective Sam Jose Sanchez, and Detective Erick Macias.
>
> In this lawsuit, the plaintiff contends that these detectives wrongfully identified him as a suspect in the homicide, wrongfully

15

arrested him for the crime, and caused him to be wrongfully prosecuted for murder. The defendants deny these allegations and contend that they had sufficient evidence to arrest and prosecute plaintiff for murder.

## XVII. SEPARATE TRIAL OF ISSUES

Defendants indicate they believe bifurcation is appropriate, with Phase One consisting of liability, compensatory damages, and the existence of punitive damages, and Phase Two concerning the amount of punitive damages. The court agrees and intends to bifurcate the trial as suggested by defendants.

## XVIII. IMPARTIAL EXPERTS/LIMITATION OF EXPERTS

None.

## XIX. ATTORNEYS' FEES

Plaintiff will seek an award of attorneys' fees, if successful. Defendants will also seek an award of attorneys' fees, on the basis that this action is frivolous and without merit. *See Legal Servs. of N. Cal., Inc. v. Arnett*, 114 F.3d 135, 141 (9th Cir. 1997) (prevailing defendants may be awarded attorneys' fees under 42 U.S.C. § 1988 "only where the action is found to be unreasonable, frivolous, meritless or vexatious") (internal quotations omitted).

## XX. TRIAL PROTECTIVE ORDER AND REDACTION OF TRIAL EXHIBITS

In their submissions, the parties indicated a potential need for a trial protective order. At the final pretrial conference, the parties indicated that these concerns pertained to the identity of individuals whose names might be revealed during the testimony of other witnesses, though the individuals themselves are not expected to testify. Moreover, the parties believed they may be able to come to an agreement that would obviate the need for a trial protective order. Should either party believe a trial protective order is necessary, any such request should be filed **no later than 14 days before trial**.

## XXI. ESTIMATED TIME OF TRIAL/TRIAL DATE

Jury trial is set for **April 17, 2018**, at 1:00 p.m. in Courtroom 5 before the Honorable Dale A. Drozd. Trial is anticipated to last ten court days. The parties are directed to Judge Drozd's standard procedures available on his webpage on the court's website.

16

Counsel are to call Renee Gaumnitz, courtroom deputy, at (559) 499-5652, one week prior to trial to ascertain the status of the trial date.

XXII. PROPOSED JURY *VOIR DIRE* AND PROPOSED JURY INSTRUCTIONS

The parties shall file any proposed jury *voir dire* **7 days before trial**. Counsel for plaintiff and defendants, respectively, will be limited to thirty minutes of supplemental jury *voir dire*.

The court directs counsel to meet and confer in an attempt to generate a joint set of jury instructions and a verdict form. The court will supply the parties with a copy of its standard civil jury instructions following the issuance of this order. The parties shall file any such joint set of instructions **14 days before trial**, identified as "Joint Jury Instructions and Verdicts." To the extent the parties are unable to agree on all or some instructions and verdicts, their respective proposed instructions are due **14 days before trial**. Further, if any party objects to the court's standard instructions or portions thereof, they should so note in these filings.

Counsel shall e-mail a copy of all proposed jury instructions and verdicts, whether agreed or disputed, as a Word document to dadorders@caed.uscourts.gov no later than **14 days before trial**; all blanks in form instructions should be completed and all brackets removed.

Objections to proposed jury instructions must be filed **7 days before trial**; each objection shall identify the challenged instruction and shall provide a concise explanation of the basis for the objection along with citation of authority. When applicable, the objecting party shall submit an alternative proposed instruction on the issue or identify which of his or her own proposed instructions covers the subject.

XXIII. TRIAL BRIEFS

As noted above, trial briefs are due **7 days before trial**.

The parties are reminded that pursuant to Rule 16(e) of the Federal Rules of Civil Procedure and Local Rule 283 of this court, this order shall control the subsequent course of this action and shall be modified only to prevent manifest injustice.

IT IS SO ORDERED.

Dated: **September 20, 2017**

UNITED STATES DISTRICT JUDGE

17