J. Gary Gwilliam (SBN. 33430)
Jayme L. Walker (SBN. 273159)
GWILLIAM IVARY CHIOSSO CAVALLI & BREWER
1999 Harrison St., Suite 1600
Oakland, CA 94612
Phone: (510)832-5411
Fax: (510)832-1918
Email: ggwilliam@giccb.com
          jwalker@giccb.com

Attorneys for Plaintiff
ETHAN MORSE

GWILLIAM, IVARY, CHIOSSO, CAVALLI & BREWER
ATTORNEYS AT LAW
A Professional Corporation
P.O. Box 2079, Oakland, CA 94604-2079

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ETHAN MORSE,<br><br>         Plaintiff,<br><br>vs.<br><br>COUNTY OF MERCED, CHARLES HALE, ERICK MACIAS and JOSE SAM SANCHEZ individually and as officers of the MERCED COUNTY SHERIFF'S DEPARTMENT and DOES 1-100<br><br>         Defendant | Case No.: 1:16-CV-00142-DAD-SKO<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AN AMOUNT OF ATTORNEYS' FEES AND EXPENSES PURSUANT TO 42 U.S.C. § 1988(b); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Trial Date: April 17, 2018<br>Time:<br>Courtroom:     5<br>Judge:          Hon. Dale A. Drozd<br><br>Complaint Filed:        11/20/15 |

TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:

Please take notice that on July 17, 2018 at 9:00 a.m. or as soon as the matter can be heard thereafter at the United States District Court, Eastern District of California, before the Honorable Dale A. Drozd, plaintiff Ethan Morse will, and hereby does, move the Court pursuant to 42 U.S.C. § 1988(b) for an order awarding:

1. Attorneys' fees in the amount of $1,767,220.00;

2. Unreimbursed expenses necessarily incurred in connection with the prosecution of this action after accounting for partial reimbursement of taxable expenses in the amount of $68,303.37.

3. Total award requested is $1,835,523.37 in attorney fees and costs.

The motion is based on this Notice of Motion and the accompanying Memorandum of Points and Authorities; the Declaration of J. Gary Gwilliam; the Declaration of Randall E. Strauss; the Declaration of Jayme L. Walker; the Declaration of Richard Pearl, and the Declaration of Larry Morse, of argument by counsel at the hearing before this Court; any papers filed in reply; and all papers and records in this matter.

DATE: June 6, 2018                    GWILLIAM IVARY CHIOSSO CAVALLI & BREWER


                                      /s/ Jayme L. Walker
                                      J. Gary Gwilliam
                                      Jayme L. Walker
                                      Attorneys for Plaintiff
                                      ETHAN MORSE

## Table of Contents

**TABLE OF AUTHORITIES** ..................................................................................................... ii

**I.   STATEMENT OF THE CASE** ...................................................................................... 1

    a. Procedural history of the case .................................................................................. 1

    b. Claims for relief and parties. .................................................................................. 2

**II.  PLAINTIFF'S LODESTAR CALCULATION IS REASONABLE** ............................ 3

    a. The Lodestar framework ........................................................................................ 4

    b. The rates sought by Plaintiff's counsel are reasonable ........................................ 5

        i.   *Relevant Community is the San Francisco Bay Area* ................................. 5

        ii.  *Delay in Compensation Should be Considered* ......................................... 6

        iii. *Each Attorney's Background Should be Considered* ................................. 6

        iv.  *Reasonable Hourly Rates for the Trial Team* ........................................... 6

    c. The number of hours sought by Plaintiff's counsel is reasonable ........................ 8

        i. *Plaintiff is entitled to all time reasonably expended* ..................................... 8

**III. PLAINTIFF IS ALSO ENTITLED COMPENSATION FOR TIME SPENT**

     **ON THIS FEE PETITION** ..................................................................................... 9

**IV. EXPENSES OTHER THAN TAXABLE COSTS** ....................................................... 10

**V.  POST-JUDGMENT INTEREST** .................................................................................. 10

**VI. CONCLUSION** .............................................................................................................. 111

# Table of Authorities

## CASES

*Bell v. Clackamas County,*
    341 F.3d 858 (9th Cir. 2003)------------------------------------------------ 6

*Barjon v. Dalton,*
    132 F.3d 496 (9th Cir.1997)-------------------------------------------- 5, 6, 8

*Blum v. Stenson,*
    465 U.S. 886 (1983)-------------------------------------------------- 4, 5, 6

*Chalmers v. City of Los Angeles,*
    796 F.2d 1205 (9th Cir. 1986) ------------------------------------------10

*Clark v. City of Los Angeles,*
    803 F.2d 987 (9th Cir. 1986)------------------------------------------- 8

*Dadesho v. Government of Iraq,*
    139 F.3d 766 (9th Cir. 1998) ------------------------------------------ 7

*Fox v. Vice,*
    563 U.S. 826 (5th Cir. 2011) ----------------------------------------- 3

*Friend v. Kolodzieczak,*
    72 F.3d 1386 (9th Cir. 1995) -----------------------------------------10

*Gates v. Deukmejian,*
    987 F.2d 1392 (9th Cir. 1993)------------------------------------------ 5, 6

*Gonzalez v. City of Maywood,*
    729 F.3d 1196 (9th Cir. 2013)------------------------------------------ 4

*Hensley v. Eckerhart,*
    461 US 424 (1983) ------------------------------------------------- 5, 8, 9

*Fischer v. SJB-P.D., Inc.,*
    214 F.3d 1115 (9th Cir. 2000) ---------------------------------------- 9

*Hernandez V. Kalinowski,*
    146 F.3d 196 (3rd Cir. 1998) ----------------------------------------10

*Missouri v. Jenkins ex rel. Agyei,*
    491 U.S. 274 (8th Cir. 1989) -----------------------------------------6,8

*Morales v. City of San Rafael,*
    96 F.3d 359 (9th Cir. 1996)------------------------------------------- 4

*Moreno v. City of Sacramento,*
    534 F.3d 1106 (9th Cir. 2007)----------------------------------------- 4, 9

*Newman v. Piggie Park Enterprises, Inc.,*
    390 U.S. 400 (4th Cir. 1968) ----------------------------------------- 3

*Northcross v. Board of Educ.,*

611 F.2d 624 (6th Cir.1979), cert. denied, 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980). --------------------------------------------------------------------------------------------10

*Pa. v. Delaware Valley Citizens' Council for Clean Air,*
    478 U.S. 546 (1986)------------------------------------------------------------------------------ 8

*Thompson v. Gomez,*
    45 F.3d 1365 (9th Cir. 1995) ------------------------------------------------------------------- 8

*Webb v. Ada County, Idaho,*
    195 F.3d 524 (9th Cir. 1999) -----------------------------------------------------------------10

*Webb v. Board of Education of Dyer County,*
    471 U.S. 234 (1985)------------------------------------------------------------------------------ 8

STATUTES

28 U.S.C. §1961------------------------------------------------------------------------------------10

42 U.S.C. §1988------------------------------------------------------------------------------5, 8, 10

42 U.S.C. § 1983 ---------------------------------------------------------------------------------- 1, 2

OTHER AUTHORITIES

U.S. Code Cong. & Admin. News 1976, pp. 5908, 5913 ------------------------------------- 4

RULES

Federal Rule of Civil Procedure 54-------------------------------------------------------------10

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    INTRODUCTION**

Plaintiff's case for judicial deception and false arrest was a unique and complex case of liability and damages involving a high-profile arrest and novel legal issues.  Plaintiff's case also vindicated important legal rights and public policies that maintain the integrity of the criminal justice system and enforce a constitutional judicial check on police power that was flaunted by Defendants in this case (and likely countless other cases).  As the court pointed out during the proceedings, the case often presented like a law school examination.  Moreover, this case is one of the few judicial deception cases that has been tried in the 9th Circuit.  Counsel on both sides were experienced advocates who zealously represented their clients with skill and passion.

Moreover, Plaintiff's counsel litigated this case primarily with only 3 lawyers and a paralegal, while there were at least 5 lawyers representing Defendants and two large law firms of staff and paralegals behind them.  Plaintiff's counsel also took this case on a contingency fee basis and faced substantial risk and delayed payment in prosecuting it.

For these reasons, the fact that Plaintiff prevailed in a difficult case in a difficult venue (as evidenced by the long and complicated voir dire process) is a testament that a substantial attorneys' fees award is justified.

**II.    STATEMENT OF THE CASE**

**a.  Procedural history of the case**

Plaintiff's fee motion is before the Court following a jury verdict in favor of Plaintiff on Plaintiff's §1983 Judicial Deception and state law False Arrest Claims. The jury awarded Plaintiff $498,300 in addition to punitive damages in the amount of $28,359.

This action was filed on November 19, 2015 in the Merced County Superior Court on behalf of Plaintiff who was falsely arrested for murder on July 25, 2014. His arrest was based upon a warrant that was drafted and signed by Defendant Macias at the direction of Defendant Hale and presented to a Superior Court Judge who, based upon the information presented in the affidavit, signed the warrant. On November 14, 2014, after a four-day preliminary hearing,

1  Judge Ronald Hansen made a finding that Plaintiff was factually innocent, a fact that was

2  ultimately excluded from the civil trial.

3        The criminal charges against Plaintiff arose after he voluntarily came forward to tell

4  Defendants Hale, Macias and the Merced County Sheriff's Department that they had arrested an

5  innocent man for murder.  Because Ethan Morse was the son of the Merced County District

6  Attorney, a man who had criticized the Defendants for failing to adequately combat gang

7  violence, Defendants maliciously arrested Plaintiff for murder rather than admit that they had

8  initially arrested the wrong person. Defendants had Ethan Morse arrested a mere five days after

9  he came forward and without doing a proper investigation.  Defendants did this for their own

10  political and professional gain and to publicly save face.  This was an outrageous rush to

11  judgment and an unlawful arrest without probable cause that ruined a young man's reputation

12  and changed the course of his life forever.  What's worse is that Defendants misrepresented facts

13  and omitted material information in order to deceive a judge into authorizing an arrest warrant

14  for Plaintiff's arrest.

15        Plaintiff's counsel reviewed hundreds of pages of documents from the Attorney

16  General's criminal case file and listened to hours of audio interviews in the underlying criminal

17  case in order to successfully prosecute Plaintiff's civil case.

18        **b.  Claims for relief and parties.**

19        The Second Amended Complaint asserted violations of 42 USC § 1983 (Individual

20  Defendants for 4th Amendment, Due Process and 14th Amendment Violations); (2) Malicious

21  Prosecution in Violation of the Fourth Amendment (42 USC § 1983); (3) Violation of Civil

22  Code 52.1; (4) False Imprisonment/False Arrest; (5) Intentional Infliction of Emotional Distress;

23  and (6) Defamation. Plaintiff alleged these claims against the County of Merced, Detective

24  Macias, Sergeant Hale, and Detective Sanchez as individuals.

25        Defendants Hale and Sanchez and the County of Merced were represented by Dana Fox,

26  Matthew Harrison and Dawn Flores Oster of Lewis Brisbois's Los Angeles office.  Defendant

27  Macias was represented by Mark Rutter and Danielle Foster of Carpenter, Rothans & Dumont,

28  also located in Los Angeles.

1    On February 4, 2016, Defendants filed a motion to dismiss which Plaintiff successfully

2    opposed.  Defendants then filed a motion for reconsideration which Plaintiff also successfully

3    opposed.  After Plaintiff filed his second amended complaint, Defendants filed another motion

4    to dismiss which was denied.

5    Discovery ensued and Plaintiff' counsel took and defended the depositions of a total of

6    19 witnesses.  Many of these depositions were several hours to all day depositions and involved

7    a complex web of facts.  Plaintiff's counsel hired three very experienced and qualified experts to

8    support Plaintiff's claims for liability and damages and deposed Defendants' expert whose

9    testimony was ultimately significantly excluded from evidence in the trial of this matter.

10    On May 9, 2017, Defendant brought a comprehensive Motion for Summary Judgment,

11    which Plaintiff largely successfully opposed.  The court dismissed the following claims at

12    summary judgment: Plaintiff's Fourth Amendment and false arrest claims brought against

13    Defendant Sanchez; Plaintiff's Fourteenth Amendment claim; Plaintiff's malicious prosecution

14    claim against Defendant Sanchez; and Plaintiff's Bane Act claim against Defendant Sanchez, but

15    denied summary judgment as to all other claims.

16    After extensive pretrial motion practice, trial in the matter proceeded on Plaintiff's

17    Fourth Amendment, malicious prosecution, intentional infliction of emotional distress, false

18    arrest, and Bane Act claims against defendants Sergeant Hale and Detective Macias, plaintiff's

19    intentional infliction of emotional distress claim against defendant Detective Sanchez, Sergeant

20    Hale and Detective Macias, and plaintiff's false arrest, intentional infliction of emotional

21    distress, and Bane Act claims against the defendant County of Merced.

22    **III.    PLAINTIFF'S LODESTAR CALCULATION IS REASONABLE**

23    Plaintiff sought compensatory and punitive damages for his arrest and for the prosecution

24    of him, which spanned almost 4 months and resulted in his incarceration for 114 days. Plaintiff

25    was successful in his judicial deception claims against defendants Charles Hale and Erick

26    Macias. "When a plaintiff succeeds in remedying a civil rights violation, . . . he serves "as a

27    'private attorney general,' vindicating a policy that Congress considered of the highest priority."

28    *Fox v. Vice,* 563 U.S. 826, 833 (2011), quoting *Newman v. Piggie Park Enterprises, Inc.,* 390

1  U.S. 400, 402 (1968) (*per curiam*).  "Success is measured not only by the amount of the
2  recovery but also in terms of the significance of the legal issue on which the plaintiff prevailed
3  and the public purpose the litigation served." *Morales v. City of San Rafael*, 96 F.3d 359, 365
4  (9th Cir. 1996).

5      Here, Plaintiff's claims were successful in fully vindicating that he was falsely and
6  wrongfully arrested and bringing to light a disturbing practice by the Defendants of not being
7  truthful, thorough and accurate when presenting arrest warrants to judges.  Defendants'
8  deception of the judicial officer brought into question the very integrity of the criminal justice
9  system.  Plaintiff's case will hopefully bring about important changes to the practices of Merced
10  County Sheriff's Department when presenting affidavits to judges for arrest.

11      **a.  The Lodestar framework**

12      The touchstone of a fee award is the "lodestar" analysis. *Morales v. City of San Rafael*,
13  96 F.3d 359, 363 (9th Cir. 1996). The "lodestar" calculation is based on the number of hours
14  reasonably expended on the litigation multiplied by a reasonable hourly rate for each attorney or
15  support staff personnel for whom compensation is sought. *Id*. This is the starting point for any
16  fee award. There is a strong presumption that the lodestar calculation represents a reasonable
17  fee. *Id*. and n.8. See also *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013)
18  (lodestar "presumptively reasonable").

19      The reasonable rate is "the prevailing local rate for an attorney of the skill required to
20  perform the litigation." *Moreno v. City of Sacramento*, 534 F.3d at 1111 (9th Cir. 2007), citing
21  *Blum v. Stenson*, 465 U.S. 886, 895 (1983). The Court may consider (1) the time and labor
22  required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the
23  legal service properly; (4) the preclusion of employment by the attorney due to acceptance of
24  the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations
25  imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9)
26  the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11)
27  the nature and length of the professional relationship with the client; and (12) awards in
28  similar cases. 488 F.2d, at 717–719. *Hensley v. Eckerhart* (1983) 461 U.S. 424, 455.   The

1  proper focus of the inquiry remains the rates "in line with those prevailing in the community for

2  similar services provided by lawyers of reasonably comparable, skill, experience and

3  reputation." *Blum*, 465 U.S. at 895 & n.11.

4  **b.  The rates sought by Plaintiff's counsel are reasonable**

5        Reasonable hourly rates under §1988 are based on the "prevailing market rates in the

6  relevant community, regardless of whether plaintiff is represented by private or nonprofit

7  counsel." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). Thus, a district court must first decide

8  what the "relevant community" is geographically, and then what the "prevailing market rates"

9  are for that community.

10              *i.  Relevant Community is the San Francisco Bay Area*

11        The relevant community is generally where the district court sits. *Barjon v. Dalton*, 132

12  F.3d 496, 500 (9th Cir.1997). However, if local counsel was unavailable, either because they are

13  unwilling or unable to perform because they lack the degree of experience, expertise, or

14  specialization required to handle the case, rates where the handling attorneys practice may be

15  awarded. *Gates v. Deukmejian* (9th Cir. 1992) 987 F.2d 1392, 1405.

16        In the present case, Plaintiff was unable to find any local counsel that specialized in the

17  novel issues presented by Plaintiff's case.  (See Declaration of Larry Morse  ¶1).  Moreover, due

18  to the high-profile and politically charged nature of the case, Plaintiff's father, who is an

19  attorney, felt Plaintiff's best interests would be served by a lawyer that was not connected in any

20  way to Valley politics.  (See Morse Decl. ¶ 3).

21        While there are certainly attorneys in Fresno doing excessive force cases, Plaintiff's

22  counsel found 15 cases filed in the Eastern District alleging judicial deception and all but two

23  of those were brought by counsel outside of the Fresno area.  (See chart attached as Exhibit B to

24  Walker Decl.)

25        Even if the court were to award Eastern District rates, the rates requested by Plaintiff's

26  attorneys are still reasonable based on the novel legal issues in this case, the skill and experience

27  of the attorneys, and the fact that no other case related to judicial deception has been

28  successfully tried by Eastern District attorneys in the Eastern District Courts.  Moreover, the

1    Eastern District has awarded rates in line with those requested by Ms. Walker.  See Declaration

2    of Richard Pearl ¶ 14 (none of the attorneys in the cited cases had even close to the experience

3    of Mr. Gwilliam).  *See also Taylor v. FedEx Freight, Inc.* (E.D. Cal., Oct. 13, 2016, No.

4    113CV01137DADBAM) 2016 WL 6038949, at *7 (awarding fees of $700/hour in a meal and

5    rest break class action settlement to a lawyer with 12 years less experience than J. Gary

6    Gwilliam).

*ii.   Delay in Compensation Should be Considered*

8        To determine "prevailing market rates," the court must first decide whether to apply past

9    or present rates. To compensate for delay in receiving payment, often "several years after the

10    services were rendered – as it frequently is in complex civil rights litigation," *Missouri v.*

11    *Jenkins ex rel. Agyei*, 491 U.S. 274, 283 (1989), a district court may either apply the rates in

12    effect when the work was performed – the historical rates – plus interest, or the current rates.

13    *Bell v. Clackamas County*, 341 F.3d 858, 868 (9th Cir. 2003); *Barjon*, 132 F.3d at 502. Applying

14    the current rates is the preferred method to compensate for delay in payment because it is the

15    best way "to adjust for inflation and loss of the use funds." *Gates v. Deukmejian*, 987 F.2d 1392,

16    1406-07 (9th Cir. 1993).

*iii.   Each Attorney's Background Should be Considered*

18        Once the temporal decision is made, the "prevailing" rates must be determined. "[T]he

19    burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's

20    own affidavits – that the requested rates are in line with those prevailing in the community for

21    similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*,

22    465 U.S. at 895 n.11.

*iv.   Reasonable Hourly Rates for the Trial Team*

24        The trial team consists of the current attorneys of record for Plaintiffs and so current

25    market rates should apply to each of them.

26    **J. Gary Gwilliam**

27        Mr. Gwilliam's reasonable hourly rate is $1000.00. Mr. Gwilliam is a 1962 graduate

28    from the University of California, Boalt School of Law. For over 50 years he has represented

1  plaintiffs in serious, complex litigation, including the area of civil rights and police misconduct.

2  Prior to turning to civil work, Mr. Gwilliam worked in the District Attorney's Office of Ventura

3  County handling criminal matter. He has tried over 180 jury cases, including a $5 million jury

4  verdict for the family of a man who was killed by police officers when he was threatening

5  suicide. At the time, this was the largest police shooting misconduct verdict in Northern

6  California history. In the present case, he acted as a lead trial counsel, having shared in strategy,

7  planning, trial and motion responsibilities.

8      **<u>Randall E. Strauss</u>**

9      Mr. Strauss's reasonably hourly rate is $800.00. Mr. Strauss is a 1993 graduate from the

10  University of California, Boalt School of Law. Mr. Strauss has tried a number of cases to

11  verdict, both as lead counsel and as second chair.  He has over 25 years of experience in

12  handling almost all types of Plaintiffs' cases, including numerous employment cases, and

13  appeals. Mr. Strauss represented the Plaintiff in *Dadesho v. Government of Iraq* (9th Cir. 1998)

14  139 F.3d 766, obtaining a $1.5 million judgment on behalf of an Iraqi dissident who suffered

15  emotional distress when the Saddam Hussein regime sent assassins to California to try to kill

16  him. In the present case, he researched and drafted claims, assisted in depositions, prepared

17  witnesses for examination, and helped with overall case strategy.

18      **<u>Jayme L. Walker</u>**

19      Ms. Walker's reasonable hourly rate is $600.00. Ms. Walker is a 2010 graduate from the

20  University of San Francisco School of Law. For the past 8 years, she has worked with Mr.

21  Gwilliam and others on employment, personal injury and civil rights cases. As second chair to

22  Mr. Gwilliam, she represented a small business owner against a major company in a contract

23  dispute, resulting in a verdict of over $11 million for the plaintiff.  Ms. Walker is actively

24  involved in the California Employment Lawyers Association, Consumer Attorneys of California

25  and is a board member on the Alameda Contra Costa County Trial Lawyers Association and was

26  named by California Super Lawyers as a Rising Star every year since 2014. She did most of the

27  strategy and planning for Plaintiffs' case-in-chief, spoke most often before this Court, and

28  coordinated the work of the rest of the trial team.

1    **Dara Pilgrim**

2    Time is also being submitted for paralegal work done by Dara Pilgrim. Since it is the

3    prevailing practice in this community to bill legal assistants separately at market rates, it may be

4    done in this motion under §1988. See *Missouri*, 491 U.S. at 287-88; see also *Barjon*, 132 F.3d at

5    503. "Such separate billing appears to be the practice in most communities today." *Missouri*,

6    491 U.S. at 289.

7    Ms. Pilgrim's reasonable hourly rate is $200. Ms. Pilgrim is a paralegal with Mr.

8    Gwilliam's law firm. She is a 2015 graduate of San Francisco State University. While obtaining

9    her undergraduate degree in Political Science, Ms. Pilgrim focused heavily on qualitative and

10    quantitative research, ultimately presenting a research project at the 40th Annual CSU, SSRIC

11    Social Science Student Symposium. Ms. Pilgrim spent a significant amount of time during the

12    litigation reviewing discovery, summarizing depositions, conducting factual and legal research,

13    helped with pleadings, and working with Plaintiff and Plaintiff's experts. She also worked to

14    prepare the electronic evidence at trial, which included a myriad of transcripts, depositions,

15    videos and other evidence and files associated with this case and devoted a significant number of

16    hours in the pretrial and trial phases.

17    **c.  The number of hours sought by Plaintiff's counsel is reasonable**

18    ***i.  Plaintiff is entitled to all time reasonably expended***

19    Plaintiff is entitled to compensation for all time "reasonably expended on the

20    litigation." *Webb v. Board of Education of Dyer County*, 471 U.S. 234, 242 (1985). See also

21    *Hensley v. Eckerhart*, 461 US 424, 440 (1983) ("prevailing party . . . compensated . . . for all

22    hours reasonably expended by its attorneys"). Time is reasonably expended when it is "useful

23    and of a type ordinarily necessary to secure the final result obtained from the litigation." *Pa. v.

24    Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 561 (1986) (internal citation

25    and quotations omitted). This includes all "time spent in establishing entitlement to an amount

26    of fees awardable under section 1988 . . . ." *Clark v. City of Los Angeles*, 803 F.2d 1987, 992

27    (9th Cir. 1986). See also *Thompson v. Gomez*, 45 F.3d 1365, 1366 (9th Cir. 1995)

28    (compensable time includes time litigating fees motion). As a general rule, courts "should

defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case." *Moreno*, 534 F.3d at 1112. This rule applies with particular force in civil rights litigation, where representation is on a contingency basis, giving little incentive to bill excessive time.

> [L]awyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee. It would therefore be the highly atypical civil rights case where plaintiff's lawyer engages in churning. By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker.

*Id.*

Plaintiff has provided detailed records of the work that was done in this case. See *Hensley*, U.S. at 436 n.12; *Fischer v. SJB-P.D., Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000). The total number of hours for which compensation is requested is 2,777.15. Exhibits B, D, and E. The total lodestar is $1,767,220.00. The breakdown of hours by attorneys is as follows:

| Attorney | Admission | Years | Hours | Rate | Total |
|---|---|---|---|---|---|
| **J. Gary Gwilliam** | 1962 | 56 | 895.35 | $1,000 | $895,350.00 |
| **Randall E. Strauss** | 1993 | 25 | 118.05 | $800 | $94,440.00 |
| **Jayme L. Walker** | 2010 | 8 | 1061.7 | $600 | $637,020.00 |
| | | | | | |
| **Support Staff** | | | | | |
| **Dara Pilgrim** | | | 702.05 | $200 | $140,410.00 |
| | | TOTAL | **2,777.15** | | **$1,767,220.00** |

## IV. <u>PLAINTIFF IS ALSO ENTITLED COMPENSATION FOR TIME SPENT ON THIS FEE PETITION</u>

In addition to requesting compensation for their attorneys' time in the merits litigation, Plaintiffs are also asking to be reimbursed for attorney time spent on this fee petition – known

as "fees on fees." *Webb v. Ada County, Idaho*, 195 F.3d 524, 527 (9th Cir. 1999); *Hernandez V. Kalinowski*, 146 F.3d 196, 200 (3d Cir. 1998).

## V.        EXPENSES OTHER THAN TAXABLE COSTS

Expenses that are "not normally taxable as costs" (e.g., transportation expenses) under the Federal Rule of Civil Procedure 54 and the corresponding Civil Local Rules, but which are "out of pocket expenses incurred by an attorney which would normally be charged to a fee-paying client are recoverable as attorney's fees under section 1988." *Chalmers v. City of Los Angeles,* 796 F.2d 1205 (9th Cir. 1986).  The courts have also ruled that "[t]he authority granted in section 1988 to award a `reasonable attorney's fee' included the authority to award those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." *Northcross v. Board of Educ*., 611 F.2d 624, 639 (6th Cir.1979), cert. denied, 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980).

In the present case, Plaintiffs' Bill of Costs (filed May 23, 2018) is currently pending before this Court. Additionally, incurred non-taxable expenses total $68,303.37. These non-taxable expenses are itemized as Exhibit E, attached to the Declaration of Jayme L. Walker.

## POST-JUDGMENT INTEREST

Plaintiffs are entitled to post-judgment interest "from the date of the entry of judgment" pursuant to 28 U.S.C. §1961. This "statute applies to awards of attorneys' fees and costs under section 1988." *Friend v. Kolodzieczak*, 72 F.3d 1386, 1391 (9th Cir. 1995). When the issues of entitlement and amount are bifurcated or otherwise determined separately, "[i]nterest runs from the date that entitlement to fees is secured, rather than from the date that the exact quantity of fees is set." *Id*. at 1392. This rule also applies to interest on costs. *Id*. at n.6. Therefore, Plaintiffs are entitled to post-judgment interest from the date this Court ruled that Plaintiffs are entitled to attorneys' fees under §1988: May 9, 2018.

///

///

1  **VI.    <u>CONCLUSION</u>**

2          For these foregoing reasons, Plaintiff requests that the fee motion be granted in full and

3  that the court award plaintiff the amount of $1,767,220.00 in attorney fees for a total of 2777.15

4  hours worked on this case, plus $68,303.37 for non-taxable expenses.

5

6  DATE:  June 6, 2018                    GWILLIAM IVARY CHIOSSO CAVALLI & BREWER

7

8                                             /s/ Jayme L. Walker

9                                             J. Gary Gwilliam
                                             Jayme L. Walker
10                                            Attorneys for Plaintiff
                                             ETHAN MORSE
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28