UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ETHAN MORSE, | No. 1:16-cv-00142-DAD-SKO |
| Plaintiff, | |
| v. | ORDER DENYING MOTION TO AMEND JUDGMENT UNDER RULE 59 |
| COUNTY OF MERCED, CHARLES HALE, ERICK MACIAS, and JOSE SAM SANCHEZ, | (Doc. No. 297) |
| Defendants. | |

The jury trial in this civil rights action commenced on April 17, 2018 and concluded on May 8, 2018. (*See* Doc. Nos. 231–287.) On May 4, 2018, the jury returned a verdict in favor of plaintiff, finding he had met his burden of proof on his judicial deception claim brought under 42 U.S.C. § 1983 and his false arrest claim brought under state law. (Doc. No. 276.) The jury awarded plaintiff $498,300 in damages, including $164,300 designated as future economic damages on the special verdict form. (*Id.* at 5.)[1]

On May 21, 2018, defendants County of Merced, Charles Hale, and Jose Sam Sanchez (hereafter "defendants") filed a motion seeking to amend the judgment under Federal Rule of Civil Procedure 59. (Doc. No. 297.) Specifically, defendants request that this court reduce the jury's award of future economic damages to plaintiff by $150,000, resulting in an award of

---

[1] The jury also awarded plaintiff an additional $28,359 following the punitive damages phase of the trial. (Doc. No. 283.)

1

$14,300. (*Id.*) Defendants indicate they do not wish to re-open the case, suggesting they do not seek a new trial. (*Id.* at 6 n.2.) Plaintiff opposes defendants' motion, asserting first that such a request violates his Seventh Amendment right to a jury, and second that the jury's award of future economic damages is supported by the evidence presented at trial. (Doc. No. 303.) Defendants filed a reply on June 12, 2018. (Doc. No. 307.) A hearing on the pending motion was held on June 19, 2018, at which attorneys Gary Gwilliam and Jayme Walker appeared on behalf of plaintiff, and attorneys Dawn Flores-Oster, Matthew Harrison, and Mark Rutter appeared on behalf of defendants. (Doc. No. 309.) For the following reasons, defendants' motion will be denied.

## LEGAL STANDARD

Rule 59 of the Federal Rules of Civil Procedure for the most part concerns motions for a new trial. *See* Fed. R. Civ. P. 59(a)-(d). However, Rule 59(e) does state simply that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." A motion brought under Rule 59(e) may seek "'reconsideration of matters properly encompassed in a decision on the merits.'" *United States ex rel Hoggett v. Univ. of Phoenix*, 863 F.3d 1105, 1108 (9th Cir. 2017) (quoting *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 174 (1989)). This requires a "substantive change of mind by the court." *Id.* (quoting *Bordallo v. Reyes*, 763 F.2d 1098, 1102 (9th Cir. 1985)); *see also Tattersalls, Ltd. V. DeHaven*, 745 F.3d 1294, 1299 (9th Cir. 2014). Whether a Rule 59(e) motion should be granted is within the discretion of the district court. *McDowell v. Calderon*, 197 F.3d 1253, 1255 (9th Cir. 1999) (en banc); *see also Turner v. Burlington Northern Santa Fe R. Co.*, 338 F.3d 1058, 1063 (9th Cir. 2003). In most contexts, such a motion "should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *McDowell*, 197 F.3d at 1255 (quoting *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999)); *see also Brighton Collectibles, LLC v. Believe Productions, Inc.*, Case No. 2:15-cv-00579-CAS(ASx), 2018 WL 1381894, at *6 (C.D. Cal. Mar. 15, 2018) (denying Rule 59(e) motion to reduce jury's damage award, applying the "highly unusual circumstances" standard and finding the jury's award supported by substantial

evidence). However, a district court may also grant such a motion if it is "necessary to correct manifest errors of law or fact upon which the judgment is based" or if "the motion is necessary to 'prevent manifest injustice.'" *Turner*, 338 F.3d at 1063; *see also Nelson v. Equifax Info. Servs., LLC*, 522 F. Supp. 2d 1222, 1238–39 (C.D. Cal. 2007) ("Since the jury's award of statutory damages is a manifest error of law, Defendant is not precluded from raising the issue in its 59(e) motion[.]").

## ANALYSIS

Defendants ask that the judgment be amended by reducing the future economic damages awarded by the jury to plaintiff from $164,300 to $14,300. (Doc. No. 297 at 7–9.) According to defendants, this reduction is necessary to correct a manifest error of fact upon which the award was based and to prevent manifest injustice. (*Id.* at 7.) More specifically, the defendants argue that at trial there was "no evidence supportive of the jury's findings on future economic damages" beyond an award of $14,300 for one year's worth of psychological counseling as testified to by Dr. Berg, plaintiff's expert witness. (*Id.* at 8.) In opposition, plaintiff argues that there was sufficient evidence introduced at trial to support the jury's award with respect to economic damages. In this regard, plaintiff contends that the jury could have reasonably concluded from the evidence that their award of $164,300 was necessary to adequately compensate plaintiff for both his future psychological treatment and future lost earnings caused by defendants' unlawful conduct. (Doc. No. 303 at 2–4.)[2]

---

[2] Plaintiff also argues that, because defendants do not seek a new trial but only a reduction in the damages awarded, their motion is barred by the Seventh Amendment. (Doc. No. 303 at 3–4.) It is true that, if a party persuasively argues that a remittitur is warranted, the court does not normally merely reduce the amount of damages awarded, because doing so may implicate the Seventh Amendment. *Morgan v. Woessner*, 997 F.2d 1244, 1258 (9th Cir. 1993). Instead, courts typically offer the non-moving party "the option of either accepting the remittitur of the . . . damage award or a new trial on that issue." *Id.* at 1258–59; *see also Fenner v. Dependable Trucking Co., Inc.*, 716 F.2d 598, 603 (9th Cir. 1983) ("If the prevailing party does not consent to the reduced amount, a new trial must be granted."). There may be circumstances, however, when an order of remittitur without providing the plaintiff the option of a new trial could be warranted. *See S. Union Co. v. Irvin*, 563 F.3d 788, 792 n.4 (9th Cir. 2009) ("When a punitive damage award exceeds the constitutional maximum, we decide on a case-by-case basis whether to remand for a new trial or simply to order a remittitur."). Because the court concludes that a reduction of the jury's future economic damages award is not warranted here, it need not address this issue.

3

In considering a motion brought under Rule 59(e), "[a] jury's verdict must be upheld if it is supported by substantial evidence, which is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion." *Castro v. County of Los Angeles*, 833 F.3d 1060, 1066 (9th Cir. 2016) (en banc) (quoting *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002)). The court is to "afford 'substantial deference to a jury's finding of the appropriate amount of damages.'" *Harper v. City of Los Angeles*, 533 F.3d 1010, 1028 (9th Cir. 2008) (citing *Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 95 F.3d 1422, 1435 (9th Cir. 1996)); *see also United States v. CB & I Constructors, Inc.*, 685 F.3d 827, 839 (9th Cir. 2012) (affirming jury award of $28.8 million in damages as "not grossly excessive or against the clear weight of the evidence."). Therefore, a court should not alter a jury's assessment of the amount of damages to be awarded unless: (1) the amount is "grossly excessive or monstrous"; (2) the evidence "clearly does not support the damage award"; or (3) the award "could only have been based on speculation or guesswork." *Blanton v. Mobil Oil Corp.*, 721 F.2d 1207, 1216 (9th Cir. 1983) (internal quotations omitted); *see also McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 957 (9th Cir. 2011) (affirming district court's denial of defendant's motion to amend judgment to reduce the jury's award of damages); *Harper,* 533 F.3d at 1028 (rejecting a challenge on appeal to the jury's award of damages in a civil rights action); *Los Angeles Mem'l Coliseum Comm'n v. NFL*, 791 F.2d 1356, 1360 (9th Cir. 1986). Here, defendants challenge the jury's future economic damages award based only on the grounds of a lack of evidence or because the amount of the award could only have been arrived at via speculation.

"[D]amages are not improperly speculative simply because they cannot be ascertained with exact mathematical precision." *Virgin Valley Water Dist. v. Vanguard Piping Sys. (Canada), Inc.*, No. 2:09–cv–00309–LRH–PAL, 2011 WL 533995, at *3 (D. Nev. Feb. 8, 2011). Likewise, "[d]amages are not rendered uncertain because they cannot be calculated with absolute exactness." *Eastman Kodak Co. of N.Y. v. S. Photo Materials Co.*, 273 U.S. 359, 379 (1927)); *see also Georges v. Novartis Pharm. Corp.*, 988 F. Supp. 2d 1152, 1161 (C.D. Cal. 2013) ("The Court defers to the jury's exact calculation of Plaintiff's past and future economic damages."); *Pet Food Exp. Ltd. v. Royal Canin USA, Inc.*, No. C–09–1483 EMC, 2011 WL 6140874, at *5

(N.D. Cal. Dec. 8, 2011) (noting that "mathematical precision is not required in calculating the extent of [future economic] damages") (internal quotations omitted). Nor is it strictly necessary for an expert to testify as to the amount of damages. *See, e.g.*, *United States v. English*, 521 F.2d 63, 74 n.13 (9th Cir. 1975) (noting it was error for the district court to fail to instruct on inflation and future increases in income with respect to damages, even absent expert testimony on these topics); *Bickler v. Senior Lifestyle Corp.*, No. CV–09–00726–PHX–DGC, 2010 WL 2292985, at *5 (D. Ariz. June 8, 2010) (observing there was "no authority showing that expert testimony is necessary for an award of future damages"); *Veritas Operating Corp. v. Microsoft Corp.*, No. 2:06-cv-00703-JCC, 2008 WL 657936, at *27 (W.D. Wash. Jan. 17, 2008) ("[Defendant] is correct that damages under § 284 need not be proved through expert testimony."); *see also Valero v. Bryant, LaFayette, & Assocs.*, No. 1:10–cv–01174 OWW GSA, 2011 WL 1438436, at *4 n.4 (E.D. Cal. Apr. 14, 2011) (noting emotional distress damages under the Fair Debt Collection Practices Act could be proven through non-expert testimony).

Here, plaintiff points to two evidentiary bases on which the jury could have awarded him $164,300 in future economic damages. First, plaintiff acknowledges that Dr. Berg testified that plaintiff should receive at least one year of psychological counseling, which the doctor estimated would cost $14,300. (Doc. No. 303 at 2.) However, plaintiff points out that Dr. Berg also testified that he considered one year of therapy to be "a very minimum recommendation," and that he believed plaintiff had suffered a permanent psychological injury. (*Id.* at 12–14.) A reasonable jury could conclude from this testimony that the injury suffered by plaintiff because of defendants' unlawful conduct would have lasting psychological effects on plaintiff requiring far more than the "very minimum recommendation" of therapy to treat. *See Glovatorium, Inc. v. NCR Corp.*, 684 F.2d 658, 664 (9th Cir. 1982) ("The jury was entitled to disregard the amount asked for when there was other evidence from which the jurors could draw their own conclusions."); *Dixon v. City of Coeur d'Alene*, No. 2:10–cv–00078–LMB, 2012 WL 2923149, at *9 (D. Idaho July 18, 2012) ("The jury was not bound by Plaintiffs' counsel's suggestion during closing argument that the amount be less [than what was ultimately awarded]."); *see also Fin. Holding Corp. v. Garnac Grain Co., Inc.*, 965 F.2d 591, 596 (8th Cir. 1992) ("[W]e hold that a

jury should be free to disregard requests for damages made by trial counsel during closing argument when there is sufficient evidence on the record to reasonably conclude otherwise."). Moreover, plaintiff's father testified that plaintiff's personality had changed due to his arrest and incarceration. (*See* Doc. No. 249 at 58–59 (testimony of Larry Morse) ("[Plaintiff] was our optimist, you know, our cup half full. [Plaintiff] was always the one that the cup was all the way full."); *id.* at 67 ("[After plaintiff was released from jail,] he was very bitter, very depressed. . .. it got worse as he got home because while he had been in custody, he did not know how much publicity, all these horrible blogs that were out that kept saying things about him."); *id.* at 71 ("[H]e's not the optimistic buoyant, you know, kid that he once was. He's much more cynical and suspicious about people and things.").) Plaintiff's mother testified similarly.

The court concludes that, contrary to defendants' suggestion, the fact that the jury's award of future economic damages was not an exact multiple of $14,300 does not indicate it was not reasonably supported by the evidence. *See Georges*, 988 F. Supp. 2d at 1161 ("The Court defers to the jury's exact calculation of Plaintiff's past and future economic damages."). The court also finds that Dr. Berg's trial testimony, combined with the testimony of plaintiff's parents, provided a sufficient evidentiary basis for the jury's assessment of plaintiff's future economic damages with respect to the future costs of psychological counseling.

Second, plaintiff contends evidence was presented at trial of his diminished future earning capacity because of the defendants' judicial deception, his subsequent false arrest on murder charges and the resulting damages to his reputation. (*Id.* at 4.) Plaintiff testified at trial that, following his incarceration, he had "trouble finding a job" in Sacramento, and that he only found work at a supermarket after his father intervened. (*Id.* at 21.) Numerous witnesses also testified about the ease with which they could locate news articles and blogs on the Internet reporting plaintiff's arrest on murder charges. (*See* Doc. No. 252 at 63 (testimony of Ethan Morse about a college classmate's father learning of his arrest on murder charges); Doc. No. 251 at 22 (testimony of Dr. Berg regarding plaintiff expressing concerns about his reputation due to news of his arrest on murder charges being available through online Internet searches); (Doc. No. 249 at 65–66 (testimony of Larry Morse about the well-publicized nature of his son's arrest and the

charges brought against him).)[3] Additionally, plaintiff's mother testified that plaintiff had lost focus and been unable to continue with his college studies. Further, plaintiff's mother testified that plaintiff was "rudderless" and had lost any direction in his life. According to plaintiff's mother, since his release from jail, plaintiff had only worked primarily in part-time or temporary positions. This trial testimony provided a sufficient evidentiary basis for the jury to reasonably conclude that the damage to plaintiff's reputation would result in him suffering future economic damages in addition to future non-economic damages. Given the evidence presented at trial, the court will defer to the jury's calculation of the exact amount of damages it believed plaintiff sustained.[4] *See Harper*, 533 F.3d at 1028; *Georges*, 988 F. Supp. 2d at 1161; *Pet Food Exp. Ltd.*, 2011 WL 6140874, at *5.

/////

/////

---

[3] Indeed, plaintiff's counsel specifically connected plaintiff's damaged reputation to his future economic losses during closing argument without objection. (See Doc. No. 290 at 15–16) ("Let's talk about his loss of reputation. . . . How is that going to affect his life? How's that going to affect his credit? What if he applies for a job? There's two people applying for a job, well, this one, he was in jail for murder, no thanks. You know, he -- I don't want to get involved in that. He's controversial. We don't need that.").

[4] Again, to the extent defendants maintain plaintiff could not be awarded future economic damages due to his damaged reputation absent specific expert testimony on the subject (*see* Doc. No. 307 at 6, 8), the court rejects that argument. *See, e.g.*, *Smith v. Jones*, No. 1:13 CV 744, 2016 WL 455617, at *13 (N.D. Ohio Feb. 5, 2016) (noting "plaintiffs need not present expert testimony in order to recover future earnings damages," and sustaining a $500,000 award for future economic damages based on testimony that plaintiff had "shown promise in the music industry"); *Bernheisel v. Mikaya*, No. 3:13-CV-01496, 2016 WL 160731, at *4 (M.D. Pa. Jan. 13, 2016) ("Plaintiff's own testimony at trial may be sufficient to establish some, if not all, of her future economic damages."); *Stokes v. Freeport McMoran C&G, Inc.*, No. 14–1538, 2015 WL 13531784, at *3 (E.D. La. Dec. 8, 2015) ("Thus, a vocational expert is [not] an absolute prerequisite to prove a loss of future earning capacity.") (brackets in original) (quoting *Barocco v. Ennis Inc. of Colo.*, No. Civ.A.02–1450, 2003 WL 1342973, at *2 (E.D. La. Mar. 19, 2003)); *Maharaj v. Cal. Bank & Trust*, 288 F.R.D. 458, 463 (E.D. Cal. 2013) ("Defendant has not shown that expert testimony is always required to submit to the jury the issue of future lost earnings."); *Aluminum Co. of Am. v. Essex Grp., Inc.*, 499 F. Supp. 53 at 65–66 (W.D. Pa. 1980) (noting that "[t]he reports are filled with tort and contract cases where such awards [for future losses] are made without the benefit of expert testimony concerning future economic trends"). Defendants have failed to provide persuasive authority for the proposition that expert testimony is always required to establish future economic losses.

**CONCLUSION**

For the reasons discussed above, the court concludes there was sufficient evidence introduced at trial to support the jury's award of future economic damages here. Defendant's motion to alter or amend the judgment under Rule 59(e) (Doc. No. 297) will therefore be denied.

IT IS SO ORDERED.

Dated: **July 16, 2018**

*Dale A. Drozd*
UNITED STATES DISTRICT JUDGE